**[ORAL ARGUMENT NOT REQUESTED]**

**No. 22-4012**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

LINDA P. SMITH,

Plaintiff-Appellant,

v.

XAVIER BECERRA, in his capacity as
Secretary, United States Department of Health and Human Services,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Utah
District Court Case No. 21-cv-00047 (Judge Nielson)

## BRIEF FOR APPELLEE

*Of Counsel:*

DANIEL J. BARRY
*Acting General Counsel*

GERARD KEATING
LINDA KEYSER
*Attorneys*

*Department of Health and
Human Services*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

ANDREA T. MARTINEZ
*Interim United States Attorney*

ABBY C. WRIGHT
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff
Civil Division, Room 7212
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4820*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................iii

STATEMENT OF RELATED APPEALS .................................................. viii

GLOSSARY ....................................................................................................ix

STATEMENT OF JURISDICTION ...............................................................1

STATEMENT OF THE ISSUE.........................................................................1

STATEMENT OF THE CASE.........................................................................2

    A.    Statutory And Regulatory Background.........................................2
    B.    Prior Proceedings.........................................................................11

SUMMARY OF ARGUMENT.......................................................................18

STANDARD OF REVIEW ............................................................................20

ARGUMENT ...................................................................................................20

The District Court Properly Entered Judgment For Plaintiff And Remanded
    To The Secretary To Pay The Claims At Issue......................................20

    A.    The District Court's Judgment Provided Plaintiff Complete Relief
        On The Three Claims Before The Court.......................................20

    B.    Plaintiff Is Not Entitled To Further Relief..................................23

        1.    Plaintiff seeks additional relief to resolve claims that are not
            yet ripe for review and over which the district court did not
            have jurisdiction ...................................................................23

        2.    In any event, plaintiff was not entitled to vacatur of the
            2017 CMS Ruling or a ruling on collateral estoppel.......................28

    C.    The District Court's Judgment Was Procedurally Proper.........................34

CONCLUSION ................................................................................................................ 36

STATEMENT REGARDING ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*Bloom v. Azar*,
No. 5:16-cv-121, 2018 WL 583111 (D. Vt. Jan. 29, 2018),
*vacated and remanded*, 976 F.3d 157 (2d Cir. 2020) ............................................. 12

*Brown v. Buhman*,
822 F.3d 1151 (10th Cir. 2016) ..................................................................... 33

*Campbell v. City of Spencer*,
777 F.3d 1073 (10th Cir. 2014) ..................................................................... 29

*Chipman v. Shalala*,
90 F.3d 421 (10th Cir. 1996) ........................................................................ 30

*C.W. Mining Co., In re*,
641 F.3d 1235 (10th Cir. 2011) ..................................................................... 30

*Disability Law Ctr. v. Millcreek Health Ctr.*,
428 F.3d 992 (10th Cir. 2005) ...................................................................... 33

*Ethyl Corp. v. Browner*,
989 F.2d 522 (D.C. Cir. 1993) ...................................................................... 34

*Flast v. Cohen*,
392 U.S. 83 (1968) ..................................................................................... 27

*Forest Guardians v. United States Forest Serv.*,
641 F.3d 423 (10th Cir. 2011) .................................................................. 30, 31

*Heckler v. Ringer*,
466 U.S. 602 (1984) .................................................................................... 21

*Idaho Sporting Cong., Inc. v. Rittenhouse*,
305 F.3d 957 (9th Cir. 2002) ................................................................... 31, 32

*Ind v. Colorado Dep't of Corr.*,
801 F.3d 1209 (10th Cir. 2015) ............................................................... 23, 25

*Kostzuta v. Apfel,*
    3 F. App'x 810 (10th Cir. 2001) ................................................................. 20, 35

*Lewis v. Azar,*
    308 F. Supp. 3d 574 (D. Mass. 2018) ............................................................12

*Marks v. Colorado Dep't of Corr.,*
    976 F.3d 1087 (10th Cir. 2020) ....................................................................33

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ......................................................................................21

*Mid-Continent Casualty Co. v. Greater Midwest Builders, Ltd.,*
    794 F. App'x 757 (10th Cir. 2019) ................................................................30

*Nelson v. City of Albuquerque,*
    921 F.3d 925 (10th Cir. 2019) ......................................................................20

*Northeast Hosp. Corp. v. Sebelius,*
    657 F.3d 1 (D.C. Cir. 2011) ............................................................................2

*Odell v. U.S. Dep't of Health & Human Servs.,*
    995 F.3d 718 (9th Cir. 2021) ........................................................................27

*Porzecanski v. Azar,*
    943 F.3d 472 (D.C. Cir. 2019) ..........................................................3, 4, 21, 27

*Seneca-Cayuga Tribe of Okla. v. National Indian Gaming Comm'n,*
    327 F.3d 1019 (10th Cir. 2003) ....................................................................31

*SKF USA Inc. v. United States,*
    254 F.3d 1022 (Fed. Cir. 2001) ................................................................ 20, 34

*Smilde v. Herman,*
    201 F.3d 449 (10th Cir. 1999) ......................................................................34

*Smith v. Berryhill,*
    139 S. Ct. 1765 (2019) ..................................................................................21

*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................ 18, 23

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .................................................................28

*Unemployment Comp. Comm'n of Alaska v. Aragon*,
  329 U.S. 143 (1946) ................................................................30-31

*United States v. Mendoza*,
  464 U.S. 154 (1984) .....................................................................32

*Whitcomb v. Hargan*,
  No. 2:17-cv-14 (E.D. Wis. Oct. 26, 2017) ...................................12

*Wilson v. Astrue*,
  602 F.3d 1136 (10th Cir. 2010) ...................................................20

**Statutes:**

28 U.S.C. § 1291 .................................................................................1

42 U.S.C. § 405(g) ............................................................ 1, 4, 18, 20, 22

42 U.S.C. § 1395 *et seq.* ......................................................................2

42 U.S.C. § 1395k(a)(2)(G) ..................................................................3

42 U.S.C. § 1395m(a)(13) ....................................................................3

42 U.S.C. § 1395x(n) ............................................................................3

42 U.S.C. § 1395y(a)(1) ........................................................................3

42 U.S.C. § 1395ff(a)(1) ........................................................................3

42 U.S.C. § 1395ff(a)(3)(A) ..................................................................3

42 U.S.C. § 1395ff(b)(1)(A) .......................................................1, 4, 15, 20

v

42 U.S.C. § 1395ff(b)(1)(E)..................................................................................4

42 U.S.C. § 1395ff(c)(1)-(2)................................................................................3

42 U.S.C. § 1395ff(d)(1).....................................................................................4

42 U.S.C. § 1395hh(a)(1)-(2)............................................................................14

42 U.S.C. § 1395hh(b)(1)..................................................................................14

**Regulations:**

42 C.F.R. § 401.108(c).......................................................................................7

42 C.F.R. § 405.906(a)-(b).................................................................................4

42 C.F.R. § 405.920............................................................................................3

42 C.F.R. § 405.940............................................................................................3

42 C.F.R. § 405.960.........................................................................................3-4

42 C.F.R. § 405.1000..........................................................................................4

42 C.F.R. § 405.1012(a)(1).................................................................................4

42 C.F.R. § 405.1100..........................................................................................4

42 C.F.R. § 405.1130................................................................................4, 21, 26

42 C.F.R. § 414.202............................................................................................3

**Other Authorities:**

Appendix A – TDL-220257, *Olsen v. Becerra*,
    No. 21-cv-326 (E.D. Wash. Feb. 25, 2022), Dkt. 20-1....................10, 11, 26

