No. 22-4012

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

LINDA P. SMITH,

Plaintiff-Appellant,

v.

XAVIER BECERRA, in his capacity as
Secretary, United States Department of Health and Human Services,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Utah
District Court Case No. 21-cv-00047 (Judge Nielson)

## SUPPLEMENTAL BRIEF FOR APPELLEE

*Of Counsel:*

DANIEL J. BARRY
*Acting General Counsel*

GERARD KEATING
LINDA KEYSER
*Attorneys*

*Department of Health and
Human Services*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

TRINA A. HIGGINS
*United States Attorney*

ABBY C. WRIGHT
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff
Civil Division, Room 7212
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4820*

# TABLE OF CONTENTS

**<u>Page</u>**

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION AND SUMMARY ...............................................................1

ARGUMENT .......................................................................................................2

      A.    Plaintiff's Challenge To The 2017 CMS Ruling Is Moot ...........................2

            1.    Plaintiff No Longer Suffers Any Redressable Injury ......................2

            2.    The Voluntary-Cessation Exception To Mootness Does Not Apply ................................................................................................5

      B.    The 2022 CMS Ruling Underscores That Plaintiff's Appeal Cannot Succeed ...............................................................................14

CONCLUSION ................................................................................................ 15

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** <u>**Page(s)**</u>

*America Cargo Transp., Inc. v. United States,*
   625 F.3d 1176 (9th Cir. 2010) ................................................................6

*Bertrand ex rel. Bertrand v. Maram,*
   495 F.3d 452 (7th Cir. 2007) ................................................................11

*Brown v. Buhman,*
   822 F.3d 1151 (10th Cir. 2016) ......................................................5, 6, 8

*Camfield v. City of Oklahoma City,*
   248 F.3d 1214 (10th Cir. 2001) ............................................................3

*Church v. Polis,*
   No. 20-1391, 2022 WL 200661 (10th Cir. Jan. 24, 2022) ...................... 3, 4

*Citizen Ctr. v. Gessler,*
   770 F.3d 900 (10th Cir. 2014) ....................................................2, 3, 4, 7

*Coral Springs Street Sys., Inc. v. City of Sunrise,*
   371 F.3d 1320 (11th Cir. 2004) ..............................................................6

*Porzecanski v. Azar,*
   943 F.3d 472 (D.C. Cir. 2019) ..............................................................13

*Prison Legal News v. Federal Bureau of Prisons,*
   944 F.3d 868 (10th Cir. 2019) ............................................2, 3, 4, 5, 6, 8, 13

*Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n,*
   784 F.2d 959 (9th Cir. 1986) ................................................................11

*Rio Grande Silvery Minnow v. Bureau of Reclamation,*
   601 F.3d 1096 (10th Cir. 2010) ........................................2, 3, 4, 5, 6, 7, 8, 9

*Sossamon v. Lone Star State of Tex.,*
   560 F.3d 316 (5th Cir. 2009) ................................................................6

*Texas v. United States,*
    523 U.S. 296 (1998) ..............................................................................15

*United States v. Burlington N. R.R. Co.,*
    200 F.3d 679 (10th Cir. 1999) .............................................................14

*United States v. Mendoza,*
    464 U.S. 154 (1984) ..............................................................................11

*Wyoming v. U.S. Dep't of Agric.,*
    414 F.3d 1207 (10th Cir. 2005) .............................................................3

**Statutes:**

42 U.S.C. § 405(h) ....................................................................................14

42 U.S.C. § 1395ff(b)(1)(A) ......................................................................14

42 U.S.C. § 1395hh(a)(2) ..........................................................................14

42 U.S.C. § 1395hh(b)(2)(C) .....................................................................14

42 U.S.C. § 1395ii ....................................................................................14

**Regulation:**

42 C.F.R. § 401.108(c) ................................................................................9

**Other Authorities:**

85 Fed. Reg. 70,358 (Nov. 4, 2020) .............................................................7

86 Fed. Reg. 73,860 (Dec. 28. 2021) ........................................................ 7, 10

## INTRODUCTION AND SUMMARY

Plaintiff filed this action seeking review of the denial of three claims for Medicare coverage. The Secretary of Health and Human Services confessed error, the district court entered judgment for plaintiff, and the Secretary paid the claims at issue. Plaintiff nonetheless took this appeal, arguing that she is entitled to a judicial determination of her right to coverage and a declaration that the 2017 Centers for Medicare & Medicaid Services (CMS) Ruling that the Department of Health and Human Services (HHS) mistakenly applied to her claims is invalid.

For nearly two years, HHS has been acting to rescind and replace the 2017 CMS Ruling that plaintiff challenges. HHS has accomplished that goal in stages: First, after providing notice and an opportunity for comment, HHS issued a final rule replacing the 2017 CMS Ruling for claims with dates of service on or after February 28, 2022. Next, the agency issued a letter to the contractors who review claims for coverage in the first instance, instructing them to apply the final rule retroactively. Finally, on May 13, 2022, the CMS Administrator issued a ruling formally rescinding the 2017 policy and instructing contractors and HHS employees at all levels of the Medicare claims-review process—including administrative law judges and the Medicare Appeals Council—to apply the terms of the final rule to valid pending or future claims and appeals, regardless of the date of service.

Following oral argument, the Court instructed the parties to file supplemental briefs addressing the effect of the new CMS Ruling. As explained below, CMS's

rescission of the 2017 CMS Ruling moots plaintiff's challenge to that policy. And because there is no indication that CMS rescinded the 2017 policy with the purpose of evading judicial review or that it intends to rescind the rescission following final disposition of this case, the voluntary-cessation exception to mootness does not apply. Even if plaintiff's challenge to the 2017 CMS Ruling were not moot, however, the 2022 CMS Ruling further demonstrates that plaintiff's argument that she needs additional relief to prevent HHS from denying future claims for Medicare coverage is speculative and not yet ripe for judicial review.

## ARGUMENT

### A.     Plaintiff's Challenge To The 2017 CMS Ruling Is Moot

#### 1.     Plaintiff No Longer Suffers Any Redressable Injury

Federal courts have jurisdiction only to consider live, concrete cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). A case becomes moot, and must be dismissed, "if the controversy ends prior to a decision," *Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014)— that is, if the "plaintiff no longer suffers a redressable 'actual injury,'" *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019). A claim for injunctive or declaratory relief generally "becomes moot once the event to be enjoined" or declared unlawful "has come and gone." *Id.* (quotation marks omitted). Likewise, "if a defendant has carried out the action that a plaintiff sought to compel …, then the claim for injunctive relief is moot because there is no point in ordering an action that

2

has already taken place." *Church v. Polis*, No. 20-1391, 2022 WL 200661, at *4 (10th Cir. Jan. 24, 2022) (unpublished) (alteration and quotation marks omitted). Such a claim "fails to 'seek more than a retrospective opinion that the plaintiff was wrongly harmed by the defendant.'" *Prison Legal News*, 944 F.3d at 880 (alterations omitted).

This Court has repeatedly recognized that "an action becomes moot when someone challenges a regulation and it is repealed." *Citizen Ctr.*, 770 F.3d at 907. Because the regulation to be enjoined already "has come and gone," *id.*, the plaintiff no longer suffers any injury from the regulation, and a favorable decision on the merits would not further change the defendant's behavior toward the plaintiff. For example, in *Wyoming v. United States Department of Agriculture*, 414 F.3d 1207, 1211-1212 (10th Cir. 2005), the Court held that a challenge to a rulemaking became moot when the Department of Agriculture issued a new rule repealing the challenged provisions of the original rulemaking. *Cf. Citizen Ctr.*, 770 F.3d at 907-908 (new state regulations prohibiting certain balloting practices rendered moot a challenge to those practices); *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1222-1223 (10th Cir. 2001) (amendment of statute rendered challenge to the statute moot).

The same principle applies when a plaintiff challenges a less formal administrative policy that is amended or rescinded prior to a decision. *See Rio Grande*, 601 F.3d at 1117 ("[T]he withdrawal or alteration of administrative policies can moot an attack on those policies." (alteration and quotation marks omitted)). For example, in *Prison Legal News*, the publisher of a magazine challenged a prison's policy that

3

permitted the warden to prohibit the receipt of a publication that referred to a prison inmate or staff member.  944 F.3d at 874.  While the claim was pending, the prison amended its policy to state that a publication may not be rejected solely on that basis. *Id.* at 876.  This Court held that the change to the prison's policy mooted plaintiff's content-censorship claim.  *Id.* at 882-883.  Similarly, in *Church*, the Court held that the revocation or alteration of public-health orders concerning COVID-19 mooted a challenge to those orders.  2022 WL 200661, at *3-4.  And in *Rio Grande*, the Court held that the issuance of a biological opinion mooted a challenge to the sufficiency of prior biological opinions.  601 F.3d at 1111-1112.

Likewise, the rescission of the 2017 CMS Ruling and the issuance of the 2021 final rule and the 2022 CMS Ruling addressing the coverage of continuous glucose monitors and their supplies moots plaintiff's challenge to the 2017 CMS Ruling.  The government has already "carried out the action that … plaintiff sought to compel through an injunction"—rescission of the 2017 CMS Ruling—and "there is no point in ordering an action that has already taken place."  *Church*, 2022 WL 200661, at *4 (alteration and quotation marks omitted).  Put otherwise, plaintiff no longer suffers any injury from the 2017 CMS Ruling because that policy "has come and gone," *Citizen Ctr.*, 770 F.3d at 907.

## 2.    The Voluntary-Cessation Exception To Mootness Does Not Apply

a.  A court may hold that an otherwise moot case remains live in certain circumstances in which a defendant voluntarily ceases an alleged illegal practice that "the defendant is free to resume at any time." *Rio Grande*, 601 F.3d at 1115 (quotation marks omitted).  This exception "counteract[s] the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id.* (quotation marks omitted).  However, the voluntary-cessation exception does not apply, and a case is moot, if the defendant shows that "the allegedly wrongful behavior could not reasonably be expected to recur." *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016) (quotation marks omitted).

Although heavy, the defendant's burden in this regard "is not insurmountable," especially in the context of the government's change of policy.  *Brown*, 822 F.3d at 1167.  The Court "accord[s] 'more solicitude' to government officials' claims that their voluntary conduct moots a case." *Prison Legal News*, 944 F.3d at 881.  Thus, the voluntary-cessation exception "frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case." *Rio Grande*, 601 F.3d at 1116.  Indeed, in the governmental context, "most cases that deny mootness rely on *clear showings* of reluctant submission by governmental actors and a desire to return to the old ways." *Id.* at 1117 (alterations and quotation marks omitted).  "[A]bsent evidence the voluntary cessation is a sham, the mere possibility a successor official

5

may shift course does not necessarily keep a case alive." *Prison Legal News*, 944 F.3d at 881; *see also, e.g.*, *Brown*, 822 F.3d at 1167-1168 ("[G]overnment self-correction provides a secure foundation for mootness so long as it seems genuine." (alterations and quotation marks omitted)); *America Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ("The government's change of policy presents a special circumstance in the world of mootness…. [U]nlike in the case of a private party, we presume the government is acting in good faith."); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009) ("[G]overnment actors … are accorded a presumption of good faith …. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."); *Coral Springs Street Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328-1329 (11th Cir. 2004) (similar).

Applying these principles, the Court has held that "even when a legislative body has the power to re-enact an ordinance or statute, ordinarily an amendment or repeal of it moots a case challenging the ordinance or statute." *Rio Grande*, 601 F.3d at 1116. Specifically, when a legislature repeals or amends a challenged statute, this Court has concluded that the voluntary-cessation exception does not apply "'where there is no evidence in the record to indicate that the legislature intends to reenact the prior version of the disputed statute.'" *Id.* at 1117. The Court is similarly hesitant to apply the voluntary-cessation exception in the case of withdrawal or alteration of

administrative policies.  *Id.*; *see also Citizen Ctr.*, 770 F.3d at 908.  "[T]he 'mere

possibility' that an agency might rescind amendments to its actions or regulations does

not enliven a moot controversy."  *Rio Grande*, 601 F.3d at 1117.

    b.  The government's rescission and replacement of the 2017 CMS Ruling

"do[es] not indicate a desire to return to old ways."  *Citizen Ctr.*, 770 F.3d at 908.

Rather, since 2020, HHS has consistently moved away from that ruling and toward a

policy of recognizing that all continuous glucose monitors—including therapeutic and

adjunctive continuous glucose monitors and insulin pumps that can perform the

functions of a continuous glucose monitor—are durable medical equipment covered

by Medicare.  *See* U.S. Br. at 8-11.  In November 2020, CMS and HHS issued a

proposed rule to replace the 2017 CMS Ruling and classify all continuous-glucose-

monitor systems as durable medical equipment.  85 Fed. Reg. 70,358, 70,398, 70,403-

70,404 (Nov. 4, 2020).  The agencies finalized that proposal the following year,

replacing the 2017 CMS Ruling for all claims with dates of service on or after the

rule's effective date of February 28, 2022.  *See* 86 Fed. Reg. 73,860, 73,860, 73,896-

73,899 (Dec. 28, 2021).  CMS then began working on a mechanism to apply the terms

of the final rule to pending or future claims with earlier dates of service.  The quickest

way CMS was able to accomplish this was by issuing a Technical Direction Letter to

Medicare administrative contractors, who review claims for Medicare coverage in the

first instance, instructing them to apply the terms of the final rule retroactively.  *See*

Appendix A – TDL-220257, *Olsen v. Becerra*, No. 21-cv-326 (E.D. Wash. Feb. 25,

2022), Dkt. 20-1.  Although relatively quick, this solution left gaps.  In particular, the Technical Direction Letter could not apply to claims filed under Medicare Part C, and, being directed at contractors, it did not bind administrative law judges or the Medicare Appeals Council.  CMS therefore began working on a CMS Ruling to close those gaps.  CMS issued that new ruling on May 13, 2022.  *See* U.S. Letter of Suppl. Auth. Add. A – CMS-1738-R (filed May 13, 2022).  The 2022 CMS Ruling rescinded the 2017 CMS Ruling and applied the terms of the 2021 final rule to all pending or future claims, regardless of the date of service.  *Id.* at 11-13.

The government has thus taken consistent and formal action to rescind the 2017 CMS Ruling and reverse the policy of classifying adjunctive continuous glucose monitors as not durable medical equipment.  This Court has held that similar actions amending or replacing an administrative policy render a case moot and demonstrate that the challenged conduct cannot reasonably be expected to recur.  *See Prison Legal News*, 944 F.3d at 884 (government's amendment of a prison's publication-review policy mooted a challenge to the policy where the revisions were "not merely informal promises or assurances or intentions," but "permanent" changes to a written policy (alterations and quotation marks omitted)); *Brown*, 822 F.3d at 1171 (a county attorney's announcement of a new office policy and declaration signed under penalty of perjury were sufficient to establish no reasonable expectation that the county attorney would violate that new policy); *Rio Grande*, 601 F.3d at 1118 (no reasonable expectation that the government would revert to challenged biological opinions where

the Court was "not … presented with a mere informal promise or assurance on the part of the governmental defendants," but where the government "took the concrete step … of issuing a new biological opinion" (alteration and quotation marks omitted)).

At argument, plaintiff's counsel asserted that a CMS Ruling is just a "letter" issued by "somebody" at the agency.  Oral Arg. 9:07-9:22, 12:12-12:33.  In fact, CMS Rulings are issued "under the authority of the [CMS] Administrator" and are binding "on all CMS components[ and] on all HHS components that adjudicate matters under the jurisdiction of CMS."  42 C.F.R. § 401.108(c).  The 2022 CMS Ruling was signed by the CMS Administrator, Chiquita Brooks-LaSure.  The ruling is thus a formal and binding policy statement issued by the highest-ranking official at CMS.

It is also plain that CMS did not rescind the 2017 CMS Ruling for the purpose of "evad[ing] judicial review" in this case "by temporarily altering questionable behavior"—the type of conduct the voluntary-cessation exception is intended to deter.  *Rio Grande*, 601 F.3d at 1115 (quotation marks omitted).  CMS began the process of replacing the 2017 policy before this suit was even filed:  The 2020 notice of proposed rulemaking was issued five months before plaintiff filed her complaint.

Furthermore, at no time has HHS or CMS indicated any intent to re-implement the 2017 CMS Ruling or return to CMS's prior policy.  And a desire to do so cannot be squared with the agency's other actions.  For dates of service on or after February 28, 2022, CMS promulgated a final rule following notice and comment that provides

for coverage; CMS would need to go through the notice-and-comment process and rescind the 2021 final rule to reverse course—a burdensome and lengthy process. And rescission of the 2022 CMS Ruling alone, while perhaps more easily accomplished, would affect only a limited and rapidly diminishing set of claims—those with dates of service prior to February 28, 2022. Reversion to the 2017 policy of denying coverage for adjunctive continuous glucose monitors would also have little effect because, as the 2021 final rule recognizes, "there were no 'adjunctive' or 'non-therapeutic' [continuous-glucose-monitor] receivers being manufactured and sold on the market as of the time th[e] rule was drafted." 86 Fed. Reg. at 73,898. Thus, the number of claims for supplies for the older adjunctive devices will naturally diminish over the next few years as Medicare beneficiaries increasingly switch to newer therapeutic (i.e., non-adjunctive) continuous glucose monitors, which were classified as durable medical equipment even under the 2017 CMS Ruling. Thus, even assuming CMS is acting in bad faith and secretly plans to revert to its prior policy—a conclusion that finds no basis in fact or law, *see supra* pp.5-6 (governmental actors are accorded a presumption of good faith in changing policies)—reinstatement of the 2017 CMS Ruling would have little, if any, practical effect.

c.  Equally unpersuasive is the suggestion (Oral Arg. 9:49-9:59) that CMS's history of denying claims for continuous glucose monitors and their supplies, even after district courts had held that such monitors are durable medical equipment, indicates that CMS does not intend to follow the 2022 CMS Ruling. Abiding by

agency policy even following an adverse district-court decision is permissible; doing so allows important questions of law to be decided in multiple lower courts before the Supreme Court steps in, and it allows the Solicitor General to consider prudential concerns in determining whether to appeal an adverse decision.  *See United States v. Mendoza*, 464 U.S. 154, 159-162 (1984) (holding that non-mutual issue preclusion is generally not available against the federal government); *see also, e.g.*, *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 455-456 (7th Cir. 2007) ("[I]f the first plaintiff wins …, the agency may try to distinguish the adverse precedent, or deny its authoritative status, when denying relief to a similarly situated applicant."); *Railway Labor Execs.' Ass'n v. Interstate Commerce Comm'n*, 784 F.2d 959, 964 (9th Cir. 1986) ("It is standard practice for an agency to litigate the same issue in more than one circuit[.]").  Thus, HHS's decision to test the legality of the 2017 CMS Ruling in multiple district courts cannot be evidence of bad faith.  Nor does the fact that HHS defended that policy on multiple occasions suggest that now that the agency has rescinded the policy in the wake of multiple adverse judgments, it will later rescind the rescission.

Indeed, HHS is no longer defending the policy announced in the 2017 CMS Ruling.  In both of the ongoing district-court proceedings concerning the coverage of continuous glucose monitors, HHS has either already paid the plaintiffs' claims or is in the process of doing so.  In *Olsen v. Becerra*, the government's answer admitted that the Secretary erred in denying coverage and explained that the claims had already been paid before the plaintiff even filed suit.  *See* Second Amended Answer 2, *Olsen v.*

*Becerra*, No. 21-cv-326 (E.D. Wash. May 11, 2022), Dkt. 41 ("There are two claims for Medicare reimbursement at issue in this case…. Defendant concedes that the Secretary erred in denying coverage for both claims."); *id.* at 3 (both claims "were paid by the [Medicare administrative contractor] … on July 15, 2021" (emphasis omitted)). Similarly, in *Lewis v. Becerra*, No. 18-cv-2929 (D.D.C.), the government explained at a May 20, 2022 status conference that in light of the recent policy changes, the claims of one plaintiff had recently been paid and HHS was in the process of paying the claim of the other plaintiff.[1] Thus, the government's current litigating position in all proceedings is consistent with the policy set forth in the 2022 CMS Ruling.

d. Nor can plaintiff revive this suit by recasting the relief sought. At oral argument, plaintiff contended that the case is not moot because the district court could grant relief by issuing (1) a declaration that plaintiff's continuous glucose monitor is durable medical equipment, and (2) declaratory and injunctive relief with regard to HHS's alleged violation of statute in issuing CMS Rulings without providing notice and an opportunity to comment. Oral Arg. 1:44-1:59, 7:34-8:18. Neither of these claims supports the contention that the case remains live.

With regard to the first request for relief, the 2022 CMS Ruling moots the request for declaratory relief because plaintiff has already obtained what she seeks—a policy under which her insulin pump with continuous-glucose-monitor functionality is

---

[1] A transcript from this status conference is not available.

12

considered durable medical equipment.  Under the mootness doctrine, now that

plaintiff has obtained that relief from the government, she is not entitled to a judicial

declaration granting that same relief.  *See Prison Legal News*, 944 F.3d at 880

("Generally, a claim for prospective injunction becomes moot once the event to be

enjoined has come and gone.  A claim for declaratory relief that does not settle some

dispute which affects the behavior of the defendant toward the plaintiff is moot

because it fails to seek more than a retrospective opinion that the plaintiff was

wrongly harmed by the defendant." (alterations, citations, and quotation marks

omitted)).  In any event, now that the claims under review have been paid, plaintiff's

requested relief has the sole purpose of seeking a resolution of her future claims that

have not yet been presented to the agency or administratively exhausted, and the

district court does not have jurisdiction over such claims.  *See* U.S. Br. at 23-27;

*Porzecanski v. Azar*, 943 F.3d 472, 482-486 (D.C. Cir. 2019) (plaintiff could not obtain

a declaration of entitlement to Medicare benefits on future claims).

With regard to the second request for relief, plaintiff seeks an advisory opinion

about whether or when CMS can issue a ruling without first going through notice and

comment.  The only CMS Ruling plaintiff challenged—the ruling issued in 2017—has

now been rescinded, so that specific challenge is moot.  And the broader challenge is

not yet ripe.  Whether any particular CMS Ruling was procedurally proper necessarily

depends on the content of the ruling and the procedure followed prior to its issuance,

including whether the ruling "establishes or changes a substantive legal standard

13

governing the scope of benefits," 42 U.S.C. § 1395hh(a)(2), and whether the agency

found good cause not to use notice-and-comment procedures, *see id.*

§ 1395hh(b)(2)(C).[2]  Such a hypothetical claim is not capable of judicial resolution.

Plaintiff's interest in a challenge to HHS's use of rulemaking procedures in the

abstract thus seeks only to "advocate a general interest, common to all citizens and

do[es] not purport to redress any specific injuries Plaintiffs may have suffered."

*United States v. Burlington N. R.R. Co.*, 200 F.3d 679, 699 (10th Cir. 1999).  Such a claim

is not founded in any case or controversy.  *Id.*  In any event, because the question

whether CMS Rulings may be issued without notice-and-comment procedures is

divorced from any particular claim for Medicare coverage, the district court would not

have jurisdiction to consider the claim under 42 U.S.C. § 1395ff(b)(1)(A).  *See also* 42

U.S.C. § 405(h) (prohibiting the exercise of federal-question jurisdiction in Social

Security cases); *id.* § 1395ii (applying the provisions of § 405(h) to Medicare).

## B.    The 2022 CMS Ruling Underscores That Plaintiff's Appeal Cannot Succeed

Even if plaintiff's challenge to the 2017 CMS Ruling were not moot, the recent

CMS Ruling further demonstrates why that challenge and plaintiff's request for a

---

[2] CMS explained that there was "good cause to issue" the 2022 CMS Ruling "without further public notice-and-comment rulemaking procedures because such procedures are impracticable, unnecessary, and contrary to the public interest in the orderly processing of [continuous-glucose-monitor] claims" and because the substantive "classification, coverage, and payment policies underlying th[e] Ruling were already subject to notice-and-comment rulemaking in connection with the December 2021 final rule."  2022 CMS Ruling at 13.

ruling on collateral estoppel cannot succeed. As the United States explained (Br. 23-25), because the district court ordered the Secretary to pay the three claims under review here, any remaining requests for relief are necessarily directed at resolving future claims for Medicare coverage. But those claims are not yet ripe for review because they "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks omitted). In particular, plaintiff's claim rests upon the assumption that HHS will deny coverage of future claims for supplies for plaintiff's continuous glucose monitor. And the 2021 final rule and the 2022 CMS Ruling each make clear that plaintiff's insulin pump, which also performs the function of a continuous glucose monitor, is durable medical equipment. Thus, the concern that HHS would deny plaintiff's future claims is not only speculative, but highly unlikely.[3]

## CONCLUSION

Plaintiff's challenge to the 2017 CMS Ruling should be dismissed as moot and the remaining judgment of the district court should be affirmed.

---

[3] Although the 2022 CMS Ruling further demonstrates that plaintiff's requests for relief on her future claims for Medicare coverage are not yet ripe, the district court properly denied those requests for other reasons as well. In particular, the district court did not have jurisdiction over claims that have not yet been presented to HHS and as to which HHS had not yet issued a final agency decision. *See* U.S. Br. at 26-27. And even if plaintiff could properly request relief as to future claims, there are additional grounds on which to affirm the judgment below: The 2017 CMS Ruling did not, by its own terms, apply to plaintiff's claims; the district court did not need to reach the collateral-estoppel issue after entering judgment for plaintiff on other grounds; and plaintiff forfeited her collateral-estoppel argument. *See* U.S. Br. at 28-33.

Respectfully submitted,

*Of Counsel:*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
    *General*

DANIEL J. BARRY
   *Acting General Counsel*

TRINA A. HIGGINS
   *United States Attorney*

GERARD KEATING
LINDA KEYSER
   *Attorneys*

ABBY C. WRIGHT

   *Department of Health and*
    *Human Services*

  *s/ Joshua M. Koppel*
                           
JOSHUA M. KOPPEL
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7212*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4820*
   *joshua.m.koppel@usdoj.gov*

June 2022

**CERTIFICATE OF COMPLIANCE**

This brief complies with the page limit of the Court's May 18, 2022 order because it contains 15 pages. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel
