Case No. 22-4012

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**Linda P. Smith,**
*Plaintiff-Appellant,*

**v.**

**Xavier Becerra, in his official capacity as
Secretary of the United States Department of
Health and Human Services,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Utah
The Honorable Howard C. Nielson, Jr.
Case No. 21-CV-00047-HCN

---

## PLAINTIFF-APPELLANT LINDA SMITH'S PETITION FOR
## REHEARING/REHEARING *EN BANC*

---

Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone: (801) 538-5000
Facsimile: (801) 538-5001
Email: phillip.lear@learlaw.com

James C. Pistorino
Parrish Law Office
788 Washington Rd.
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Email: james@dparrishlaw.com

Counsel for Linda P. Smith,
Plaintiff-Appellant

Dated: September 26, 2022

# GLOSSARY

| | |
|---|---|
| Plaintiff/Smith | Plaintiff-Appellant Linda Smith |
| ALJ | Administrative Law Judge |
| App. | Appendix |
| CGM | Continuous Glucose Monitor |
| MAC | Medicare Appeals Council |
| Op. | Panel Opinion |
| *Lewis* | *Lewis, et al. v. Becerra*, Case No. 18-CV-2929 (RBW) (pending in the District of Columbia |
| *Olsen I* | *Olsen v. Becerra*, Case No. 20-CV-374 (SMJ) (Eastern District of Washington) |
| *Olsen II* | *Olsen v. Becerra*, Case No. 21-CV-326 (TOR) (pending in the Eastern District of Washington) |
| *Zieroth* | *Zieroth v. Azar*, Case No. 20-CV-172 (MMC) (Northern District of California) |

Pursuant to FED.R.APP. 35 and 40, Plaintiff-Appellant Linda Smith files this petition for rehearing/rehearing *en banc* of the panel decision dated August 12, 2022, dismissing her case as moot. As detailed in her co-pending motion to add an attachment, contemporaneous with the Panel's decision finding mootness, the Secretary denied another of Smith's claims for CGM coverage.

Pursuant to FED.R.APP. 35, Smith states:

1) This Court's statement in *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 n. 15 (10th Cir. 2010) that government actors are "accorded more solicitude than private actors" (Op.22, n.9) conflicts with the decisions of the Supreme Court in *Grant/Laidlaw/Trinity* setting the same standard for private and government actors;

2) This Court's decision in *Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) and its multiple statements lowering/lessening/flipping the burden to prove that the "voluntary cessation" doctrine does not apply for government actors (which the Panel applied) conflicts with the decisions of the Supreme Court in *Grant/Laidlaw/Trinity* setting the same standard for private and government actors; and

3) The Panel's failed to apply the standards set forth in *Grant/Laidlaw*, *Knox*, *Trinity*, and *Davis*, with regard to mootness/the voluntary cessation doctrine.

Before turning to any other analysis, Smith believes four facts are most salient to consideration of the issues:

1) While the panel was drafting its decision assuring Smith there was no chance her (or anybody else's) CGM claims would be denied in the future, the Secretary was preparing his latest denial of Smith's CGM claims which he issued on July 29, 2022. Exhibit A (attached). While the Secretary's representation that "plaintiff's argument that she needs additional relief to prevent HHS from denying future claims for Medicare coverage is speculative" was pending before this Court (Appellee/Respondent's Supplemental Brief filed on June 1, 2022 at 2), the Secretary denied another of Smith's CGM claims.[1] Thus, the Panel's conclusion that future denial of Smith's claims was "entirely speculative" (Op.25) has been disproven by the Secretary's conduct and Smith's case is not moot;

2) The Panel decision is silent to the fact and apparently did not consider that the specific conduct at issue in this case (denying claims for CGM coverage on the grounds that a CGM is, allegedly, "not primarily and customarily used to serve a medical purpose") was already determined to constitute "bad faith";

3) Tens of thousands were irreparably injured (including by death) by the Secretary's adjudged "bad faith" as a result of their inability to secure prescribed CGMs needed to treat their Type I diabetes; and

4) The Secretary has never conceded the illegality of his conduct, continues to defend it and asserts that regardless of how illegal his conduct, the Courts are powerless to stop him.

Independent of the rejection of another of Smith's claims, the Panel made two other types of errors: 1) incorrect factual assumptions/failures to understand the Secretary's contentions; and 2) failure to apply the standards set by the Supreme Court.

---

[1] Although the claim denial is dated July 29, 2022, Mr. Smith only received an electronic notice of it on August 10, and did not review it until August 15.

3

This case is not moot.

## I.    DISCUSSION

### A.    Failures to Understand the Secretary's Contentions/ Incorrect Factual Assumptions

The Panel appears to have misapprehended the basic facts of this case and the Secretary's contentions.  At issue in this case, in part, was the Secretary's willful defiance of the laws passed by Congress by issuing policies/"rulings" without complying with the notice and comment provisions of the Medicare Act.  42 U.S.C. § 1395hh.  Although the specific "ruling" at issue is CMS-1682-R, the Secretary's failure/refusal to follow § 1395hh is longstanding and the Secretary has issued 26 other "rulings" (excluding CMS-1682-R/1738-R) without complying with § 1395hh.[2]  The Secretary has never conceded the illegality of his conduct in this regard and continued to defend it through oral argument on appeal.  Thus, the Secretary contends that, in defiance of Congress, he can issue "rulings" without complying with § 1395hh.

Moreover, the Secretary contends that, even if he acts illegally by issuing "rulings" without complying with § 1395hh, the Courts are powerless to stop him. Dkt. #32 at 17 ("This Court cannot … vacate CMS Ruling 1682-R.", "*Even if* this

---

[2] *See* https://www.cms.gov/Regulations-and-Guidance/Guidance/Rulings/CMS-Rulings?combine=&items_per_page=10&page=0

Court were to conclude that CMS Ruling 1682-R was invalid for lack of notice and an opportunity for the public to comment, it could not …") (emphasis added).[3]

Though defiance of § 1395hh was the genesis of this suit, the Panel concludes that the Secretary will not rescind the "final" Rule because that "can only be done after a notice and comment period." Op.26. Thus, the Panel simply assumes that the Secretary will not do the very thing he did that started this case, that the Secretary still defends, that the Secretary alleges Courts are powerless to stop him from doing, and (as discussed below) the Secretary did again within three months of appellate oral argument. Rather than putting the Secretary to a "heavy burden", the Panel simply assumed facts/positions that absolved the Secretary of his burden.

The Panel's contention that the "Secretary has spent the past two years formally revoking [CMS-1682-R]", again, misapprehends the facts. On January 12, 2017, without notice and comment in violation of § 1395hh, the Secretary issued CMS-1682-R and incorporated it into LCD L33822 effective immediately. Given its illegal nature, nothing prevented the Secretary from rescinding/withdrawing CMS-1682-R at any time. Indeed, every day of the next 5+ years that the Secretary continued to enforce CMS-1682-R was another day the Secretary violated § 1395hh ("No rule … shall take effect."). Indeed, the issuance of CMS-1738-R rescinding

---

[3] Smith notes that this is not a one-time position advanced by the Secretary. The Secretary has alleged that the Courts are impotent to enjoin his illegal conduct in two other cases. *Olsen II*, Dkt. #18 at 9-10; *Lewis*, Dkt. #99 at 7-11.

CMS-1682-R, again without notice and comment, just four days prior to oral argument demonstrates that the Secretary could have stopped at any time.

Rather than "working" to revoke CMS-1682-R, the Secretary acted only when there was a litigation gun to his head to avoid judicial review. By late October 2020, the Secretary was facing a motion seeking "bad faith" attorney's fees in *Zieroth* as well as a motion for summary judgment and permanent injunction in the *Olsen I* case. Around November 4, 2020, the Secretary published a notice of proposed rulemaking that would modify CMS-1682-R (but not rescind it). Thereafter, in both the *Zieroth* and the *Olsen I* cases, the Secretary cited the proposed rule in his papers. *Zieroth*, Dkt. #40; *Olsen I*, Dkt. #27 at 8-9 and Dkt. #47 at 8. Subsequently, the Court in *Zieroth* issued its fees decision and the Court in *Olsen I* avoided finding that CMS-1682-R issued illegally. With the immediate pressure of litigation removed,[4] the Secretary continued to illegally enforce CMS-1682-R between November 2020 and December 28, 2021, soon after the *Olsen II* case was filed and assigned to the same "bad faith" judge. Thus, rather than "working" to stop his illegal conduct, the Secretary responded to litigation pressure and, when the pressure was removed, continued his illegal, bad faith, deadly conduct.

---

[4] Though Smith had a pending motion for summary judgment and to vacate CMS-1682-R pending in this case. Dkt. #27.

The Panel's discussion of the Technical Direction Letter (TDL) issued in February 2022, further demonstrates its misapprehension of key facts. Op.11-13. Facing a motion for preliminary injunction in the *Olsen II* case, without notice and comment, in February 2022, the Secretary issued the TDL purporting to direct entities considering Medicare Part B (but not Part C) CGM claims to ignore the binding CMS-1682-R and retroactively apply CMS-1738-R to pre-February 28, 2022, claims. As has been pointed out in other papers, being issued without notice and comment (like CMS-1682-R), the TDL violated § 1395hh[5] and also called for the ALJs within the Department to violate the Secretary's regulations by ignoring CMS-1682-R. 42 C.F.R. § 405.1063(b) ("CMS Rulings are … binding"). Smith fails to see how a violation of the same statute that was the genesis of this case within three months of appellate oral argument could ever be a basis to conclude that the Secretary has met his burden to prove that it would be unreasonable to expect him to repeat that same conduct in the future.

Along those same lines, the Panel assumes that the Secretary would not rescind CMS-1738-R (and, presumably, the TDL and the "final" Rule of December) because to do so would "reopen the floodgates for other beneficiaries to challenge the denial of their CGM claims." Op.25. That is flawed in multiple respects.

---

[5] *See* 42 U.S.C. § 1395hh generally, including (e) with required findings in order for policies to apply retroactively.

First, the Secretary bears the burden of proving mootness and that the voluntary cessation doctrine does not apply.  Importantly, "floodgates" of challenges/litigation is not an argument that the Secretary made.  Thus, rather than putting the Secretary to his burden, the Panel absolved the Secretary of it and took on the task of making arguments/assumptions for the Secretary.  This is improper.

Moreover, there is no factual support for a "floodgates" argument.  More than 275,000 claims submitted by more than 50,000 persons have been denied based on the "bad faith" CMS-1682-R but there have only been five litigations challenging it (*Lewis* (ongoing); *Zieroth*; *Olsen I*; *Olsen II* (ongoing) and this case).  This is at least in part because the denials Medicare insureds received from the Secretary did not reveal that claims were being denied on the grounds that a CGM was not "primarily and customarily used to serve a medical purpose."

Instead, the denials simply said "Medicare does not pay for this item or service" (App.157) or affirmatively misrepresented to insureds that Medicare payment of CGM claims was "statutorily excluded."  *Lewis*, Dkt. #63 at 10.  Thus, the basis for denial was concealed from the insureds.

In light of the concealment of the basis for denial, only ~1% of the claims denied on the adjudged "bad faith" grounds were appealed by the elderly/ill insureds to the next level.   Through July 2019, only 145 CGM appeals reached the Medicare Appeals Council, where every one of those claims was denied.  *Lewis*, Dkt. #63 at

10.  In the best-case scenario, even getting a claim appeal to the MAC stage would take a year.  From the point of MAC denial, assuming they could meet the amount-in-controversy requirement, most insureds faced the prospect of securing *pro bono* counsel.  Thus, there is no basis for the Panel's "floodgates" assumption.

## B.    The Panel's Contentions About Future Denials

The Panel decision rests on numerous findings that Smith faced no prospect of continued denial of her claims her fear of future denials was "speculative."  On that basis the Panel rejected that Smith needed a finding that her CGM was "durable medical equipment" so that she could assert collateral estoppel.  Op.18 ("The Final Rule, which became effective on February 28, 2022, ensures coverage for CGM supplies received after that date."; "The Secretary no longer has any basis on which to deny Smith's pending or future claims."; Op.20 ("Because a ruling on collateral estoppel would not redress any actual or imminent injury suffered by Smith, we do not have jurisdiction to consider the issue.").

In the clearest possible way, these conclusions have now been shown to be in error by the Secretary's latest denial of Smith's claim for CGM coverage (Exhibit A).  This case is not moot.

## C.    The Panel Failed to Apply the Standards Set By the Supreme Court

As held by the Supreme Court in *U.S. v. W.T. Grant Co*., 345 U.S. 629, 632 (1953) (cleaned up):

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot. A controversy may remain to be settled in such circumstances, *e.g.*, a dispute over the legality of the challenged practices. The defendant is free to return to his old ways. This, together with the public interest in having the legality of the practices settled, militates against a mootness conclusion. … The courts have rightly refused to grant defendants such a powerful weapon.

Although a defendant can try to prove "no reasonable expectation that the wrong will be repeated," its burden "is a heavy one." *Id*. at 633; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 189-190 (2000) (standard is "stringent" and the burden is "formidable"). Even if a defendant ceases the challenged conduct, the plaintiff's claims will be moot *only* if the *defendant* proves that (1) "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *and* (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). The Supreme Court has explained that a mere alleged change in behavior and a professed disclaimer of any intention to revive the conduct does not suffice to make a case moot, but they are factors to be considered. *Grant*, 345 U.S. 633 ("Such a profession does not suffice to make a case moot …").

This Court's decisions in *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096 (10th Cir. 2010) (and its assertion that: 1) government actors are "accorded more solicitude than private actors") (*Id*. at 1116, n. 15, cited at Op.22, n.9) and *Brown v. Buhman*, 822 F.3d 1151 (10th Cir. 2016) (and its

assertions that: 1) "mootness is more likely if the case in question was the catalyst from the agency's adoption of the new policy (*Id*. at 1171, cited at Op.23, 24-25); and 2) that "most cases that deny mootness following government officials' voluntary cessation rely on *clear showings* of reluctant submission by governmental actors and a desire to return to the old ways") (*Id*. at 1167, cited at Op.26) cannot be reconciled with the holdings of *Grant/Laidlaw*.

Pursuant to *Grant/Laidlaw*, the party alleging that the voluntary cessation doctrine does not apply bears the "heavy burden", the "formidable burden", the "stringent standard" of proving that "it is absolutely clear that the allegedly wrongful behavior could not be expected to recur."  The Supreme Court has never approved a lower standard for government actors or more "solicitude" to them.  Likewise, the Supreme Court has never approved a standard requiring "*clear showings* of reluctant submission by governmental actors and a desire to return to the old ways" to avoid a mootness determination.  Moreover, *Buhman*'s statement that "mootness is more likely if the case in question was the catalyst from the agency's adoption of the new policy" is flatly inconsistent with the holding in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct. 2012 (2017), where, in response to the case in question, the Governor of the State announced a change in policy but the Supreme Court held that the case was still not moot.  *Id*. at 2019, n.1.  Contrary to *Buhman*,

but consistent with *Trinity*/*Knox* (*infra*), when a suit is the catalyst for an alleged change in policy to avoid injunctive relief, mootness is *less likely* not *more likely*.

In its decision, the Panel cited to and relied on the holdings in *Rio Grande* and *Buhman* to effectively absolve the Secretary of meeting his burden to prove mootness. Indeed, the Panel erroneously placed the burden on Smith to *disprove* mootness. Op.25 ("Smith contends that …."). That approach is inconsistent with the Supreme Court's decisions in *Grant/Laidlaw*.

### 1.    The Panel Decision Improperly Applied The Supreme Court's Cases

The Secretary bore the burden of proving mootness. That is, the Secretary bore the burden of proving that it is "absolutely clear" that he could not reasonably be expected to deny CGM claims/violate § 1395hh in the future when he:

1) Created a bad faith policy contending that a CGM was not "primarily and customarily used to serve a medical purpose";

2) Issued the policy illegally (in violation of § 1395hh) knowing that it would result in the denial of CGM claims and, therefore, irreparable damage, including the deaths, of thousands;

3) Enforced the policy illegally for a period of five years through his own ALJs;

4) Enforced the policy *after* District Court's told him it was wrong, including after a "bad faith" finding, including continuing to deny on the same bad faith grounds the CGM' claims of the very plaintiff (Olsen) the bad faith finding was made;

5) Engaged in a scheme to pay only the claims of those who reached District Court, while continuing to apply the bad faith, illegal policy to everyone else;

6) Only made steps to temporarily adjust his conduct in response to litigation pressure, including the oral argument in this case;

7) Again violated § 1395hh within three months of appellate oral argument by issuing the TDL;

8) Issued CMS-1728-R, again without notice and comment, within four days of appellate oral argument in this case; and

9) Continues to defend the legality of issuing policies/rulings in violation of § 1395hh and further contends that the Courts are powerless to stop hi even if illegal.

Had the Panel applied the standards set forth in *Grant/Laidlaw*, etc., rather than those of *Rio Grande* and *Buhman*, and properly applied the burden, the Secretary did not meet his burden.

When considering "reasonable expectation", *inter alia*, a court should consider: 1) the *bona fides* of the expressed intent to comply; 2) the effectiveness of the discontinuance; and 3) the character of the past violations. *Grant*, 345 U.S. at 633.

### a)  Bona Fides

With regard to *bona fides*, efforts to defeat judicial review (whether to avoid a sanction or insulate a prior decision) counsel against a finding of mootness. *Knox v. S.E.I.U.*, 567 U.S. 298, 307 (2012) (post-certiorari change "must be viewed with a critical eye"); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) ("Our interest in preventing litigants from attempting to manipulate the Court's jurisdiction to

insulate a favorable decision from review further counsels against a finding of mootness here.").

The Panel sought to limit the scope of the inquiry by contending "there is no indication that the Secretary changed his policy in response to *this* litigation." Op.13 (emphasis added). That is not the inquiry. Regardless of whether there is one case pending or three, efforts to avoid judicial review counsel against a mootness finding. Thus, again, the Panel's opinion is inconsistent with *Trinity*/*Knox*.

Moreover, a significant factor in making the "reasonable expectation" determination is whether the defendant continues to maintain that its prior conduct was lawful. If so, then there is no reason to expect that a defendant will refrain from engaging in that conduct in the future, despite a momentary change. *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42-43 (1944); *Knox*, 567 U.S. at 307 ("since the union continues to defend the legality of the Political Fight-Back Fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future."). Here, the Panel's failure to even consider the Secretary's continued defense of his conduct is inconsistent with cases such as *Knox*.

Another factor is how long the challenged policy has been in effect. *Gray v. Sanders*, 372 U.S. 368, 376 (1963). The Panel concedes that the "Secretary long refused to recognize CGMs as durable medical equipment" (Op.25), however, again, the Panel did not factor that into its determination. Ignoring all the standards and

assuming that the party alleging that the voluntary cessation doctrine does not apply will not reoffend is not consistent with the "heavy burden" of *Grant*.

### b) Effectiveness of Discontinuance

Under *Grant*, a Court evaluating mootness should consider the effectiveness of discontinuance. *Grant*, 345 U.S. at 633.

The Panel opinion concedes that the TDL and CMS-1738-R could be rescinded "with relative ease." Op.26. Simultaneously, the Panel contends that the notice and comment requirements would preclude the Secretary from rescinding the "final" Rule without compliance. *Id.*

Defiance of the notice and comment provisions is the very foundation of this case. As detailed above, the Panel simply assumes that the Secretary will not do the very thing he did that started this case, that he has continued to do for 5+ years, that he contends is legal (and that the Courts are powerless to stop him even if illegal) and that he did within three months of appellate oral argument.

An assumption that flies in the face of the Secretary's years long conduct is not sufficient to carry the Secretary's "heavy burden" and the Panel's assumption of the same is not consistent with the Supreme Court's decisions in *Grant*/*Laidlaw*.

### c) Character of Past Violations

Pursuant to *Grant*, a Court evaluating mootness should, in some cases, consider the character of past violations. *Grant*, 345 U.S. at 633. If the past violation

was an inadvertent traffic offense, that might be one thing.  If the past violation caused disability and death, another.

Remarkably, the Panel' decision does not even mention the fact that the Secretary's denials of CGM claims on the "primarily and customarily used to serve a medical purpose" grounds was found to be in bad faith and that the Secretary continued to engage in that conduct *after* the bad faith finding.  Further, the Panel is silent as to the thousands irreparably injured by the bad faith policy.  The Panel's failure to even consider the character of the past violations is inconsistent with *Grant*.

### 2.    "Completely and Irrevocably Eradicate the Effects of the Alleged Violation"

The Secretary bears the "heavy burden" of proving that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Davis*, 440 U.S. at 631.  Yet he has not done so and the Panel does not appear to have found otherwise.

Instead, the Panel asserts that the Secretary has eradicated the effects solely with regard to Smith.  Op.26-27.  The latest denial shows otherwise.

Moreover, the Panel's effort to limit the inquiry to the effects on Smith, as opposed to the effects beyond her, is inconsistent with *Davis*.  Just as a finding that CMS-1682-R issued illegally and an injunction would have effects beyond Smith, so the voluntary cessation inquiry looks beyond the individual plaintiff.  *Grant*, 345

U.S. at 632 ("public interest in having the legality of practices settled"). Otherwise, any Defendant could create mootness and avoid judicial review by swearing not to apply the challenged policy to the Plaintiff, while continuing to apply it to others. Such an approach would be directly contrary to *Grant/Davis*. The Panel's effort to limit the "effects" test to Smith is not consistent with *Davis*. In any case, the Secretary's current denial of Smith's claim shows there is no mootness.

## II.    CONCLUSION

For the reasons set forth above, the petition for rehearing/rehearing *en banc* should be granted, the Panel decision reversed, and this case remanded for a ruling on the merits and the relief sought by Smith.


Dated:  September 26, 2022          Respectfully submitted,

/s James C. Pistorino
Parrish Law Office
788 Washington Road
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

/s Phillip Lear
Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:  (801) 538-5001
Email:  phillip.lear@learlaw.com
Counsel for Linda P. Smith,
Plaintiff-Appellant

18

## CERTIFICATE OF COMPLIANCE

Pursuant to FED.R.APP. 40, the undersigned hereby certifies that, excluding

the items listed in FED.R.APP. 32, the attached petition is 3,891 words long as

measured using Microsoft Word.

Dated:  September 26, 2022              Respectfully submitted,

/s James C. Pistorino_____
Parrish Law Office
788 Washington Road
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

/s Phillip Lear_____
Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:  (801) 538-5001
Email:  phillip.lear@learlaw.com
Counsel for Linda P. Smith,
Plaintiff-Appellant

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LINDA P. SMITH,

      Plaintiff - Appellant,

v.

                                     No. 22-4012

XAVIER BECERRA, in his capacity as
Secretary of the United States Department
of Health and Human Services,

      Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:21-CV-00047-HCN)**
_____

James C. Pistorino, Parrish Law Office, Pittsburgh, Pennsylvania, (Phillip Wm. Lear, Lear & Lear PLLC, Salt Lake City, Utah, with him on the briefs), for Plaintiff-Appellant.

Joshua M. Koppel, Appellate Staff Attorney, Civil Division, United States Department of Justice, Washington, DC (Brian M. Boynton, Principal Deputy Assistant Attorney General, Andrea T. Martinez, Interim United States Attorney, and Abby C. Wright, Appellate Staff Attorney, Civil Division, United States Department of Justice, Washington, DC, and Of Counsel: Daniel J. Barry, Acting General Counsel, Gerard Keating and Linda Keyser, Attorneys, Department of Health and Human Services, with him on the brief), for Defendant-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **EID**, and **CARSON**, Circuit Judges.
_____

**TYMKOVICH**, Chief Judge.
_____

Like many diabetics, Linda Smith uses a prescribed continuous glucose monitor (CGM) to track and regulate her glucose levels. When Smith purchased her CGM and its necessary supplies between 2016 and 2018, she sought reimbursement for her expenses through her medical insurance program, Medicare Part B. Medicare administrators denied her claims. Relying on a 2017 ruling issued by the Centers for Medicare and Medicaid Services (CMS), Medicare administrators concluded that Smith's CGM is not "primarily and customarily used to serve a medical purpose" and therefore is not covered by Medicare Part B. Smith appealed the denial of her reimbursement claims through the multistage Medicare claims review process. At each stage, the respective adjudicator confirmed the denial of her claims.

Smith then sued the Secretary of the Department of Health and Human Services in federal court, seeking monetary, injunctive, and declaratory relief. Contending that her CGM and supplies satisfied the requirements for Medicare coverage, Smith requested that the district court (1) order the Secretary to pay her claims; (2) declare that CGMs are covered by Medicare; and (3) set aside the 2017 ruling as unlawful because it did not go through the proper rulemaking process.

Instead of asking the court to uphold the denial of Smith's claims, the Secretary admitted that Smith's claims should have been covered and that the agency erred by denying her claims. The Secretary requested a remand so the agency could reimburse Smith's claims. Rather than accept the Secretary's

2

admission of error, Smith argued that the Secretary only admitted error to avoid judicial review of the legality of the 2017 ruling.

During Smith's litigation, CMS changed its Medicare coverage policy for CGMs. Prompted by several adverse district court rulings, CMS promulgated a formal rule in December 2021 classifying CGMs as durable medical equipment covered by Medicare Part B. But the rule applied only to claims for equipment received after February 28, 2022, so pending claims for equipment received prior to that date were not covered by the new rule.

Considering the new rule and the Secretary's confession of error, the district court in January 2022 remanded the case to the Secretary with instructions to pay Smith's claims. The district court did not rule on Smith's pending motions regarding her equitable relief claims; instead, the court denied them as moot. Smith moved to alter or amend the judgment, contending that her equitable claims were still live, but the district court denied the motion.

Smith appealed, arguing that her equitable claims are justiciable because the 2017 ruling has not been formally rescinded and Medicare administrators can still rely on the ruling to deny claims for equipment received prior to February 28, 2022. But in May 2022—shortly before oral argument in this case—the Secretary issued a new ruling. The 2022 ruling expressly rescinded the 2017 ruling and ordered Medicare administrators to approve CGM claims for equipment received prior to February 28, 2022. The Secretary asserted the 2022 ruling further rendered Smith's claims moot.

3

We agree with the Secretary that Smith's claims are moot. Taken together, the December 2021 final rule and the 2022 CMS ruling ensure that pending and future claims for CGMs, including the equipment owned by Smith, will be covered by Medicare. Because the recent regulatory developments moot Smith's equitable claims, we do not have jurisdiction to consider Smith's appeal. We further conclude that although CMS voluntarily changed its CGM coverage policy during this litigation, the voluntary cessation doctrine to avoid mootness does not apply.

## I. Background

Diabetes is a disease that affects how the body handles glucose, a sugar that is the main source of energy for many cells and tissues. Glucose enters the bloodstream through food or after being produced in the liver. Insulin, which is produced by the pancreas, helps the body process glucose by moving glucose from the bloodstream to cells and tissues. When the body does not produce enough insulin, glucose can build up in the bloodstream, causing severe health problems, such as heart disease, stroke, kidney failure, or even death.

To avoid a medical emergency, diabetics must constantly monitor their glucose levels. The traditional means of doing so is with a blood glucose test, which involves pricking a finger and placing a drop of blood on a test strip to determine current glucose levels. Depending on the results of the test, diabetics may need to take insulin or ingest glucose to adjust their blood sugar levels. While blood glucose tests are accurate, they can be painful and inconvenient for

many diabetics, some of whom must wake up several times throughout the night to perform a test.

To address these issues, researchers developed CGMs, which are capable of automatically measuring blood glucose levels at short intervals—some monitors can take readings as frequently as every five minutes.  To use a CGM, diabetics insert a disposable sensor underneath their skin.  The sensor detects glucose levels and sends the data via a transmitter to a display monitor.  Some CGM devices include insulin pumps, which dispense insulin automatically if there is a high glucose reading.  Diabetics typically need to replace a sensor once a week, a transmitter once every few months, and a monitor after several years.  CGMs are often preferred because they monitor glucose levels automatically and more frequently than blood glucose tests.  More frequent readings decrease the risk that a sudden onset of symptoms will lead to a medical emergency.  They also lead to better overall glucose-level control, which can prevent long-term health problems.

### Smith's Medicare Claims

Linda Smith has suffered from diabetes for over 55 years.  Her condition is particularly dangerous because she has hypoglycemic unawareness, which means she is unable to physically sense when her blood glucose levels are too low.  Smith is also prone to rapid and unpredictable changes in her glucose levels.  Because Smith often has few physical warnings of an impending diabetic emergency, Smith must be vigilant in monitoring her glucose levels—failing to

do so could be catastrophic for her.  On at least one occasion, Smith lost consciousness and had to be hospitalized.

To better manage Smith's diabetes, a doctor prescribed her a Medtronic MiniMed 630G CGM with disposable sensors.  Smith, who has Medicare Part B health insurance, filed Medicare reimbursement claims for the monitor and sensors.  Specifically, Smith sought reimbursement for a MiniMed monitor prescribed to her in December 2016, and disposable glucose sensors she received in November 2017 and May 2018.

Medicare administrators denied Smith's claims.  The administrators determined that Smith's specific monitor and supplies were not "durable medical equipment" covered by Medicare.  Smith appealed her claims all the way to the Medicare Appeals Council, but her claims were rejected.[1]

Medicare administrators denied Smith's claims based on CMS-1682-R, a ruling issued by CMS in January 2017.  That ruling—which is binding on Medicare administrators and constitutes an "official statement[] of agency policy

---

[1]  Medicare reimbursement claims must go through the following administrative process before a beneficiary may seek judicial review: (1) initial coverage determination made by a CMS administrative contractor; (2) redetermination decision made by same contractor; (3) reconsideration by a qualified independent contractor; (4) review by an administrative law judge (ALJ) (subject to a minimum amount-in-controversy requirement); and (5) de novo review by the Medicare Appeals Council (MAC), which constitutes a final decision by the Secretary.

and interpretation"—explains that a CGM will only be covered by Medicare if it meets the definition of "durable medical equipment."  App., Vol. 2 at 314.  The Medicare regulations define "durable medical equipment" as

> [E]quipment, furnished by a supplier or a home health agency that meets the following conditions:
>
> (1) Can withstand repeated use.
>
> (2) Effective with respect to items classified as [durable medical equipment] after January 1, 2012, has an expected life of at least 3 years.
>
> (3) Is primarily and customarily used to serve a medical purpose.
>
> (4) Generally is not useful to an individual in the absence of an illness or injury.
>
> (5) Is appropriate for use in the home.

42 C.F.R. § 414.202.  In CMS-1682-R, CMS explained that some CGMs require a separate blood glucose test to confirm blood sugar levels before corrective measures can be taken.  Because these CGMs cannot be used independently to make diabetes treatment decisions, CMS concluded that such devices—which CMS refers to as "non-therapeutic" or "adjunctive" devices—are not "primarily and customarily used to serve a medical purpose" and thus do not meet the definition of durable medical equipment.  App., Vol. 1 at 85–87.  CMS reasoned that only those CGMs "approved by the [Food and Drug Administration] for use *in place of* a blood glucose monitor for making diabetes treatment decisions" are durable medical equipment.  *Id.* at 92 (emphasis added).

7

Medicare administrators and an administrative law judge determined that CMS-1682-R precluded coverage for Smith's claims because the Food and Drug Administration "has not approved the beneficiary's CGM system . . . as a replacement for a blood glucose monitor." App., Vol. 2 at 320. In a final agency decision, the Medicare Appeals Council adopted the reasoning of the administrative law judge, ruled that Smith's claims were not covered by Medicare, and deemed Smith financially responsible for the incurred expenses.

### *Procedural Background*

Having exhausted her administrative remedies, Smith sued the Secretary of the Department of Health and Human Services in federal court.[2] In addition to seeking monetary reimbursement for her claims, Smith also sought injunctive and declaratory relief. Specifically, she requested that the district court (1) set aside CMS-1682-R because it did not go through notice and comment rulemaking as required by statute; (2) declare that CGMs are durable medical equipment, regardless of whether they replace blood glucose tests; and (3) declare that the Secretary's denials of CGM claims were unsupported by substantial evidence, arbitrary and capricious, abuses of discretion, and not in accordance with the law.

Rather than contest Smith's claims, the Secretary admitted that Medicare administrators erred by denying coverage. The Secretary explained that because Smith's CGM also serves as an insulin pump, it meets the definition of durable

---

[2] CMS is part of the Department of Health and Human Services.

medical equipment under the Medicare statute and regulations.  Based on this admission of error, the Secretary requested that the district court enter judgment in favor of Smith and remand to the agency for payment of Smith's claims.[3]

Despite the Secretary's confession of error, the district court allowed the case to proceed.  Shortly after the Secretary filed his answer, Smith moved for summary judgment.  Smith argued that the district court should vacate CMS-1682-R because the ruling did not go through the notice and comment process as required by 42 U.S.C. § 1395hh.  In a separate summary judgment motion, Smith argued that the Secretary should be collaterally estopped from litigating the issue of whether Smith's CGM is durable medical equipment because an administrative law judge had previously ruled that Smith's monitor was covered.

In response, the Secretary contended that the district court does not have the power to vacate CMS-1682-R because the Medicare statute does not authorize a court to set aside agency actions such as CMS rulings, citing 42 U.S.C. §§ 405(g), 1395ii.  The Secretary also alerted the district court to the fact that in November 2020, CMS published a notice of proposed rulemaking stating that the agency planned to change its policy regarding coverage of CGMs.  Unlike CMS-

---

[3]  The Secretary initially said that only Smith's claim for the monitor itself should be paid on remand.  While the Secretary acknowledged that administrators erred in denying Smith's other two claims for the sensors, the Secretary explained that it had yet to be determined "whether the sensors should be covered as reasonable and necessary for the operation of the insulin pump."  App., Vol. 1 at 38.  The Secretary later amended his position based on intervening regulation changes and requested that the district court "remand to the Secretary for payment of [all] three claims."  *Id.* at 271.

1682-R, the new rule would classify CGMs as durable medical equipment regardless of whether they can be relied on to make diabetes treatment decisions without the use of a separate blood glucose test. *See* 85 Fed. Reg. 70,358 (Nov. 4, 2020). The Secretary explained to the district court that the "proposed rule would supersede [CMS-1682-R], if finalized, and in doing so would moot Mrs. Smith's claim for vacatur." App., Vol. 1 at 263.

Following a public comment period, CMS issued a final rule in December 2021 classifying CGMs, transmitters, and sensors as durable medical equipment covered by Medicare Part B. *See* 86 Fed. Reg. 73,860 (Dec. 28, 2021) ("Final Rule"). Based on this regulatory change, the Secretary renewed his request for the court to enter judgment in favor of Smith and to remand the case. In January 2022, the district court entered a judgment remanding the matter to the Secretary with instructions to pay Smith's three claims. In a docket text order, the court denied Smith's pending summary judgment motions regarding CMS-1682-R and collateral estoppel as moot.

Finding the court's order and judgment inadequate, Smith moved to alter or amend the judgment, arguing that her motions were not moot because she sought equitable relief and collateral estoppel, both of which the court had not addressed, and the Secretary's concession did not resolve. Smith contended that the Final Rule issued by CMS did not moot her claims because the rule only applies to claims for CGMs and supplies received *after* February 28, 2022. Smith informed the court that she had other reimbursement claims pending before the agency for

10

CGM sensors she received on July 14, 2021.  Since Medicare administrators had denied those July 2021 claims even after the Secretary confessed error as to Smith's 2016, 2017, and 2018 claims, Smith asserted there was a reasonable probability that the Secretary would continue to deny pending CGM claims based on CMS-1682-R.  Therefore, Smith argued her equitable relief claims still presented a live controversy.

The district court denied Smith's motion to alter or amend the judgment.  It explained that Smith's pending motions were moot because the court granted judgment in Smith's favor.  The court further explained that "while [Smith] appears to desire additional relief . . . the court granted [Smith] all of the relief authorized by statute."  App., Vol. 1 at 11 (citing 42 U.S.C. §§ 405(g), 1395ii).

### *Subsequent Developments*

After Smith filed her notice of appeal, CMS sent a Technical Direction Letter to all Medicare administrative contractors.  The Letter explained that although the coverage and payment provisions of the Final Rule only apply to CGMs and supplies received after February 28, 2022, contractors should approve valid reimbursement claims for equipment received before that date.  *See* Technical Direction Letter 220257, Docket 20-1, *Olsen v. Becerra*, No. 21-cv-326

(E.D. Wash. Feb. 25, 2022).[4]  The Letter said that by applying the coverage provisions of the Final Rule retroactively to pending claims, CMS will "avoid expending administrative resources on further application of [CMS-1682-R] on CGMs and additional appeals challenging application of [CMS-1682-R]." *Id.* at 2.  Even though the Letter is not binding on Medicare contractors, the Secretary contends on appeal that the Letter serves as further evidence that Smith's remaining claims are moot because "future valid claims for continuous-glucose-monitor supplies should be covered regardless of the date of service."  Resp. Br. at 26 n.2.  Smith insists that because the Letter is not binding and CMS-1682-R has not been formally rescinded, there is no guarantee that pending claims for CGMs will be approved.

On May 13, 2022—four days before the parties' oral argument in this case—CMS issued a binding ruling to formally implement its policy of applying the Final Rule retroactively to claims for CGM supplies received prior to February 28, 2022.  *See* CMS-1738-R, available at https://www.cms.gov/ regulations-and-guidanceguidancerulingscms-rulings/cms-1738-r.  In CMS-1738-

---

[4]  Because the Letter was issued after the district court's entry of final judgment, it was not before the district court and is not part of the record on appeal. Nevertheless, we may take judicial notice of this publicly filed letter for the first time on appeal. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012).

R, CMS expressly rescinded CMS-1682-R and prohibited its further application

to pending claims.[5]

## II. Analysis

Smith contends the district court erred by denying her equitable claims as

moot. The Secretary counters that even if Smith's equitable claims were still live

when the district court declined to address them, they have since become moot

due to the recent regulatory changes affecting coverage of CGMs. The Secretary

also argues that the voluntary cessation doctrine—which obviates mootness—

does not apply here because there is no indication that the Secretary changed his

coverage policy in response to this litigation or that he will reverse course once

this litigation concludes.

We dismiss the appeal as moot. The Final Rule concerning future claims

for CGMs, coupled with the recent issuance of Technical Direction Letter 220257

---

[5] Specifically, CMS-1738-R states:

> This Ruling provides notice of the CMS Administrator's determination to rescind a January 17, 2017 CMS Ruling (CMS-1682-R) . . . the substantive CGM classification, coverage, and payment policies established by the December 2021 final rule shall be applied to claims for a CGM monitor or receiver and/or its necessary supplies and accessories where either: (1) a valid CGM claim or valid CGM appeal was pending as of February 28, 2022; or (2) the right to submit a valid CGM claim or file a valid CGM appeal had not expired as of February 28, 2022.

CMS-1738-R at 1–2.

and CMS-1738-R, fully redress Smith's equitable claims.  Vacating CMS-1682-R and declaring that CGMs are durable medical equipment covered by Medicare would have no effect because CMS has already rescinded CMS-1682-R and issued a formal rule classifying CGMs and their supplies as durable medical equipment.  In short, Smith no longer suffers from an actual or imminent injury that can be redressed by this court.

We also conclude that the voluntary cessation doctrine does not apply.  Although CMS changed its CGM coverage policy during this litigation, mooting Smith's claims, the Secretary has met his burden of establishing that the policy change will not be rescinded after this case concludes.

### A.  Mootness

Article III of the Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."  U.S. Const. art. III, § 2; *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).  The case-or-controversy requirement "ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved."  *Genesis Healthcare*, 569 U.S. at 71.  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'"  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).  The

case-or-controversy requirement applies "through all stages of federal judicial proceedings, trial and appellate." *Id.*

As Article III requires an actual controversy, we lack subject-matter jurisdiction over a case that is moot. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019). We review mootness determinations de novo. *Id.* at 878. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). In other words, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (quoting *Lewis*, 494 U.S. at 472). "The crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world." *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (quotations and citation omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike*, *Inc.*, 568 U.S. 85, 91 (2013) (quotations and citation omitted).

We take a claim-by-claim approach to mootness and "must decide whether a case is moot as to 'each form of relief sought.'" *Prison Legal News*, 944 F.3d

15

at 880 (quoting *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019)).  The

defendant bears the burden of establishing that a "once-live case has become

moot." *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022).  An

injunctive relief claim becomes moot when the "plaintiff's continued

susceptibility to injury" is no longer "reasonably certain" or is based on

"speculation and conjecture." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir.

2011) (quotations and citation omitted).  Similarly, a declaratory relief claim is

moot if the relief would not affect "the behavior of the defendant toward the

plaintiff." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096,

1110 (10th Cir. 2010) (quotations and citation omitted); *Jordan*, 654 F.3d at 1025

("[I]n the context of an action for declaratory relief, a plaintiff must be seeking

more than a retrospective opinion that he was wrongly harmed by the

defendant.").

In her complaint, Smith requested that the district court enter an order

providing the following relief:

> (1) setting aside CMS-1682-R and its determination that
> CGMs that do not completely replace finger prick/test
> strips are not [durable medical equipment] within the
> meaning of 42 U.S.C. § 1395x(n) and 42 C.F.R.
> § 414.202;
>
> (2) finding that CGMs (whether they completely replace
> finger prick/test strips or not) are [durable medical
> equipment] within the meaning of 42 U.S.C. § 1395x(n)
> and 42 C.F.R. § 414.202;
>
> (3) finding the Secretary's denials of CGM coverage on
> the grounds that a CGM is not [durable medical
> equipment] is not supported by substantial evidence, are

16

> arbitrary and capricious, an abuse of discretion, and not
> in accordance with the law.

App., Vol. 1 at 35.[6]

The Secretary contends that intervening events during this litigation have rendered Smith's claims moot. We agree. The Final Rule, the Technical Direction Letter, and CMS-1738-R already classify CGM systems as durable medical equipment and mandate coverage for pending and future Medicare reimbursement claims. Thus, granting Smith any of the relief requested above would have no real-world effect.

We begin with Smith's first request for relief. Smith alleges that CMS-1682-R should be set aside because it was issued "without observance of the procedure required by law (e.g., notice and comment [rulemaking])." *Id.* at 32–34. Smith argues that because her Medicare reimbursement claims have been continuously denied based on CMS-1682-R, invalidating the ruling would eliminate any basis for the Secretary to deny her claims for CGM supplies in the future.

Smith's argument fails because CMS formally rescinded CMS-1682-R and replaced it with the Final Rule and CMS-1738-R, both of which mandate Medicare coverage for CGMs. The Final Rule, which became effective on

---

[6] Smith also requested that the district court order "the Secretary to provide coverage for the CGM claims at issue in this case." App., Vol. 1 at 35. Because the district court indisputably ruled in Smith's favor on that claim, we need not address whether the claim is moot.

February 28, 2022, ensures coverage for CGM supplies received after that date. CMS-1738-R applies the same coverage provisions to CGM claims that were pending as of February 28, 2022, or where the right to submit a claim or appeal had not expired as of February 28, 2022. Collectively, these changes mean that the Secretary no longer has any basis upon which to deny Smith's pending or future claims.[7] Because Smith's claims for her CGM supplies are now covered by Medicare, invalidating CMS-1682-R would provide Smith no further relief. Her first claim is therefore moot. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (citation omitted)).

For similar reasons, Smith's second claim for declaratory relief is also moot. Smith asked the district court to declare that all CGMs are durable medical equipment under the Medicare statute and regulations. To begin with, Smith only

---

[7] Because Smith's equitable relief claims did not become moot until CMS issued CMS-1738-R in May 2022, the district court should not have found those claims moot in January 2022. The district court apparently denied Smith's pending motions as moot in part because the Final Rule rescinded CMS-1682-R. But the Final Rule only applies to claims for equipment received *after* February 28, 2022. Claims for equipment received before that date—such as Smith's July 2021 claims that were pending before the agency—could still be denied under CMS-1682-R. Since Smith still faced a risk that her pending claims would be denied, Smith retained a legally cognizable interest in the outcome of the case and her equitable claims remained live. It was not until CMS issued CMS-1738-R— applying the Final Rule retroactively to claims for equipment supplied prior to February 28, 2022, and expressly rescinding CMS-1682-R—that Smith's claims became moot. After that ruling went into effect, Smith no longer faced a risk of imminent harm from her claims being denied.

has standing to challenge the denial of her specific CGM because a declaration that other glucose monitors are covered by Medicare would not redress any injury suffered by Smith. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Regardless, the Final Rule and CMS-1738-R address Smith's concerns and grant Smith the full relief she seeks. The Final Rule recognizes that CGMs—irrespective of whether they complement a blood glucose test—are "primarily and customarily used to serve a medical purpose" and therefore meet the definition of durable medical equipment. 86 Fed. Reg. at 73,899. Similarly, CMS-1738-R adopts the Final Rule's coverage provisions and expressly rescinds CMS-1682-R. *See* CMS-1738-R at 11 ("CMS-1682-R, is hereby rescinded and shall not be applied to any additional CGM claims under Part B or Part C, as applicable, or to any further administrative appeals of CGM claims."). These regulatory changes make clear that CMS now classifies CGMs as durable medical equipment. Smith's declaratory relief claim is moot.

Smith's final request for relief—declaring that the Secretary's repeated denials of CGM claims was wrongful—is also moot. Smith requested that the district court declare that "the Secretary's denials of CGM coverage on the grounds that a CGM is not [durable medical equipment] [are] not supported by substantial evidence, are arbitrary and capricious, an abuse of discretion, and not in accordance with the law." App., Vol. 1 at 35. Smith asserts that this

declaration would prevent the Secretary from denying future CGM claims based on an improper interpretation of the regulatory definition of "durable medical equipment."  Like Smith's other requests for relief, this request is moot because Smith no longer suffers from an imminent injury that would be redressed by declaring that the Secretary's previous denials of coverage were improper.  In short, Smith seeks "a retrospective opinion that [s]he was wrongly harmed by the defendant."  *See Jordan*, 654 F.3d at 1025.  Without a redressable injury, such a declaration would be nothing more than an advisory opinion.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes.").

Smith also requested a separate ruling on the issue of whether the Secretary is collaterally estopped from litigating CGM coverage because an administrative law judge previously determined that Smith's CGM and supplies are covered by Medicare.  As Smith notes, CMS-1738-R and the Final Rule do not address the issue of whether prior administrative law judge or district court decisions preclude the Secretary from re-litigating the coverage of CGMs.  But the "crucial question" for mootness is whether "granting a present determination of the issues offered . . . will have some effect in the real world."  *Davidson*, 236 F.3d at 1182 (quotations and citation omitted).  Because a ruling on collateral estoppel would not redress any actual or imminent injury suffered by Smith, we do not have jurisdiction to consider the issue.

In sum, Smith has won all the relief she sought when she commenced this litigation. The Secretary has agreed to pay Smith's denied claims,[8] rescinded CMS-1682-R, and recognized CGMs as durable medical equipment covered by Medicare. Based on Smith's alleged injuries, there is no further relief that can be afforded to Smith.

### B. Voluntary Cessation

We now turn to the question of whether the voluntary cessation doctrine applies.

Although a live controversy must exist at all stages of litigation, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already*, 568 U.S. at 91. "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* To address this concern, the Supreme Court has held that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citation omitted).

---

[8] According to the Secretary, Smith's previously denied CGM claims have all been paid, including her claim for disposable sensors received in July 2021 after the filing of this case. *See* Resp. Br. at 24 ("CMS reprocessed and paid plaintiff's claim for disposable sensors received on July 14, 2021); Aple. Supp. Br. at 13 ("[T]he claims under review have been paid.").

Although the defendant faces a heavy burden in undermining the plaintiff's invocation of the voluntary cessation doctrine, we do not require a defendant to show that it would be impossible for him to resume his allegedly wrongful conduct. "For the voluntary cessation exception to apply, 'we must be convinced that the allegedly wrongful behavior could not *reasonably* be expected to recur . . . not that there is no possibility.'" *Prison Legal News*, 944 F.3d at 881 n.20 (quoting *Brown v. Buhman*, 822 F.3d 1151, 1175 (10th Cir. 2016)). For that reason, "[a] case ceases to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency." *Rio Grande Silvery Minnow*, 601 F.3d at 1117 (quotations omitted and alterations incorporated).

When a plaintiff seeks to set aside the policy of a government agency, the rescission or modification of that policy can moot the challenge.[9] *Id.* Further, the "mere possibility that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy." *Id.* (quotations and citation omitted); *see also id.* at 1116 ("[E]ven when a legislative body has the power to reenact an ordinance or statute, ordinarily an amendment or repeal of it moots a case challenging the ordinance or statute.").

---

[9] We have opined in past mootness cases that we may afford a government official's voluntary conduct "more solicitude" than that of private actors. *Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15 (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)); *Prison Legal News*, 944 F.3d at 881. But as the Supreme Court reminds us, government actors still bear the "heavy" burden of making "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia*, 142 S. Ct. at 2607 (quotations and citation omitted).

Smith claims (1) the Secretary changed his policy regarding coverage of CGMs solely for the purpose of evading judicial review; and (2) it can be reasonably expected that the Secretary will resume denying CGM claims once this litigation concludes.  We disagree for two reasons.  First, the timing of the Secretary's policy change toward CGMs suggests that the Secretary did not voluntarily change his conduct to moot Smith's litigation.  Second, there is a minimal risk that the Secretary will suddenly revert to his rescinded policy of denying CGM claims given the wholesale change in policy that has developed over the past several years.  To undo his policy recognizing CGMs as durable medical equipment, the Secretary would need to take the unlikely steps of disavowing his previous support for the coverage of CGMs, replacing the Final Rule—which can only be done after a notice and comment period, rescinding the Technical Direction Letter, and withdrawing CMS-1738-R.

We begin by examining the timing of the Secretary's voluntary cessation of the challenged conduct.  Based on the sequence of events that led to CMS changing its CGM coverage policy, we cannot conclude that the Secretary voluntarily ceased denying CGM claims as a temporary measure to moot Smith's claims.  *See Brown*, 822 F.3d at 1171 ("[W]e have indicated that mootness is more likely if . . . the case in question was the catalyst for the agency's adoption of the new policy." (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014))).  Although CMS did not issue the Final Rule providing Medicare coverage for CGMs until after this case commenced, CMS initiated the

rulemaking process well before this litigation.  In November 2020—several months before the Medicare Appeals Council had even denied Smith's claims—CMS published a proposed rule to classify CGMs as durable medical equipment under Medicare Part B.  *See* 85 Fed. Reg. at 70,358.  CMS explained that the proposed change in policy was due in part to several district courts rejecting the reasoning of CMS-1682-R that CGMs "are not primarily and customarily used to serve a medical purpose." *Id.* at 70,401.  While the outcome of other cases seems to have prompted the proposed rule change, the timing of the proposed rule in relation to Smith's case forecloses the possibility that the Secretary stopped denying CGM claims solely to avoid judicial review in Smith's case.

While we agree with Smith that the timing of CMS-1738-R—issued four days before oral argument—invites greater scrutiny than the timing of the Final Rule, we conclude that the timing of CMS-1738-R does not support an application of the voluntary cessation doctrine.  First of all, Smith's case is not the only case affected by the Final Rule or CMS-1738-R.  As Smith repeatedly points out in her briefs, the Secretary has denied thousands of other CGM claims, forcing other beneficiaries to litigate their claims.  We find it unlikely that the Secretary would issue CMS-1738-R merely to moot Smith's claims given the abundance of other CGM claims and related litigation.  But even if the change in policy was prompted by Smith's litigation, "that does not necessarily make it suspect." *See Brown*, 822 F.3d at 1171.  We have found that a "government official's decision to adopt a policy in the context of litigation may actually make

it *more* likely the policy will be followed, especially with respect to the plaintiffs in that particular case." *Id.* (emphasis added). CMS stated in CMS-1738-R that it decided to change its policy on pending CGM claims "to bring an orderly conclusion to pending (and potentially forthcoming) administrative claims and appeals relating to the requirements for classification, coverage, and payment of CGM claims." CMS-1738-R at 6. While issuing CMS-1738-R may have mooted Smith's current claims, rescinding the ruling after Smith's case concludes would reopen the floodgates for other beneficiaries to challenge the denial of their CGM claims. Such a shift in policy would impede CMS's stated goal of "avoid[ing] the expenditure of administrative resources on further application of [CMS-1682-R]." *Id.*

Second, we consider whether it can be reasonably expected that the Secretary will resume his allegedly wrongful conduct once this litigation ends. Smith contends that as soon as the Secretary is no longer under the watchful eye of the federal judiciary, the Secretary will revive CMS-1682-R and Medicare administrators will resume denying CGM claims.

We find this argument entirely speculative. While it is true that the Secretary long refused to recognize CGMs as durable medical equipment, the Secretary has spent the past two years formally revoking that policy. It cannot "reasonably be expected" that CMS would suddenly revert to denying CGM claims when it has gone through the lengthy rulemaking process and concluded in the Final Rule, Technical Direction Letter, and CMS-1738-R that CGMs are

25

durable medical equipment covered by Medicare.  Unraveling those regulatory

changes seems improbable, especially given that CMS has determined it to be

more cost effective to pay pending CGM claims rather than continue litigating

them.  *See Brown*, 822 F.3d at 1167 ("Most cases that deny mootness following

government officials' voluntary cessation rely on *clear showings* of reluctant

submission by governmental actors and a desire to return to the old ways."

(cleaned up)).

To be sure, the Letter and CMS-1738-R could be rescinded with relative

ease.  But we think it unlikely that the Secretary would rescind both and resume

applying CMS-1682-R when that ruling directly conflicts with the coverage

provisions of the Final Rule, which could only be replaced after another notice

and comment period.  *See id.* at 1171 (finding mootness because the risk that the

county attorney's office "will revoke or ignore" its new policy is "minimal at

best").  Although not set in stone, the Final Rule, Technical Direction Letter, and

CMS-1738-R collectively "foreclose a reasonable chance of recurrence of the

challenged conduct."  *See Prison Legal News*, 944 F.3d at 884 (citation omitted).

Finally, Smith argues the voluntary cessation doctrine should apply

because the Final Rule and CMS-1738-R have not "completely and irrevocably

eradicated the effects" of the Secretary's wrongful conduct.  *See Rio Grande*

*Silvery Minnow*, 601 F.3d at 1115 (quoting *Davis*, 440 U.S. at 631).  Even if the

Final Rule and CMS-1738-R provide coverage for pending and future claims,

Smith contends the rulings provide no relief to the thousands of Medicare

beneficiaries whose claims were denied in the past and the thousands more who never submitted claims or requested equipment due to the prohibitive coverage provisions of CMS-1682-R.  But the injuries suffered by other beneficiaries have no bearing on whether Smith's claims are live.  Intervening events—which include the district court's order for the Secretary to pay Smith's claims, the Final Rule, the Technical Direction Letter, and CMS-1738-R—have remedied the effects of the Secretary's allegedly wrongful conduct towards Smith, the only plaintiff in this case.

In sum, the Secretary took concrete steps to implement a new policy—through formal rulemaking and a binding CMS ruling—that cannot be easily reversed.  The voluntary cessation doctrine does not apply.

### III.  Conclusion

For the foregoing reasons, we dismiss the appeal as moot.

EXHIBIT A

# Medicare Summary Notice
## for Part B (Medical Insurance)

The Official Summary of Your Medicare Claims from the Centers for Medicare & Medicaid Services

LINDA P SMITH
3590 LEXINGTON DR
BOUNTIFUL, UT 84010-5804

## THIS IS NOT A BILL

### Notice for Linda P S

| | |
|---|---|
| Medicare Number | XU61 |
| Date of This Notice | July 29, 2022 |
| Claims Processed Between | April 30 - July 29, 2022 |

### Your Deductible Status

Your deductible is what you must pay for most health services before Medicare begins to pay.

**Part B Deductible:** You have now met your **$233.00** deductible for 2022.

### Be Informed!

**Getting a COVID-19 booster shot is important to keep you and those around you safe.** It's easy and available at no cost to people with Medicare. Go to Vaccines.gov to find and schedule a booster shot near you.

### Your Claims & Costs This Period

| | |
|---|---|
| Did Medicare Approve All Items and Services? | NO |
| Number of Items or Services Medicare Denied | 1 |

See claims starting on page 3. Look for **NO** in the "Item/Service Approved?" column. See the last page for how to handle a denied claim.

| | |
|---|---|
| **Total You May Be Billed** | **$650.14** |

### Suppliers with Claims This Period

May 20 - July 11, 2022
**Minimed Distribution Corp**

¿Sabia que puede recibir este aviso y otro tipo de ayuda de Medicare en español? Llame y hable con un agente en español.
如果需要国语帮助，请致电联邦医疗保险，请先说"agent"，然后说"Mandarin"。      **1-800-MEDICARE (1-800-633-4227)**

22100088774

# Making the Most of Your Medicare

## 🔍 How to Check This Notice

Do you recognize the name of each supplier? Check the dates. Did you make a purchase that day?

Did you get the items/services listed? Do they match those listed on your receipts and bills?

If you already paid the bill, did you pay the right amount? Check the maximum you may be billed. See if the claim was sent to your Medicare supplement insurance (Medigap) plan or other insurer. That plan may pay your share.

## 🚫 How to Report Fraud

If you think a supplier or business is involved in fraud, call us at 1-800-MEDICARE (1-800-633-4227).

Some examples of fraud include offers for free medical services or billing you for Medicare services you didn't get. If we determine that your tip led to uncovering fraud, you may qualify for a reward.

**Be sure any equipment or services you received were ordered by your doctor.**

## ☎ How to Get Help with Your Questions

**1-800-MEDICARE (1-800-633-4227)**
Ask for "medical supplies." Your customer-service code is 19003.

**TTY 1-877-486-2048** (for hearing impaired)

Contact your State Health Insurance Program (SHIP) for free, local health insurance counseling. Call **1-800-541-7735**.

## ✉ Your Messages from Medicare

**You can now get your Medicare Summary Notices (MSNs) online!** Receive your electronic MSNs (eMSNs) every month by signing up at https://www.medicare.gov/forms-help-resources/go-paper

**You have the right to get your Medicare Summary Notices (MSNs) in an accessible format, like Braille, large print, or data/audio files.** Call 1-800-MEDICARE (1-800-633-4227; TTY: 1-877-486-2048).

**Detect and protect!** Women 60 years or older are most at risk for ovarian cancer. Ask your doctor today about how to spot symptoms early.

**Your mental health is just as important as your physical health.** Medicare helps pay for mental health services through Parts A and B. If you're struggling and feeling sad or alone, talk with your doctor about what services might be right for you.

# Your Claims for Part B (Medical Insurance)

Part B Medical Insurance helps pay for durable medical equipment and other health care services.

## Definitions of Columns

**Item/Service Approved?:** This column tells you if Medicare covered the item or service.

**Amount Supplier Charged:** This is your supplier's fee for this item or service.

**Medicare-Approved Amount:** This is the amount a supplier can be paid for a Medicare item or service. It may be less than the actual amount the supplier charged. Your supplier has agreed to accept this amount as full payment for covered items or services. Medicare usually pays 80% of the Medicare-approved amount.

**Amount Medicare Paid:** This is the amount Medicare paid the supplier. This is usually 80% of the Medicare-approved amount.

**Maximum You May Be Billed:** This is the total amount the supplier is allowed to bill you and can include a deductible, coinsurance, and other charges not covered. If you have Medicare Supplement Insurance (Medigap policy) or other insurance, it may pay all or part of this amount.

May 20, 2022
Minimed Distribution Corp, (800)646-4633
18000 Devonshire St, Northridge, CA 91325-1219
Ordered by Patrice F Hirning

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare- Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 Supply allowance for adjunctive continuous glucose monitor (cgm), includes all supplies and accessor (A4238-KFKXGA) | NO | $608.30 | $0.00 | $0.00 | $608.30 | A,B,C |
| **Total for Claim #22178846990000** | | $608.30 | $0.00 | $0.00 | $608.30 | |

Continued →

## Notes for Claims Above

**A** The information provided does not support the need for this service or item. Local Coverage Determinations (LCDs) help Medicare decide what is covered. An LCD was used for your claim. You can compare your case to the LCD, and send information from your doctor if you think it could change our decision. Call 1-800-MEDICARE (1-800-633-4227) for a copy of the LCD.

**B** The following policies were used when we made this decision: L33822.

**C** Our records show that you were informed in writing, before receiving the service, that Medicare would not pay. You are liable for this charge. If you do not agree with this statement, you may ask for a review.

**July 11, 2022**
**Minimed Distribution Corp. (800)646-4633**
**18000 Devonshire St, Northridge, CA 91325-1219**
**Ordered by Patrice F Hirning**

| Quantity, Item/Service Provided & Billing Code | Item/ Service Approved? | Amount Supplier Charged | Medicare-Approved Amount | Amount Medicare Paid | Maximum You May Be Billed | See Notes Below |
|---|---|---|---|---|---|---|
| 1 Supply allowance for adjunctive continuous glucose monitor (cgm), includes all supplies and accessor (A4238-KFKXCG) | Yes | $679.32 | $209.22 | $164.03 | **$41.84** | |
| **Total for Claim #22195827033000** | | $679.32 | $209.22 | $164.03 | **$41.84** | D,E |

**Notes for Claims Above**

**D** We have sent your claim to MUTUAL OF OMAHA INSURANCE COMP. Send any questions regarding your benefits to them.

**E** After your deductible and coinsurance were applied, the amount Medicare paid was reduced due to Federal, State and local rules.

22100088774

# How to Handle Denied Claims or File an Appeal

## Get More Details

If a claim was denied, call or write the supplier and ask for an itemized statement for any claim. Make sure they sent in the right information. If they didn't, ask the supplier to contact our claims office to correct the error. You can ask the supplier for an itemized statement for any item or claim.

Call 1-800-MEDICARE (1-800-633-4227) for more information about a coverage or payment decision on this notice, including laws or policies used to make the decision.

## If You Disagree with a Coverage Decision, Payment Decision, or Payment Amount on this Notice, You Can Appeal

**Appeals must be filed in writing.** Use the form to the right. Our claims office must receive your appeal within 120 days from the date you get this notice.

We must receive your appeal by:

| December 1, 2022 |

## If You Need Help Filing Your Appeal

**Contact us:** Call 1-800-MEDICARE or your State Health Insurance Program (see page 2) for help before you file your written appeal, including help appointing a representative.

**Call your supplier:** Ask your supplier for any information that may help you.

**Ask a friend to help:** You can appoint someone, such as a family member or friend, to be your representative in the appeals process.

## Find Out More About Appeals

For more information about appeals, read your "Medicare & You" handbook or visit us online at www.medicare.gov/appeals.

## File an Appeal In Writing

Follow these steps:

1. Circle the item(s) or claim(s) you disagree with on this notice.

2. Explain in writing why you disagree with the decision. Include your explanation on this notice or, if you need more space, attach a separate page to this notice.

3. Fill in all of the following:

Your or your representative's full name (print)

Your or your representative's signature

Your telephone number

Your complete Medicare number

4. Include any other information you have about your appeal. You can ask your supplier for any information that will help you.

5. Write your Medicare number on all documents that you send.

6. Make copies of this notice and all supporting documents for your records.

7. Mail this notice and all supporting documents to the following address:

Medicare Claims Office
c/o Noridian Healthcare Solutions, LLC
Attn: Appeals Dept
P. O. Box 6727
Fargo, ND 58108-6727