Giacomo Cappon et al., *Continuous Glucose Monitoring Sensors for
    Diabetes Management: A Review of Technologies and Applications*,
    43 Diabetes & Metabolism J. 383 (2019)..........................................................6

Ctrs. for Disease Control & Prevention, *Diabetes: Monitoring Your Blood Sugar*,
  https://go.usa.gov/xuaT3 (last visited Apr. 13, 2022) ........................................5

Ctrs. for Disease Control & Prevention, *Diabetes: What is Diabetes?*,
  https://go.usa.gov/xua2T (last visited Apr. 13, 2022) ........................................5

85 Fed. Reg. 70,358 (Nov. 4, 2020). ....................................................................9

86 Fed. Reg. 73,860 (Dec. 28, 2021) ........................... 7, 8, 9, 10, 16, 24, 25, 28

Press Release, FDA, *FDA Expands Indication for Continuous Glucose
  Monitoring System, First to Replace Fingerstick Testing for Diabetes Treatment
  Decisions* (Dec. 20, 2016), https://go.usa.gov/xuaZn ................................. 6-7

**STATEMENT OF RELATED APPEALS**
**PURSUANT TO CIRCUIT RULE 28.2(C)(3)**

Counsel for appellee is not aware of any prior or related appeals.

## GLOSSARY

| | |
|---|---|
| ALJ | Administrative Law Judge |
| CMS | Centers for Medicare & Medicaid Services |
| FDA | Food and Drug Administration |
| HHS | U.S. Department of Health and Human Services |
| Secretary | Secretary of Health and Human Services |

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1395ff(b)(1)(A).  The district court issued a final judgment on January 19, 2022, App.

Vol. I at 273, and denied plaintiff's motion to alter the judgment on February 8, 2022,

App. Vol. I at 11-12 (Dist. Ct. Dkt. 55).  Plaintiff filed a notice of appeal on February

22, 2022.  App. Vol. I at 292-293.  This Court has jurisdiction pursuant to 28 U.S.C.

§ 1291.

## STATEMENT OF THE ISSUE

The Secretary's policy regarding Medicare coverage of continuous glucose

monitors and related supplies has developed over time.  Under a 2017 ruling of the

Administrator of the Centers for Medicare & Medicaid Services (CMS), certain

continuous glucose monitors were deemed not to be durable medical equipment and

thus not covered.  That ruling did not address insulin pumps that can also perform

the function of a continuous glucose monitor.  In a 2021 final rule, the U.S.

Department of Health and Human Services (HHS) replaced the 2017 ruling on a

prospective basis, and Medicare now covers all continuous glucose monitors and their

supplies.

Plaintiff sought payment of Medicare benefits for an insulin pump with

continuous-glucose-monitor capabilities received in 2016 and for supplies for use with

that pump received in 2017 and 2018.  The Medicare Appeals Council denied

coverage of those claims in a final agency decision.  After plaintiff sought judicial

review, however, the Secretary of Health and Human Services confessed error, explaining that the claims should have been paid.  The district court entered judgment for plaintiff and remanded to the Secretary for payment.  Unsatisfied with judgment entirely in her favor, however, plaintiff filed this appeal, arguing that she was entitled to additional relief in the form of vacatur of the 2017 CMS Ruling—which, as explained, has since been superseded by the 2021 final rule—and a declaration that the Secretary was collaterally estopped from denying coverage of plaintiff's claims.

The question presented is whether the district court properly entered judgment for plaintiff and remanded to the Secretary to pay the claims at issue after the Secretary agreed with plaintiff that those claims should be paid.

## STATEMENT OF THE CASE

### A.    Statutory And Regulatory Background

1.  Medicare is a federal health-insurance program for the elderly and disabled, which is administered on behalf of the Secretary of Health and Human Services by the Centers for Medicare & Medicaid Services.  *See* 42 U.S.C. § 1395 *et seq.*  Part A of the Medicare statute covers medical services furnished by hospitals and other institutional care providers.  *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011).  Medicare Part B "is an optional supplemental insurance program that pays for medical items and services not covered by Part A, including outpatient physician services, clinical laboratory tests, and durable medical equipment."  *Id.*  With certain limited exceptions, the Medicare statute limits coverage to those "items or services"

2

that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member."  42 U.S.C. § 1395y(a)(1).

The "durable medical equipment" covered by Medicare Part B is equipment that (1) can withstand repeated use, (2) has an expected life of at least three years, (3) is primarily and customarily used to serve a medical purpose, (4) generally is not useful to an individual in the absence of an illness or injury, and (5) is appropriate for use in the home.  *See* 42 U.S.C. §§ 1395k(a)(2)(G), 1395m(a)(13); 42 C.F.R. § 414.202. By statute, durable medical equipment includes blood-testing strips and blood-glucose monitors for individuals with diabetes.  42 U.S.C. § 1395x(n).

To seek reimbursement for the cost of medical equipment or services, "a Medicare Part B beneficiary must submit a claim for an 'initial determination' of whether 'the items and services furnished are covered or otherwise reimbursable.'" *Porzecanski v. Azar*, 943 F.3d 472, 475-476 (D.C. Cir. 2019) (quoting 42 C.F.R. § 405.920); *see* 42 U.S.C. § 1395ff(a)(1).  The initial coverage determination is made by a Medicare administrative contractor hired by CMS to manage the preliminary claims-administration process.  *See* 42 C.F.R. § 405.920; *Porzecanski*, 943 F.3d at 476.  If the contractor denies a claim, the beneficiary may "obtain a 'redetermination' from the same contractor."  *Porzecanski*, 943 F.3d at 476 (citing 42 U.S.C. § 1395ff(a)(3)(A); 42 C.F.R. § 405.940).  If the contractor again denies the claim, "the beneficiary can seek 'reconsideration' by a 'qualified independent contractor' who is wholly independent of the initial determination contractor."  *Id.* (citing 42 U.S.C. § 1395ff(c)(1)-(2); 42 C.F.R.

3

§ 405.960).  CMS is not a party to the proceedings on initial determination,
redetermination, or reconsideration.  42 C.F.R. § 405.906(a)-(b).

If the beneficiary remains unsatisfied after reconsideration, then, subject to a
minimum amount-in-controversy requirement, "he can request a hearing before an
administrative law judge (ALJ)." *Porzecanski*, 943 F.3d at 476 (citing 42 C.F.R.
§ 405.1000); *see* 42 U.S.C. § 1395ff(b)(1)(E), (d)(1).  In the proceedings before the ALJ,
CMS may choose to participate as a party, but only if the beneficiary is represented.
42 C.F.R. § 405.1012(a)(1).  After the ALJ issues a decision, any party to the ALJ
proceedings can seek de novo review by the Medicare Appeals Council, *id.* § 405.1100,
which makes the final decision for the Secretary of Health and Human Services, *id.* §
405.1130.

If the beneficiary is not satisfied with the decision of the Appeals Council, then
(subject to another amount-in-controversy requirement) she is entitled to "judicial
review of the Secretary's final decision … as is provided in section 405(g) of this title."
42 U.S.C. § 1395ff(b)(1)(A).  The reviewing court has the "power to enter … a
judgment affirming, modifying, or reversing the decision of the [Secretary], with or
without remanding the cause for a rehearing."  *Id.* § 405(g); *see also id.* § 1395ff(b)(1)(A)
(references to the "Commissioner of Social Security" in section 405(g) "shall be
considered a reference to the 'Secretary'").

2.  This case concerns the coverage of continuous glucose monitors for
Medicare beneficiaries with diabetes.  Diabetes is a health condition in which the body

4

does not produce or use insulin properly. *See* Ctrs. for Disease Control & Prevention, *Diabetes: What is Diabetes?*, https://go.usa.gov/xua2T (last visited Apr. 13, 2022). Individuals with diabetes may experience high or low blood-sugar (glucose) levels, which over time can result in adverse health effects. *See id.*

In order to manage diabetes, it is important that individuals with the condition regularly monitor their blood sugar. *See* App. Vol. II at 316; Ctrs. for Disease Control & Prevention, *Diabetes: Monitoring Your Blood Sugar*, https://go.usa.gov/xuaT3 (last visited Apr. 13, 2022). Knowing an individual's glucose levels can allow the individual and her doctor to select an appropriate dose of insulin or implement dietary or other lifestyle changes to regulate the individual's glucose levels. App. Vol. II at 316.

Before the early 2000s, individuals with diabetes would most commonly monitor their glucose levels by pricking a finger to draw blood. App. Vol. I at 16, ¶ 12. They would place a small amount of blood on a test strip and put the strip in a blood-glucose monitor that would provide a reading of blood-glucose levels. *See* App. Vol. I at 84; App. Vol. II at 316. Individuals with diabetes would have to repeat this process numerous times each day. With certain conditions and limitations, Medicare Part B covers home blood-glucose monitors as durable medical equipment. App. Vol. I at 83-84. Lancets and blood-testing strips—though not themselves durable medical equipment—are also covered by Medicare as supplies necessary for the proper functioning of the monitor. *Id.*

In 1999, the Food and Drug Administration (FDA) approved the first continuous glucose monitor.  Giacomo Cappon et al., *Continuous Glucose Monitoring Sensors for Diabetes Management: A Review of Technologies and Applications*, 43 Diabetes & Metabolism J. 383, 384 (2019).  A continuous glucose monitor does not monitor blood glucose; rather, it uses a disposable sensor inserted under the skin to continuously monitor glucose values in the interstitial fluid.  App. Vol. II at 316.  Data from the sensor is wirelessly sent, via transmitter, to a dedicated receiver or monitor or a compatible mobile device.  App. Vol. I at 85; App. Vol. II at 316.  The monitor displays the glucose measurements on a graph so that the user can visualize trends in their glucose levels.  App. Vol. I at 85.  The monitor has an expected life of several years, but (at least for products on the market in 2017) the sensor needs to be replaced every few days, and the transmitter needs to be replaced every few months. App. Vol. I at 88.

Early continuous glucose monitors suffered from poor accuracy.  *See* Cappon et al., *supra*, at 384-385.  Until recently, therefore, all continuous glucose monitors for personal use were approved by the FDA to be used only in adjunct to traditional methods of glucose monitoring.  App. Vol. II at 316-317; Cappon et al., *supra*, at 388. Specifically, before making treatment decisions such as insulin dosing, users were required to check blood-glucose levels by fingersticks.  Cappon et al., *supra*, at 388.  In 2016, the FDA approved the first continuous glucose monitor for nonadjunctive use—*i.e.*, for use in making treatment decisions.  *Id.*; Press Release, FDA, *FDA*

*Expands Indication for Continuous Glucose Monitoring System, First to Replace Fingerstick Testing for Diabetes Treatment Decisions* (Dec. 20, 2016), https://go.usa.gov/xuaZn.

Certain insulin pumps can serve the function of a continuous glucose monitor, receiving and displaying glucose measurements. *See* 86 Fed. Reg. 73,860, 73,898 (Dec. 28, 2021). At least some insulin pumps can also automatically initiate or suspend insulin dosages as needed based on the user's glucose level.

3. In January 2017, the CMS Administrator issued a precedential and binding CMS Ruling (CMS-1682-R) regarding the classification of continuous glucose monitors as durable medical equipment under Part B of the Medicare program. App. Vol. I at 80-95; *see* 42 C.F.R. § 401.108(c) (CMS Rulings "are binding on all CMS components" and on HHS and the Social Security Administration to the extent that they "adjudicate matters under the jurisdiction of CMS"). The ruling stated that Medicare would not cover continuous glucose monitors approved by the FDA for "use as adjunctive devices to complement, not replace, information obtained from blood glucose monitors." App. Vol. I at 85-86. The Administrator explained that "such devices are not used for making diabetes treatment decisions, such as changing one's diet or insulin dosage based solely on the readings of the [continuous glucose monitor], and therefore, have not been covered under Medicare because they are not considered to serve the medical purpose of making diabetes treatment decisions." App. Vol. I at 86.

CMS recognized, however, that the FDA had recently approved one continuous glucose monitor that could be used on its own to inform diabetes-treatment decisions, without using a blood-glucose monitor to confirm glucose levels. App. Vol. I at 86. The 2017 CMS Ruling states that such "therapeutic" continuous glucose monitors meet the definition of durable medical equipment. App. Vol. I at 86-90. CMS explained that such devices, in contrast to adjunctive (or "non-therapeutic") continuous glucose monitors that cannot be used to make treatment decisions, serve a medical purpose under the Medicare definition of durable medical equipment because they replace blood-glucose monitors as a system for managing diabetes, detecting episodes of hyperglycemia and hypoglycemia, and facilitating both acute and long-term therapy adjustments. App. Vol. I at 87. CMS further explained that because a therapeutic continuous glucose monitor is durable—that is, it has an expected life of at least three years—the nondurable sensors and transmitters that are necessary for the device to function are also covered by Medicare. App. Vol. I at 88-89.

The 2017 CMS Ruling did not address the classification of insulin pumps that also perform the functions of a continuous glucose monitor, but, in general, insulin pumps have been "classified and covered as [durable medical equipment] since the mid-1990s," 86 Fed. Reg. at 73,899.

4. In November 2020, CMS published a proposed rule to replace the 2017 CMS Ruling and classify all continuous-glucose-monitor systems that use a dedicated

receiver (as opposed to, for example, a smartphone) as durable medical equipment. 85 Fed. Reg. 70,358, 70,398, 70,403-70,404 (Nov. 4, 2020). The agency stated that it "now believe[d] that because adjunctive [continuous glucose monitors] can provide information about potential changes in glucose levels while a beneficiary is sleeping and is not using a blood glucose monitor, these [continuous glucose monitors] are primarily and customarily used to serve [the] medical purpose" of "helping patients to avoid potential episodes of hypoglycemia or hyperglycemia, despite the fact that fingerstick blood glucose verification is still required for use in making diabetes treatment decisions." *Id.* at 70,401.

CMS issued a final rule on December 28, 2021. 86 Fed. Reg. 73,860. The rule finalized the agency's position that adjunctive continuous glucose devices "are primarily and customarily used to serve a medical purpose" because they can provide information about potential changes in glucose levels while a beneficiary is sleeping and not using a blood-glucose monitor. *Id.* at 73,899. CMS also clarified that the 2017 CMS Ruling "only addressed whether [continuous glucose monitors] meet the Medicare definition of [durable medical equipment] and did not address whether insulin pumps that can also perform the function of a [continuous glucose monitor] are [durable medical equipment] since insulin pumps are already classified as [durable medical equipment]." *Id.* at 73,898. The agency recognized, however, that claims for continuous-glucose-monitor sensors and transmitters used with insulin pumps "are

9

being denied inappropriately based on [the 2017 CMS Ruling]." *Id.* The final rule

became effective on February 28, 2022. *Id.* at 73,860.

On February 25, 2022, CMS issued a Technical Direction Letter to Medicare

administrative contractors providing instructions regarding Medicare coverage of

continuous glucose monitors. *See* Appendix A – TDL-220257, *Olsen v. Becerra*, No. 21-

cv-326 (E.D. Wash. Feb. 25, 2022), Dkt. 20-1. The letter explained that the 2021 final

rule replaced the 2017 CMS Ruling and applies to claims for a continuous glucose

monitor or its necessary supplies that are provided to a Medicare beneficiary on or

after February 28, 2022. *Id.* at 1. Furthermore, with regard to pending "valid

reimbursement claims and appeals for [continuous glucose monitors] or receivers

and/or necessary supplies and accessories supplied prior to February 28, 2022," the

letter instructs Medicare contractors to "apply the coverage and payment provisions

of the 2021 final rule" instead of the 2017 CMS Ruling. *Id.* at 1-2; *see also id.* at 3 (the

instructions of the Technical Direction Letter shall be applied to claims or appeals

pending as of February 28, 2022 and to claims for which the right to file a valid appeal

has not expired as of February 28, 2022). In particular, for claims and appeals

covered by the Technical Direction Letter, "both therapeutic or non-adjunctive

[continuous glucose monitors] and non-therapeutic or adjunctive [continuous glucose

monitors]" and their supplies "shall be considered [durable medical equipment]." *Id.*

at 2. The letter further specifies that the durable-medical-equipment classification

should also apply to "[continuous glucose monitors] and receivers that are

incorporated into insulin infusion pumps" and their supplies, "which as the 2021 final rule indicates should not have been denied based on the 2017 Ruling in any event." *Id.*

### B.    Prior Proceedings

1.  This case arises from HHS's denial of Medicare coverage for three claims submitted by plaintiff or on her behalf.  App. Vol. II at 317.  Those claims were for a MiniMed 630G System with Smartguard that plaintiff received on December 13, 2016, and disposable glucose sensors that plaintiff received on November 16, 2017, and May 15, 2018, for use with the MiniMed 630G System.  *Id.*[1]  On initial review and redetermination, the Medicare administrative contractor denied coverage of each of the three claims and found plaintiff responsible for the non-covered charges.  *Id.*  On reconsideration, the qualified independent contractor agreed with that determination. *Id.*

Plaintiff appealed the denials to an ALJ.  Plaintiff argued that the Secretary was "barred by the doctrine of collateral estoppel" from relitigating the issue of whether a continuous glucose monitor is durable medical equipment because three district

---

[1] Plaintiff's complaint only identifies the two claims for disposable sensors.  *See* App. Vol. I at 29-32 (identifying the "[c]laims at [i]ssue in this [c]ase").  However, the Medicare Appeals Council denied those claims in the same decision in which it denied the December 13, 2016 claim for the MiniMed 630G System.  *See* App. Vol. II. at 313. Accordingly, the parties and district court have assumed that all three claims were before the district court.  *See, e.g.*, App. Vol. I at 11 (Dist. Ct. Dkt. 52) (ordering the Secretary "to pay Plaintiff's three claims")

courts had already decided the issue in other beneficiaries' favor. Supp. App. at 10-11

(citing *Whitcomb v. Hargan*, No. 2:17-cv-14 (E.D. Wis. Oct. 26, 2017); *Lewis v. Azar*,

308 F. Supp. 3d 574 (D. Mass. 2018); *Bloom v. Azar*, No. 5:16-cv-121, 2018 WL

583111 (D. Vt. Jan. 29, 2018), *vacated and remanded*, 976 F.3d 157 (2d Cir. 2020)).

Plaintiff further argued that continuous glucose monitors are medically necessary.

Supp. App. at 11-13.

After a hearing, the ALJ affirmed the denial of coverage. App. Vol. II at 322.

The ALJ found that the MiniMed 630G System "is not intended as a replacement for

a blood glucose monitor" and therefore is not "therapeutic" within the meaning of

the 2017 CMS Ruling. App. Vol. II at 330-331. The ALJ also rejected plaintiff's

collateral-estoppel argument, explaining that "district court decisions are not binding

on" an ALJ in a different case and, moreover, those cases relied upon by plaintiff "are

unavailing as they predate the [2017] CMS Ruling." *Id.*

Plaintiff appealed to the Medicare Appeals Council. Plaintiff again argued that

the three district-court decisions involving other beneficiaries and the 2017 CMS

Ruling required a finding that her continuous glucose monitor is covered durable

medical equipment. App. Vol. II at 317. The Appeals Council, however, "agree[d]

with the ALJ's rationale for non-coverage" and affirmed his decision. App. Vol. II at

313, 321. The Appeals Council explained that continuous glucose monitors "may

provide information, including alerts, about blood sugar fluctuations, but they … do

not add any treatment modality or function so long as the patient is required to return

12

to blood glucose measures to make treatment decisions." App. Vol. II at 320. And, the Council explained, "[w]here an individual must still use another device to accomplish the medical purpose at issue (i.e., measuring the glucose in the individual's blood), the device is essentially used as an additional precaution, but not for the primary medical purpose." *Id.* Although the Appeals Council made its decision independent of the 2017 CMS Ruling, which was issued after plaintiff received her continuous glucose monitor, the Council stated that the ruling "bolster[ed]" its decision. *Id.*

2. In April 2021, plaintiff filed a complaint seeking judicial review of HHS's decision that her MiniMed 630G System and its supplies were not covered by Medicare. App. Vol. I at 13-36. Pursuant to local rules, the Secretary initially filed a response in lieu of an answer to the complaint, in which he confessed error. App. Vol. I at 37-38. The Secretary stated that the Medicare Appeals Council had "erred in denying coverage" for the MiniMed 630G System, which is "a durable insulin pump … covered as durable medical equipment under the Medicare statute and regulations." App. Vol. I at 37. The Secretary further explained that the claims for disposable sensors used with the insulin pump were denied "because the continuous glucose monitor function of the device does not satisfy [the 2017] CMS Ruling." *Id.* But, the Secretary stated, "[t]his denial was also erroneous, because it failed to consider … whether the sensors were reasonable and necessary for the operation of the insulin pump function of the device, which uses sensor data to determine when to

13

automatically shut off the flow of insulin." *Id.* Accordingly, the Secretary asked the Court to enter judgment in favor of plaintiff and remand to the Secretary for payment of the claim for the insulin pump and determination of whether the sensors should be covered as reasonable and necessary for the operation of the insulin pump. App. Vol. I at 38.

Plaintiff opposed the Secretary's requested disposition, arguing that it was inadequate for two reasons. First, plaintiff sought from the district court a judgment that the claims for disposable sensors should be paid, not merely a remand for the Secretary to make a further determination on those claims. Dist. Ct. Dkt. 17, at 2. Second, plaintiff sought an order declaring that the 2017 CMS Ruling was "illegally issued and setting it aside" so that plaintiff's "future claims" for materials related to her continuous glucose monitor would not be denied. *Id.*

In light of plaintiff's position, the district court instructed the Secretary to file an answer and the administrative record, and instructed both parties to file cross-motions for summary judgment. App. Vol. I at 7-8 (Dist. Ct. Dkt. 22). Plaintiff filed two motions for summary judgment. First, plaintiff sought a judgment that the 2017 CMS Ruling was issued unlawfully and vacatur of that ruling. App. Vol. I at 62-74. In particular, plaintiff argued that the ruling was a statement of policy establishing a substantive legal standard governing the scope of benefits, and as such was required to go through the notice-and-comment process identified in 42 U.S.C. § 1395hh(b)(1). App. Vol. I at 70-71; *see also* 42 U.S.C. § 1395hh(a)(1)-(2). Second, plaintiff argued

14

that the Secretary is collaterally estopped from contesting coverage of plaintiff's claims because an ALJ held, in a 2018 decision, that disposable sensors supplied on October 29, 2015 for plaintiff's continuous glucose monitor met Medicare criteria for reimbursement.  App. Vol. I at 159-179; *see also* App. Vol. II at 332-339 (2018 ALJ decision).

The Secretary opposed plaintiff's motions and filed a cross-motion for summary judgment.  App. Vol. I at 204-221.  The government explained that plaintiff had forfeited her collateral-estoppel argument by failing to make the argument in its current form—that is, based on the 2018 ALJ decision in favor of plaintiff, rather than based on three district-court cases involving other beneficiaries—before the Medicare Appeals Council, that ALJ decisions on Medicare coverage claims do not give rise to issue preclusion, and that the 2018 ALJ decision in particular would not give rise to issue preclusion because the Secretary was not a party to that administrative proceeding.  App. Vol. I at 214-220.  The Secretary also argued that a court reviewing a Medicare decision under 42 U.S.C. § 1395ff(b)(1)(A) may only affirm, modify, or reverse the decision of the Secretary and cannot enjoin other agency action such as a CMS Ruling.  App. Vol. I at 220.  In the government's reply brief, however, the Secretary reiterated his prior confession of error and made clear that HHS's primary request was for the Court "to enter judgment in favor of [plaintiff] and remand for payment of the claim for the insulin pump, and

determination of whether the sensors should be covered as reasonable and necessary for the operation of the insulin pump." App. Vol. I at 252-253, 268.

Approximately two months after summary-judgment briefing was complete, plaintiff moved for a status conference or a ruling on the summary-judgment motions. Dist. Ct. Dkt. 49. She explained that she currently had another claim for coverage of disposal sensors pending before HHS, which had recently been denied on reconsideration, and that she would soon have to file an appeal to an ALJ. *Id.* at 1. Accordingly, plaintiff stated that a ruling on the summary-judgment motions would provide "immediate relief" from continuing harm. *Id.* at 2-3. Defendant filed a response that informed the court that CMS had recently issued the 2021 final rule, which not only provides that disposable glucose sensors are covered by Medicare even if they are used with adjunctive (or non-therapeutic) continuous glucose monitors, but also confirmed that "[c]laims submitted for [continuous glucose monitor] sensors and transmitters used with insulin pumps are being denied *inappropriately* based on [the 2017 CMS Ruling]." App. Vol. I at 270 (quoting 86 Fed. Reg. at 73,898) (emphasis omitted). In light of the final rule's discussion of insulin pumps, the Secretary renewed his request to enter judgment in favor of plaintiff and this time asked for a remand to pay *all three claims* at issue in the case. App. Vol. I at 270-272. The Secretary also noted that plaintiff's claim still pending before HHS was "not properly before the Court" but stated that the final rule's discussion of insulin

pumps may also be relevant to that claim, which would provide a basis for an appeal to an ALJ. App. Vol. I at 271-272.

On January 19, 2022, the district court entered an order "[i]n light of the Secretary's renewed confession of error" remanding the case to the Secretary "with directions to pay Plaintiff's three claims." App. Vol. I at 11 (Dist. Ct. Dkt. 52). The district court denied the summary-judgment motions as moot. *Id.* Plaintiff subsequently moved to alter the judgment. App. Vol. I at 274-285. Plaintiff argued that the case was not moot because she sought a determination that the 2017 CMS Ruling was issued illegally and an order setting it aside, as well as a ruling on collateral estoppel. App. Vol. I at 275, 283.

The district court denied plaintiff's motion to alter the judgment. App. Vol. I at 11-12 (Dist. Ct. Dkt. 55). The court explained that it had denied as moot only the summary-judgment motions—not plaintiff's *claims*—and that it had, in fact, "granted judgment in Plaintiff's favor." *Id.* The court further stated that it had granted plaintiff "all of the relief authorized by statute." *Id.* The court explained that plaintiff had sought an injunction or other relief "to ensure favorable administrative rulings *on other claims currently pending before the Secretary*" but that the court "has no jurisdiction over these matters, which have not yet resulted in 'final decisions' within the meaning of Section 405(g)." *Id.* (brackets omitted). Furthermore, the district court explained, plaintiff's concern that the Secretary might apply the "rescinded" 2017 CMS Ruling to her pending administrative claim does not "create a case or controversy that is ripe for

17

decision by this court" because the claim "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

## SUMMARY OF ARGUMENT

Plaintiff appeals a district-court judgment entirely in her favor. Plaintiff sought review in district court of claims for Medicare benefits that were denied by the Appeals Council. The Secretary agreed with plaintiff that those claims were covered by Medicare and asked the district court to remand for the Secretary to pay the claims. The district court did so.

Undeterred by victory, plaintiff insists she is entitled to additional relief beyond payment of the claims at issue in the form of vacatur of the 2017 CMS Ruling and a declaration that collateral estoppel applies. But the Medicare statute permits judicial review only of a "final decision" of the Secretary reached after a claim has been presented to the agency and administrative remedies have been exhausted. 42 U.S.C. § 405(g). The final decisions of the Secretary before the district court concerned three specific claims for benefits, and the district court reversed the denial of Medicare coverage and remanded to the Secretary to pay those claims consistent with the Secretary's confession of error and promise to pay. The district court thus granted plaintiff all relief to which she was entitled on those claims. Further opining on the validity of the 2017 CMS Ruling or collateral estoppel would not have changed the

18

court's judgment; nor would it have led to additional relief with regard to the three claims over which the district court had jurisdiction.

Plaintiff urges on appeal that the district court erred because she believes that vacatur of the 2017 CMS Ruling or a declaration regarding collateral estoppel would resolve other claims she has presented or may present for payment and the claims of other Medicare beneficiaries. Plaintiff's argument on this score is puzzling: In 2021, HHS announced that Medicare would classify even adjunctive continuous glucose monitors and supplies as durable medical equipment, and HHS clarified that the 2017 CMS Ruling did not in fact apply to plaintiff's claim for supplies used with her insulin pump. In any event, plaintiff cannot tie her request for relief to claims over which the district court lacked jurisdiction. Plaintiff's pending and future claims have not yet resulted in a final decision of the Secretary, and plaintiff has no standing to assert the claims of third parties.

Even if the district court had jurisdiction to grant further relief, however, the relief plaintiff requests would have been improper. The 2017 CMS Ruling does not apply to plaintiff's claims for an insulin pump and its supplies. And the district court could not have ruled on plaintiff's argument that the Secretary is estopped from denying coverage based on a 2018 ALJ decision because that argument was never made to the agency.

Finally, the district court's judgment and remand were procedurally proper. Contrary to plaintiff's assertion, the district court did not act *sua sponte* in entering

19

judgment and remanding to the Secretary to pay the claims.  In addition, there is nothing unusual, much less procedurally improper, about a district court remanding to an agency that confesses error.

## STANDARD OF REVIEW

The district court's decision to grant the Secretary's request for a remand is reviewed for abuse of discretion.  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001) (a reviewing court has "considerable discretion" to remand to an agency that has confessed error "and wishes to change the result"); *Kostzuta v. Apfel*, 3 F. App'x 810, 810 (10th Cir. 2001).  The district court's denial of plaintiff's motion to alter or amend judgment is also reviewed for abuse of discretion.  *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019).

## ARGUMENT

### THE DISTRICT COURT PROPERLY ENTERED JUDGMENT FOR PLAINTIFF AND REMANDED TO THE SECRETARY TO PAY THE CLAIMS AT ISSUE

#### A.     The District Court's Judgment Provided Plaintiff Complete Relief On The Three Claims Before The Court

The Medicare statute provides for judicial review of "any final decision" of the Secretary of Health and Human Services.  42 U.S.C. § 405(g); *see also id.* § 1395ff(b)(1)(A) (providing for "judicial review of the Secretary's final decision … as is provided in section 405(g)").  The Supreme Court has explained that this provision imposes two distinct requirements that a beneficiary must satisfy before obtaining

judicial review of a Medicare claim. *Smith v. Berryhill*, 139 S. Ct. 1765, 1773 (2019);

*Porzecanski v. Azar*, 943 F.3d 472, 481 (D.C. Cir. 2019). First, there is "a jurisdictional

requirement that claims be presented to the agency." *Smith*, 139 S. Ct. at 1773

(quotation marks omitted). This requirement is nonwaivable because without

presentment, "there can be no 'decision' of any type." *Mathews v. Eldridge*, 424 U.S.

319, 328 (1976). Second, there is a "waivable … requirement that the administrative

remedies prescribed by the Secretary be exhausted." *Id.* By regulation, the Secretary

has established that the final decision of the Secretary is the decision issued by the

Medicare Appeals Council. 42 C.F.R. § 405.1130; *see Heckler v. Ringer*, 466 U.S. 602,

606 (1984) ("[A] 'final decision' is rendered on a Medicare claim only after the

individual claimant has pressed his claim through all designated levels of

administrative review.").

This case involves only three claims that were presented to the agency and as to

which the Secretary issued a final decision: the claim for the MiniMed 630G System

with Smartguard that plaintiff received on December 13, 2016, and two claims for

disposable sensors that plaintiff received on November 16, 2017, and May 15, 2018.

The Secretary confessed error in denying those three claims, explaining that the

Medicare Appeals Council had mistakenly denied those claims under the authority of

the 2017 CMS Ruling when in fact that Ruling did not apply to plaintiff's claims

because they concerned a Medicare-covered insulin pump and supplies used in

conjunction with that pump. *See* App. Vol. I at 271 ("claims submitted for

[continuous-glucose-monitor] sensors and transmitters *used with insulin pumps* are being denied inappropriately based on [the 2017 CMS Ruling] because that Ruling … did not address coverage of [continuous-glucose-monitor] sensors and transmitters used with insulin pumps" (quotation marks omitted)).  On the basis of that confession of error, the district court entered judgment in plaintiff's favor and ordered "the Secretary … to pay Plaintiff's three claims."  App. Vol. I at 11 (Dist. Ct. Dkt. 52).

The court's judgment effectively "revers[ed] the decision" of the Secretary, as permitted by statute, 42 U.S.C. § 405(g), and thereby gave plaintiff everything to which she was entitled.  Whatever the theory by which the district court could hold that plaintiff's claims were covered—whether because the 2017 CMS Ruling was invalid, because the Secretary was collaterally estopped from denying coverage, or because (as the Secretary explained to the Court) the 2017 CMS Ruling did not apply to plaintiff's claims concerning an insulin pump—the relief afforded to plaintiff would have been the same: remand with directions to pay the claims.  Just as plaintiff could not have brought suit in district court under § 405(g) had the Appeals Council ordered her three claims paid, so too she received all the relief to which she was entitled when the district court remanded the case for the Secretary to pay the three claims.

Furthermore, we are informed by HHS that, consistent with the Secretary's representation to the district court, CMS is now reprocessing and paying the three claims at issue in this case.  Once those claims are paid, the case will be moot because plaintiff will have received all relief to which she is entitled in the present action.  *See*

22

*Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) ("[A] case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." (quotation marks omitted)).

### B.    Plaintiff Is Not Entitled To Further Relief

#### 1.    Plaintiff seeks additional relief to resolve claims that are not yet ripe for review and over which the district court did not have jurisdiction

Plaintiff tries to distract from the fact that she already obtained complete relief on the claims at issue by alluding to other claims that are not presented, exhausted, or hers to bring.  But as explained, the legal landscape governing continuous glucose monitors has shifted; it is thus far from certain that HHS would ultimately deny future or pending claims for such monitors and related supplies.  And in any event, the district court did not have jurisdiction over unexhausted claims or claims of third parties.

a.  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted).  Claims that have not yet resulted in a final agency decision are not ripe for review because an adverse agency decision "may not occur at all," *id.* (quotation marks omitted), or may rest on grounds other than those anticipated.

First, plaintiff argues (at 29) that "a decision finding [the 2017 CMS Ruling] invalid would have real world effect because, at a minimum, it was currently being

used to deny her pending claims"—that is a claim for disposable sensors supplied on July 14, 2021, App. Vol. I at 287. When the district court granted judgment, however, it was not clear whether HHS would issue a final decision denying plaintiff's July 14, 2021 claim, particularly given the 2021 final rule and shift in policy. Indeed, HHS has informed us that following the Secretary's review of the claims at issue in this case and the promulgation of the 2021 rule, CMS reprocessed and paid plaintiff's claim for disposable sensors received on July 14, 2021.

Furthermore, even if HHS had denied plaintiff's claim (which was still pending before the agency at the time of the district court's judgment), it was unlikely that HHS would have done so under the authority of the 2017 CMS Ruling because HHS had taken the position that the 2017 CMS Ruling did not apply to claims for sensors used with insulin pumps like the MiniMed 630G System used by plaintiff. *See* App. Vol. I at 271 (explaining that the 2017 CMS Ruling does not apply to plaintiff's claims); 86 Fed. Reg. at 73,898 (the 2017 CMS Ruling "did not address whether insulin pumps that can also perform the function of a [continuous glucose monitor] are [durable medical equipment]"). As the district court explained, "Plaintiff's concerns that the Secretary may apply [the 2017 CMS Ruling] to her pending administrative claims" do not "create a case or controversy that is ripe for decision by th[e] court." App. Vol. I at 11.

Second, plaintiff suggests that a ruling on the validity of the 2017 CMS Ruling or collateral estoppel will aid her presentation of future claims to the Secretary. *See* Pl.

24

Br. 32 ("[T]here is a reasonable expectation that Mrs. Smith will have claims for

Medicare coverage of [continuous-glucose-monitor supplies] in the future and that …

the Secretary will contend that he is not bound by mutual collateral estoppel."); App.

Vol. I at 283 (motion to alter the judgment stating that plaintiff sought further relief

to "estopp the Secretary from denying [that plaintiff's continuous glucose monitor is

durable medical equipment] *in the future*" (emphasis added)).  Plaintiff also states (at 2)

that she seeks "to help others facing the Secretary's bad faith conduct."  *See also* App.

Vol. I at 283 (arguing that a ruling on collateral estoppel "will have a real world effect

in determining how … other Medicare insured's claims are handled").  But the

prospect that the Secretary would deny any claims that plaintiff submits in the future

for disposable sensors or any claims submitted by other Medicare beneficiaries for

similar products is unlikely and completely speculative.  Not only is it now clear that

the 2017 CMS Ruling does not apply to insulin pumps (like plaintiff's) that also

perform the functions of a continuous glucose monitor, *see* 86 Fed. Reg. at 73,898, but

the 2017 CMS Ruling has been replaced with the 2021 final rule, which concludes that

even adjunctive continuous glucose monitors "are primarily and customarily used to

serve a medical purpose," *id.* at 73,899.

The additional rulings that plaintiff seeks are thus not only premature but may

also be without effect given developments in HHS policy.  What plaintiff seeks is for

the district court to issue impermissible advisory opinions.  *See Ind*, 801 F.3d at 1216-

1217 ("The Constitution forbids us from pontificating about abstractions in the law

or merely giving advice about the potential legal deficiencies of law or policy when no ongoing controversy exists with respect to that law or policy." (alteration and quotation marks omitted)).[2]

b. In all events, the district court did not have jurisdiction over the additional claims for which plaintiff seeks a resolution.

The district court correctly explained that it had no jurisdiction over plaintiff's claim for disposable sensors supplied on July 14, 2021, because plaintiff had not exhausted all administrative remedies and obtained a "final decision" within the meaning of § 405(g). *See* App. Vol. I at 11 (Dist. Ct. Dkt. 55); *see also* 42 C.F.R. § 405.1130 (the final decision of the Secretary is the decision issued by the Medicare Appeals Council). Indeed, at the time the district court entered judgment, the last decision on the July 14, 2021 claim was a denial by a qualified independent contractor. App. Vol. I at 286-291; *see also* Pl. Br. 15 (noting that an ALJ hearing was scheduled for April 4, 2022). Accordingly, that claim was not properly before the district court.

---

[2] As explained above, *supra* pp.10-11, with respect to pending and future claims, a CMS Technical Direction Letter instructs Medicare administrative contractors to "apply the coverage and payment provisions of the 2021 final rule" even to claims "for [continuous glucose monitors] or receivers and/or necessary supplies and accessories supplied *prior to* February 28, 2022," so long as the claim is submitted timely and in accordance with all procedural requirements (or, if the claim was pending as of February 28, 2022, so long as the time to file a valid appeal had not expired before that date). Appendix A – TDL-220257, at 1-3, *Olsen v. Becerra*, No. 21-cv-326 (E.D. Wash. Feb. 25, 2022), Dkt. 20-1 (emphasis added). Accordingly, future valid claims for continuous-glucose-monitor supplies should be covered regardless of the date of service.

Furthermore, just because plaintiff has presented and exhausted the three claims at issue here does not mean that she can now raise other claims not yet fully exhausted. *See Porzecanski*, 943 F.3d at 484 ("Properly channeling one claim does not permit a plaintiff to resolve other claims or causes of action that have not been channeled."); *see also Odell v. U.S. Dep't of Health & Human Servs.*, 995 F.3d 718, 723 (9th Cir. 2021).[3]

The district court also lacked jurisdiction over plaintiff's future claims, as they had not yet been presented to the agency. *See Porzecanski*, 943 F.3d at 482 (a plaintiff "cannot satisfy § 405(g)'s presentment requirement with respect to future claims because those claims have not yet arisen"). There cannot possibly be a "final decision" on a claim within the meaning of § 405(g) if the claim has not yet been submitted to CMS. *See id.*

Finally, plaintiff lacks standing to assert the claims of other Medicare beneficiaries. "[A] litigant will ordinarily not be permitted to assert the rights of absent third parties." *Flast v. Cohen*, 392 U.S. 83, 99 n.20 (1968). No exception to that rule applies here. Other Medicare beneficiaries who believe their claims for continuous-glucose-monitor supplies were wrongfully denied can seek judicial review on their own, after exhausting those claims before the agency.

---

[3] In any event, as noted above, *supra* p.24, CMS has now reprocessed and paid plaintiff's claim for disposable sensors received on July 14, 2021. Accordingly, any additional relief that could be granted by the district court on remand from this Court would no longer affect the disposition of that claim.

## 2. In any event, plaintiff was not entitled to vacatur of the 2017 CMS Ruling or a ruling on collateral estoppel

This Court need go no further than hold that the district court granted plaintiff complete relief on the three claims over which it had jurisdiction and affirm the district court's order on that basis. But even were the Court to consider the particular additional relief requested by plaintiff, it would find only additional bases on which to affirm.

a. Plaintiff first erroneously contends (at 22-27) that the district court should set aside the 2017 CMS Ruling because it was issued unlawfully. The district court properly did not decide whether it had authority to do so or whether the CMS Ruling should have been set aside, however, because the 2017 CMS Ruling does not apply to plaintiff's claims. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").

As the Secretary explained to the district court—and as the 2021 final rule makes clear—the 2017 CMS Ruling "did not address coverage of [continuous-glucose-monitor] sensors and transmitters used with insulin pumps." App. Vol. I at 271 (quoting 86 Fed. Reg. at 73,898). The district court implicitly accepted that conclusion when it entered judgment for plaintiff. And because the 2017 CMS Ruling does not address plaintiff's claims, her injury is not traceable to that ruling. Rather,

plaintiff's injury was traceable to a *misapplication* of the 2017 CMS Ruling.  At most, therefore, plaintiff could have sought a declaration that the 2017 CMS Ruling did not apply to her claims—a declaration that plaintiff effectively obtained by way of the Secretary's admission.

b.  Equally without merit is plaintiff's argument (at 31-32) that the district court should have determined that the Secretary is collaterally estopped from contesting coverage of plaintiff's claims for supplies for her continuous glucose monitor.  As the government explained in district court, an ALJ's decision paying a Medicare claim does not have issue-preclusive effect.  But the district court properly did not reach that question, and this Court need not consider it either:  The district court ruled in plaintiff's favor and the argument was forfeited.

i.  First, when a court enters judgment for a plaintiff based on one argument, it need not consider or issue a ruling on alternative arguments made in support of that judgment.  For example, in *Campbell v. City of Spencer*, 777 F.3d 1073, 1083 (10th Cir. 2014), where the defendant argued that claims should be dismissed because they were barred by claim preclusion and issue preclusion and because they failed to state a claim for relief, this Court held only that the claims were barred by claim preclusion and declined to consider principles of issue preclusion or whether the plaintiff had failed to state a claim for relief.  Thus, once the district court granted judgment for plaintiff on the grounds identified in the Secretary's confession of error—namely, that the insulin pump and disposable sensors provided to plaintiff were primarily and

29

customarily used to serve a medical purpose and were therefore durable medical equipment, *see* App. Vol. I at 271—it was under no obligation to consider plaintiff's alternative argument that she was entitled to the same judgment on the grounds of collateral estoppel. *Cf., e.g.*, *Mid-Continent Casualty Co. v. Greater Midwest Builders, Ltd.*, 794 F. App'x 757, 767 n.13 (10th Cir. 2019) ("In light of [our affirmance on other grounds], we need not consider [the defendants'] arguments for affirmance on the alternative grounds of collateral estoppel[.]"); *In re C.W. Mining Co.*, 641 F.3d 1235, 1243 n.4 (10th Cir. 2011) (the Court "need not reach the trustee's collateral estoppel argument" after ruling in the trustee's favor on the merits of the issue presented). Although plaintiff may have preferred that the district court's judgment rest on other grounds, or multiple grounds, she was not entitled to a decision on all of the arguments made in support of her claims.

Second, plaintiff was not entitled to a ruling on the collateral-estoppel argument she made to the district court because she forfeited the argument by not raising it before the Medicare Appeals Council or the ALJ. An argument not presented "to either the ALJ or the Appeals Council" is forfeited. *Chipman v. Shalala*, 90 F.3d 421, 423 (10th Cir. 1996). Plaintiffs "generally must structure their participation so that it alerts the agency to the parties' position and contentions, in order to allow the agency to give the issue meaningful consideration." *Forest Guardians v. United States Forest Serv.*, 641 F.3d 423, 430 (10th Cir. 2011) (per curiam) (quotation marks omitted); *see also Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143,

155 (1946) ("A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action.").  Furthermore, claims "must be presented 'in sufficient detail to allow the agency to rectify the alleged violation.'"  *Forest Guardians*, 641 F.3d at 430; *see also Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002) ("Claims must be raised with sufficient clarity to allow the decision maker to understand and rule on the issue raised[.]").  Like most other arguments, an argument to apply collateral estoppel can be forfeited if not timely raised.  *See Seneca-Cayuga Tribe of Okla. v. National Indian Gaming Comm'n*, 327 F.3d 1019, 1029, (10th Cir. 2003) ("An argument that the opposing party is estopped from litigating an issue must be timely raised.").

Before the Medicare Appeals Council, plaintiff argued that the Secretary was "barred by the doctrine of collateral estoppel/issue preclusion from re-litigating" the issue of whether a continuous glucose monitor is durable medical equipment because the issue had been decided against the Secretary "in *Whitcomb v. Burwell*, 17-cv-14 (decided Oct. 26, 2017) (D. Wisc.) (Jones, J.); *Bloom v. Hargan*, 16-cv-121 (decided Jan. 29, 2018) (D. Vermont) (Crawford, J.); and *Lewis v. Azar*, 15-cv-1350 (decided April 5, 2018) (D. Mass[.]) (Gorton, J.)."  Supp. App. at 4.  Plaintiff made a similar argument before the ALJ.  Supp. App. at 10-11.  Thus, plaintiff's collateral-estoppel argument before HHS relied solely on three cases brought by other Medicare beneficiaries.

Plaintiff did not argue before the ALJ or the Medicare Appeals Council that the 2018 ALJ decision on plaintiff's earlier claim precluded the Secretary from denying coverage of plaintiff's claims for glucose sensors.  That is a very different argument than the one presented to the agency.  Indeed, an argument that the Secretary is collaterally estopped by a prior determination in favor of *plaintiff* presents a different set of considerations than an argument that the Secretary is estopped by prior determinations in favor of *third parties* because "nonmutual offensive collateral estoppel simply does not apply against the government."  *United States v. Mendoza*, 464 U.S. 154, 162 (1984).  Nor does it matter that the 2018 ALJ decision may have been in the ALJ claim file and thus technically part of the extensive record before the Medicare Appeals Council.  Not only did plaintiff's request for review by the Medicare Appeals Council not cite that 2018 ALJ opinion in the discussion of collateral estoppel, but it did not cite that opinion *at all.*  Plaintiff's arguments before the Appeals Council thus did not raise her current collateral-estoppel argument "with sufficient clarity to allow the decision maker to understand and rule on the issue." *Idaho Sporting Cong.*, 305 F.3d at 965.  Accordingly, it was forfeited.

*ii.*  Plaintiff argues (at 31-32) that this Court should nonetheless determine whether collateral estoppel applies because the issue of collateral estoppel is capable of repetition yet evading review.  Plaintiff's reliance on an exception to the mootness doctrine is misplaced because neither the Secretary nor the district court asserted that the collateral-estoppel argument is moot.  Rather, as explained above, *supra* p.29-30,

the district court was permitted to enter judgment in plaintiff's favor without considering each of her alternative arguments in favor of that judgment.

In any event, plaintiff errs in relying on the capable-of-repetition-yet-evading-review exception. The Medicare Appeals Council's decision denying coverage "does not have an inherent problem of limited duration." *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 997 (10th Cir. 2005) (quotation marks omitted). Indeed, had the Secretary not confessed error, that order would have had indefinite effect and the district court would have had ample time to consider any of plaintiff's arguments. Nor can plaintiff show that she "face[s] a risk of encountering the same conduct in the future," *Marks v. Colorado Dep't of Corr.*, 976 F.3d 1087, 1094 (10th Cir. 2020), because the Secretary has now made clear that supplies for plaintiff's insulin pump are covered by Medicare.

Plaintiff may intend to rely on the voluntary-cessation exception to mootness. Reliance on that doctrine would also be unavailing, however, because "the allegedly wrongful behavior could not *reasonably* be expected to recur." *Brown v. Buhman*, 822 F.3d 1151, 1175 (10th Cir. 2016) (quotation marks omitted). As just explained, the Secretary has taken the position that disposable sensors that work with plaintiff's insulin pump are covered durable medical equipment, and the 2021 final rule confirms that position. The district court thus could not reasonably expect plaintiff's claims for disposable sensors to be denied in the future. *See id.* (the possibility that a county attorney could change policy in the future did not defeat mootness).

33

## C.    The District Court's Judgment Was Procedurally Proper

The district court did not err in granting summary judgment for plaintiff upon the Secretary's request.  In fact, "a reviewing court … has considerable discretion" to order a remand when an agency "request[s] a remand because it believes that its original decision is incorrect on the merits and wishes to change the result."  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  That is especially true when the agency agrees not only to reconsider its earlier decision, but also to grant the plaintiff all of the relief to which she is entitled.  It would have been a waste of court and party resources to continue judicial proceedings when the Secretary had already conceded liability.  *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (courts "commonly grant" motions to remand "to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources").

Plaintiff errs in arguing (at 32-34) that the district court dismissed her claims *sua sponte*.  First, the district court entered a judgment in plaintiff's favor remanding to the Secretary for payment of plaintiff's claims; it did not dismiss those claims.  *See* App. Vol. I at 11 (Dist. Ct. Dkt. 52).  Second, the judgment was requested by the Secretary; it was not issued *sua sponte*.  Indeed, the Secretary had confessed error and requested a remand *three times* before the court granted that relief.  *See* App. Vol. I at 37-38, 253, 271.  Plaintiff's reliance (at 33) on dicta in the unpublished decision in *Smilde v. Herman*, 201 F.3d 449 (10th Cir. 1999), is therefore misplaced.  In that case, the district court had *sua sponte* dismissed the plaintiff's claims—a result that was adverse,

not favorable, to the plaintiff—before even issuing a summons to defendants. Similarly, plaintiff errs in arguing (at 33-34) that the district court violated the "party presentation principle" because the judgment ultimately entered was requested by the Secretary, and plaintiff had the opportunity to—and in fact did—oppose the requested relief, arguing that the proposed relief would be inadequate.  *See* Dist. Ct. Dkt. 17, at 2.

Plaintiff also argues (at 34) that the district court's judgment was "procedurally erroneous," but she cites no case or rule prohibiting a court from entering judgment *in the plaintiff's favor* when the defendant concedes liability.  Even if the Secretary's request for judgment in plaintiff's favor must fit into a procedural box, however, the district court could reasonably have construed that request as a motion for remand, *see Kostzuta v. Apfel*, 3 F. App'x 810, 810-811 (10th Cir. 2001) (affirming grant of Commissioner of Social Security Administration's motion to remand), or a motion for summary judgment since it was made both in the Secretary's reply brief in support of a motion for summary judgment and in response to a request for a ruling on the summary-judgment motions.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

DANIEL J. BARRY
  *Acting General Counsel*

ANDREA T. MARTINEZ
  *Interim United States Attorney*

GERARD KEATING
LINDA KEYSER
  *Attorneys*

ABBY C. WRIGHT

  *Department of Health and
  Human Services*

  *s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff
  Civil Division, Room 7212
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-4820
  joshua.m.koppel@usdoj.gov*

April 2022

## STATEMENT REGARDING ORAL ARGUMENT

Appellee believes that oral argument is not necessary in this case.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,115 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel