Case No. 22-4012

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**Linda P. Smith,**
*Plaintiff-Appellant,*

v.

**Xavier Becerra, in his official capacity as
Secretary of the United States Department of
Health and Human Services,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Utah
The Honorable Howard C. Nielson, Jr.
Case No. 21-CV-00047-HCN

---

## PLAINTIFF-APPELLANT LINDA SMITH'S MOTION FOR FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT

---

Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:  (801) 538-5001
Email:  phillip.lear@learlaw.com

James C. Pistorino
Parrish Law Office
788 Washington Rd.
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

Counsel for Linda P. Smith,
Plaintiff-Appellant

Dated:  January 9, 2023

Pursuant to 10th Cir. Rule 39.2, Plaintiff-Appellant Linda Smith ("Smith") moves for an award of her attorneys' fees and costs under the Equal Access to Justice Act (28 U.S.C. § 2412) related to her claim for Medicare coverage of a continuous glucose monitor (CGM) used to treat her Type I diabetes.  The government's position was asserted in "bad faith."  In addition/alternatively, Mrs. Smith was the "prevailing party" in this litigation and the government's position both lacked "substantial justification."  In addition, Mrs. Smith achieved "extraordinary success."  Further, Mrs. Smith is entitled to her costs.[1]  Accordingly, Mrs. Smith should be awarded her reasonable attorneys fees and costs as set forth below.

## I.    FACTUAL BACKGROUND

### A.    Other Litigations

As noted in other briefing before this Court, this is not the first case to litigate the Secretary's refusal to provide coverage of CGMs as allegedly not "durable medical equipment" on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose."  *See* 42 C.F.R. 414.202.  Claims submitted prior to January 2017, were rejected on the invented grounds that a CGM was not the "primary" device used to treat diabetes and/or was "precautionary" (a non-statutory/non-regulatory word coined by the Secretary).  In January 2017, the

---

[1] In accordance with 10th Cir. Rule 27.1, the Secretary's counsel informs Mrs. Smith that the Secretary opposes Mrs. Smith's motion for fees.

Secretary illegally issued CMS-1682-R that purported to construe the regulatory phrase "primarily and customarily used to serve a medical purpose", contending that a CGM is not used for such a purpose.

The Secretary's position that a CGM is not "primarily and customarily used to serve a medical purpose" has been rejected by every Court to address it (some six courts) and every such Court has awarded the plaintiff attorneys fees.  Indeed, the last Court to address the issue (*Olsen*) made a rare "bad faith" finding against the Secretary in awarding market rate attorneys fees.

A timeline summarizing events/cases may assist the Court:

| Date | District Court and Other Activity | Activity on Mrs. Smith's claims |
|---|---|---|
| April 29, 2016 | H.H.S. Civil Remedies Division holds that the Secretary's position does not pass the "reasonableness standard."  *See* DAB No. CR4596 (2016).  2016 WL 2851236 | |
| May 19, 2016 | *Finigan* court calls Secretary's position "head scratching."  *Finigan v. Burwell*, 189 F.Supp.3d 201, 2017, n. 6 (D. Mass). | |
| October 26, 2017 | *Whitcomb* court calls Secretary's position "unreasonable", "arbitrary and capricious."  *Whitcomb v. Hargan*, Case No. 17-cv-14, Dkt. #19 at 12, 14 (E D. Wisc. Octo. 26, 2017). | |

| | | |
|---|---|---|
| January 29, 2018 | *Bloom* court: "no evidence supports the MAC's conclusion that CGM is not 'primarily and customarily used to serve a medical purpose.'" *Bloom v. Azar*, 2018 WL 583111 at *10 (D. Vermont, January 29, 2018) | |
| April 5, 2018 | *Lewis* court: "The Food and Drug Administration, the National Institutes of Health and multiple professional medical societies such as the American Diabetes Association and the American Medical Association deem CGM primarily and customarily to serve a medical purpose as a medical device", "Council's decision that CGM devices are not primarily and customarily used to serve a medical purpose constituted legal error and was not support by substantial evidence." *Lewis v. Azar*, 308 F.Supp.3d 574, 578-9 (D. Mass 2018). | |
| June 12, 2018 | *Whitcomb* court: "no reasonable basis for arguing that continuous glucose monitors are not primarily and customarily used to serve a medical purpose; "demonstrates the unreasonableness of the Secretary's position." Fees awarded. *Whitcomb v. Azar*, Case No. 17-cv-14, Dkt. #34 at 4, 6 (E.D. Wisc. June 12, 2018). | |
| June 15, 2018 | By this date, more than 40 ALJs had rejected the | |

| | | |
|---|---|---|
| | Secretary's position more than 55 times. *See* https://dparrishlaw.com/parrish-law-offices-wins-significatn-victory-for-cgm-users/ | |
| January 16, 2019 | *Bloom* court: "no reasonable person would be satisfied by the Sectary's position that CGMs are not primarily and customarily used to serve a medical purpose."; fees award (precise amount not decided). *Bloom v. Azar*, Case No. 16-cv-121, Dkt. #80 at 10 (D. Vermont Jan. 16, 2019). | |
| March 30, 2019 | *Lewis* court: "breadth of decisions contrary to the Secretary's position demonstrates a 'string of losses'"; fees awarded. *Lewis v. Azar*, 370 F.Supp.3d 267, 273 (D. Mass. 2019) | |
| April 9, 2019 | | ALJ Mark Win issues two decisions denying Mrs. Smith's claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" as dictated by CMS-1682-R. App.322-31. |
| September 22, 2020 | *Zieroth* court: "the Secretary's interpretation … is not reasonable" *Zieroth v. Azar*, 2020 WL 5642614 at *4 (N.D. Cal. Sep. 22, 2020). | |
| December 3, 2020 | *Zieroth* court: "the Secretary's position both as set forth in | |

| | | |
|---|---|---|
| | CMS-1682-R and reiterated in the course of the instant litigation, was not reasonable."; fees awarded. *Zieroth v. Azar*, 2020 WL 7075629 at *2 (N.D. Cal. Dec. 3, 2020). | |
| February 23, 2021 | *Olsen* court: "No evidence supports the Appeals Council's conclusion that a CGM is not 'primarily and customarily used to serve a medical purpose." *Olsen v. Cochran*, 2021 WL 711469 at *3 (E.D. Wash. Feb. 23, 2021) | |
| February 26, 2021 | | MAC issues decision denying Mrs. Smith's claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" as dictated by CMS-1682-R. App.313-21. |
| April 20, 2021 | *Olsen* court: "Plaintiff seeks market-value attorney fees under Section 2412(b), arguing that Defendant's position in this case was in bad faith. This Court agrees."; "Defendant's defense was 'groundless.'"; "While Defendant's position was not foreclosed by bunding precedent the Court determines that it was 'so obviously wrong as to be frivolous.'"; "Altogether, Defendant's conduct meets the 'high threshold' for an award of and-faith fees." *Olsen v. Becerra*, | |

| | 2021 WL 3683360 (E.D. Wash. Apr. 20, 2021). | |
|---|---|---|
| October 26, 2021 | | Noridian denies Mrs. Smith's request for redetermination of the denial of her claim for coverage of CGM supplies provided on July 14, 2021, based on CMS-1682-R and its contention that a CGM is not "primarily and customarily used to serve a medical purpose."  App.287. |
| December 17, 2021 | | The Qualified Independent Contractor (QIC) denied Mrs. Smith's request for reconsideration on the grounds that CMS-1682 barred coverage because a CGM is not "primarily and customarily used to serve a medical purpose", as dictated by CMS-1682-R. App.286-91. |

With regard to the Olsen' Court's "bad faith" finding, Mrs. Smith's research indicates that this is only the eleventh "bad faith" finding against the government in more than a decade out of more than two million cases.

**B.    Proceedings Before the Department**

At issue in this case were claims for coverage of Mrs. Smith's CGM (and related supplies) received on November 16, 2017, and May 15, 2018. Mrs. Smith's claims were denied initially, denied on redetermination, denied on reconsideration, denied by ALJ Mark Win, and denied by the Medicare Appeals Council all on the basis that a CGM is not "primarily and customarily used to serve a medical purpose" as dictated by illegally issued CMS-1682-R. *See, e.g.*, App.313-21.

**C.    Proceedings at the District Court**

Following the denial of her claims by the MAC, Mrs. Smith timely filed suit in the United States District Court for the District of Utah on April 5, 2021. *See* App.13-36. Mrs. Smith particularly alleged that CMS-1682-R issued without complying with notice and comment and was incorporated into LCD L333822. *See* App.21 (¶ 30); App.23 (¶ 37); App.34 (¶ 105). The Secretary denied Mrs. Smith's allegations and that Mrs. Smith was entitled to any relief whatsoever. *See* App.46; App.48; App.61. Thereafter, the Secretary first conceded error as to one of the claims before conceding error as to all of the claims (but not conceding that CMS-1682-R issued illegally, that an injunction was appropriate, that a CGM is "durable medical equipment", or that collateral estoppel precludes the Secretary from asserting otherwise). On January 19, 2022, the District Court entered a judgment

ordering the Secretary to pay the three claims at issue but otherwise not addressing the relief sought by Mrs. Smith.  App.273.

**D.      Proceedings on Appeal**

In February 2022, Mrs. Smith appealed the District Court's failure to accord her the complete relief she sought, including an injunction barring the application of CMS 1682-R which was then being used to deny another of her pending claims as well as the claims of numerous others suffering from diabetes.

Thereafter, effective March 1, 2022, a new policy went into effect changing the standard for CGM coverage, *but only for claims submitted after that date*.  Thus, Mrs. Smith's pending claim that was rejected on the basis of CMS 1682-R was not subject to the new rule.  Accordingly, the relief sought in this case and the appeal remained operative.

Four days before oral argument in this case, the Secretary issued CMS-1738-R, applying the new rule retroactively to claims submitted before March 1, 2022. Oral argument was held on May 17, 2022, where the Secretary argued alleged mootness for the first time based on CMS-1738.

At oral argument, the Secretary offered that: "The Secretary confessed error and the district court properly entered judgment for plaintiff, ordering the Secretary to pay the claims."  *See* Transcript at 21:21-23, attached as Exhibit A.  In addition, with regard to the continued enforcement of CMS-1682-R, the Secretary conceded:

> That was prospectively.  And then CMS took action to apply that rule retrospectively as well, first with the technical direction letter.  That was the quickest way CMS could address the issue, although it left gaps, for example, Medicare Part C.  And so then CMS worked toward this ruling that came out last week, and I want to be clear, this is not a letter signed by some guy.   …   That moots this case.

Transcript at 23:20-21:15.

Thereafter, this Court ordered additional briefing on newly alleged mootness based on CMS-1738.  *See* Order of May 18, 2022.  On June 1, 2022, the parties submitted supplemental briefs on alleged mootness.  On August 12, 2022, this Court issued its decision dismissing Mrs. Smith's appeal on the grounds of mootness in light of CMS-1738 issued four days before oral argument.  *See Smith v. Becerra*, 44 F.4th 1238 (10th Cir. 2002).  As described by this Court:

> In sum, Smith has won all the relief she sought when she commenced this litigation.  The Secretary has agreed to pay Smith's denied claims,[2] rescinded CMS-1682-R, and recognized CGMs as durable medical equipment covered by Medicare.

*Id*. at 1250.

Moreover, this Court noted that Mrs. Smith's appeal from the District Court was proper/the case was not moot because Mrs. Smith retained a legally cognizable interest in the outcome of the case (and the relief sought) until the issuance of CMS-1738 four days before oral argument.  *Id.* at 1248, n. 7.

---

[2] Though, as this Court also noted, the Secretary was ordered to pay the claims by the District Court.  *Smith v. Becerra*, 44 F.4th 1238, 1248, n. 6 (10th Cir. 2022).

Thereafter, Mrs. Smith filed a petition for rehearing/rehearing *en banc*, which this Court denied on December 8, 2022. This motion is timely filed 30 days thereafter.[3]

## E.    Fees Incurred

In the interests of brevity and in accordance with 10th Cir. R. 39.2(B), Mrs. Smith sets forth the following table summarizing the hours expended, rates, and costs at the appellate level. These fees include preparing the opening brief and appendix, the reply brief, preparation for and attending oral argument, and the supplemental briefing ordered by the Court.

Mrs. Smith has excluded any time spent preparing Mrs. Smith's motion for rehearing/rehearing *en banc*. Resumes/CVs of all the attorneys mentioned are attached as Exhibit B. The rates noted are the attorneys usual and customary rates for work of this type in their respective marketplaces. A brief description of the role each counsel/firm played in this case at the appellate level is attached as Exhibit C.

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| James Pistorino | 228.8 | $575 | $131,560 |
| Richard Stanley | 121.0 | $600 | $72,600 |

---

[3] Because 30 days from December 8, 2022, was Saturday, January 7, 2023, pursuant to the Rules, the due date rolled to the next business day, which is Monday, January 9, 2023.

| Phillip Lear | 8.4 | $480 | $4,032 |
| Andrew Gresik | 6.4 | $420 | $2,688 |
| Emily Jones | 2.1 | $380 | $798 |
| Total | 366.7 | | $211,678 |

Counsel for Mrs. Smith has exercised billing judgment and reduced the requested fees by 10% across the board, resulting in an appellate fee request of $190,510. As set forth below, this number is subject to supplementation to reflect the fees incurred in fee briefing.

## II.    LEGAL BACKGROUND

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby deter the unreasonable exercise of Government authority." *See Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991).

Moreover, "[t]he policy behind the EAJA is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and thereby forced the litigant to seek relief from a federal court." *See Ibrahim v. D.H.S.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (*en banc*). In this regard, the EAJA:

[R]ests of the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested

> interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulations and thereby insures the legitimacy and fairness of the law.

*Ibrahim*, 912 F.3d at 1178 (internal citations and quotations omitted).

Under EAJA, a prevailing party may obtain compensation for all aspects of the litigation, including fees incurred in litigating the fee petition. *See, e.g., I.N.S. v. Jean*, 496 U.S. 154, 162, 163 n. 10 (1990). In determining the amount of a fee, the court should determine the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). As explained in *Hensley*:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended in the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* at 435 (internal citations omitted).

## A.    "Bad Faith" Fees

Pursuant to 28 U.S.C. § 2412(b):

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for

> such fees and expenses to the same extent that any other party would
> be liable under the common law or under the terms of any statute which
> specifically provides for such an award.

Section 2412(b) incorporates the common law exceptions to the American rule on attorneys' fees.

In *Ibrahim*, the Ninth Circuit conducted a comprehensive review of paragraph (b) fees. As explained, under the common law, a court may assess attorneys' fees against the government if the government has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id*. at 1180. "[I]n evaluating whether the government acted in bad faith, a court may examine the government's actions that precipitated the litigation, as well as the litigation itself." *Id.* "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* To make a bad faith determination, the court must review the totality of the government's conduct. *Id*. at 1181. "However, it is unnecessary to find that every aspect of a case is litigated by a party in bad faith in order to find bad faith by that party." *Id*. "The district court may award attorney fees at market rates for the entire course of litigation, including time spent preparing, defending, and appealing the two awards of attorneys fees, if it finds that the fees incurred are in some way traceable to the government's bad faith." *Id*. at 1180 (internal citations and quotations omitted).

A "frivolous" argument is one that is "groundless" or "obviously wrong." *See*

*Rodriguez v. U.S.*, 542 F.3d 704, 710 (9th Cir. 2008). An argument is "groundless"

if it is "destitute of foundation, authority, or support; having no real cause or reason;

unfounded." *Id*. Moreover, "Congress specifically intended the EAJA to deter

unreasonable agency conduct." *Ibrahim*, 512 F.3d at 1166-67 (*citing Jean*, 496 U.S.

at 163 n. 11).

## B.     Lack of "Substantial Justification" Fees

In addition to the "bad faith" provision of EAJA, another provision allows

for fees when the government's position lacks "substantial justification." Paragraph

(d)(1)(A), provides:

> Except as otherwise specifically provided by statute, a court shall award
> to a prevailing party other than the United States fees and other
> expenses, in addition to any costs awarded pursuant to subsection (a),
> incurred by that party in any civil action (other than cases sounding in
> tort), including proceeding for judicial review of agency action, brought
> by or against the United States in any court having jurisdiction of that
> action, unless the court finds that the position of the United States was
> substantially justified or that special circumstances make an award
> unjust.

This is commonly referred to as the "substantial justification" prong.

In order to obtain fees under the paragraph (d), a party must show: 1) that the

claimant is the "prevailing party"; 2) a showing that the claimant is eligible to

receive an award; 3) an itemized statement containing time expended and rates

charged; and 4) an allegation that the position of the United States was not

substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 408 (2004). In addition, the part must show that no "special circumstances" make a fee award unjust. As defined, the "position of the United States" includes not only the position advanced in the litigation, but also the acts or omissions by an agency giving rise to the litigation. 28 U.S.C. § 2412(d)(2)(D).

A party is the "prevailing party" if he has been "awarded some relief by the court" that amounts to a court-ordered "change in the legal relationship between the parties." *See Buckhannon Board and Care Home Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603-4 (2001).

After the movant show that it was the "prevailing party", the government bears the burden of showing that t its position was substantially justified. "Substantially justified" means "justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Decisions in other cases, although not dispositive, may also shed light on the lack of justification for the government's position. "[A] string of losses can be indicative." *Id*. at 566.

### III.     DISCUSSION

As set forth below, fees should be awarded in this case. The Secretary's position was in bad faith and market rate attorneys fees should apply. In the alternative, the Secretary's position lacked "substantial justification", a rate

enhancement is appropriate, and Mrs. Smith enjoyed "exceptional success", so that, again, market rate attorneys fees should apply.

## A.    Fees Should Be Awarded Under the "Bad Faith" Provision

As previously determined by the *Olsen* court, the Secretary's position denying Mrs. Smith's claims was asserted in "bad faith", *i.e.*, was frivolous, groundless, and utterly devoid of support.  No sentient person could ever conclude that a CGM was not "primarily and customarily used to serve a medical purpose." Through six prior litigations, the Secretary has never offered another purpose for a CGM and it is simply bad faith to contend otherwise.

Voltaire is credited with saying: "Anyone who can make you believe absurdities can make you commit atrocities."  Mrs. Smith asserts that is exactly the situation in this case.  The Secretary ordered his ALJs and the MAC to believe/assert the absurdity that a CGM is not "primarily and customarily used to serve a medical purpose" through CMS-1682-R, though any non-comatose person would not agree. Having been ordered to believe this absurdity, the ALJs/MAC committed an atrocity when, through July 2019, they/the Secretary denied more than 250,000 CGM claims on these grounds, thereby resulting, at a minimum, in  4-64,000 severe hypoglycemic events that could have been prevented.  *See* Plaintiff's Supplemental Brief Concerning Mootness (filed June 1, 2022) at 10, n. 4.  Each one of these events resulted in irreparable harm to those suffering from diabetes, including death.

16

Mrs. Smith emphasizes that this was not a mistake and that CMS-1682-R was signed by Patrick Conway, M.D.  App.95.  That is a "medical doctor" employed by the Secretary actually asserted the bad faith proposition that a CGM is not "primarily and customarily used to serve a medical purpose" with the resulting, expected injuries and deaths.  These are the very "absurdities" and "atrocities" referred to by Voltaire.

Moreover, Mrs. Smith notes that the bad-faith continued after this litigation was filed.  When finally forced to Answer the Complaint, the Secretary asserted that the denials based on the illegally issued CMS-1682-R should be affirmed and Mrs. Smith afforded "any relief whatsoever."  *See* App.61.  This is the epitome of bad faith.  Mrs. Smith should be awarded her market rate attorneys fees.

To the extent that the Secretary asserts that fees for the appeal are not appropriate, Mrs. Smith notes that these fees a "traceable to the government's bad faith."  *Ibrahim*, 912 F.3d at 1180.  As this Court noted, through the issuance of CMS-1738 four days before oral argument, the Secretary continued to assert that the illegally issued, bad faith CMS-1682-R was enforceable and was using the same to deny Mrs. Smith's claim for coverage of her July 21, 2021, CGM supplies.

Indeed, the bad faith CMS-1682-R was being used to deny CGM coverage of thousands of others at the same time.  Because of the Secretary's bad faith and alleged change in position four days before oral argument on appeal, this Court

17

ordered supplemental briefing. Accordingly, all of the appeal fees through and including supplemental briefing are traceable to the Secretary's bad faith and the fees incurred in the same are what Mrs. Smith seeks at the market rate.

## B.    Fees Should Be Awarded Under the Lack of "Substantial Justification" Provision

While Mrs. Smith believes that fees should be awarded under the "bad faith" provisions of 28 U.S.C. § 2412(b), in the alternative, fees may also be awarded because the Secretary's position was not "substantially justified" under 28 U.S.C. § 2412(d).

### 1.    Mrs. Smith Is the "Prevailing Party"

As indicated, a party is the "prevailing party" if he had been "awarded some relief by the court" that amounts to a "court-ordered change in the legal relationship between the parties." *Buckhannon*, 532 U.S. at 603-4.

In the present case, Mrs. Smith is the "prevailing party." The District Court ordered coverage of the three claims at issue in this case (App.273), *i.e.,* Mrs. Smith has been awarded "some relief by the court."

With regard to appeal fees, as detailed above and acknowledged by this Court, those fees are traceable to the Secretary's ongoing denial of CGM claims based on CMS-1682-R through four days before oral argument in this case. Thus, all the fees incurred through that date as well as the fees incurred in responding to this Court's Order for supplemental briefing are attributable to the Secretary's

conduct and the relief ordered by the Court.  Mrs. Smith is not seeking fees for her petition for rehearing/rehearing *en banc*.

**2.      Mrs. Smith Is Eligible to Receive an Award**

Pursuant to 28 U.S.C. § 2412(d)(2)(B), attached, is a declaration from Mrs. Smith attesting that her net worth has not exceeded $2,000,000 at any time during the course of this litigation.  Thus, Mrs. Smith is eligible to receive an award of paragraph (d) fees.

**3.      Itemized Statement**

Pursuant to 10th Cir. R. 39.2(B), a listing of the hours expended and rates charged is provided above.  In the event that the Court desires individualized time entries/billing statements, Mrs. Smith is prepared to provide them.

**4.      The Government's Position Was Not "Substantially Justified"**

Clearly, the government's position in this case was not "substantially justified" given that it was already determined to constitute "bad faith."  No person, even an employee or attorney representing the Secretary, could ever reasonably assert that a CGM is not "primarily and customarily used to serve a medical purpose."  As set forth above, that is a position asserted by the Secretary in illegally issued CMS-1682-R which was used to deny tens of thousands of CGM claims and intentionally cause a concomitant number of severe hypoglycemic events/deaths.

**5.      There Are No "Special Circumstances"
            That Make an Award Unjust**

Pursuant to 28 U.S.C. § 2412(d)(1)(A), Mrs. Smith states that there are no

"special circumstances" that make a fee award unjust.

**6.      A Rate Enhancement Is Appropriate**

Pursuant to 28 U.S.C. § 2412(d)(2)(A), attorneys fees in excess of $125/hour

may be awarded if the court determines that an increase in the cost of living or some

other special factor justifies the higher rate. *See, e.g., Gomez-Beleno v. Holder*, 644

F.3d 139, 146-7 (2nd Cir. 2011).   The Consumer Price Index (CPI) is used to

calculate the proper cost of living adjustment to the statutory rate of $125/hour. *See,*

*e.g., Harris v. Sullivan*, 968 F.2d 263, 264-5 (2nd Cir. 1992).  The CPI-U for the

Western Region in May 2022 (309.64) divided by the same for March 1996 when

the statutory rate was enacted (156.4) gives a multiplier factor of 1.98.  The statutory

rate ($125) multiplied by this factor results in a rate of $247.5/hour.

Applying this factor to the billed hours (366.7) results in a fee request of

$90,758.

**7.      Mrs. Smith Enjoyed "Excellent Results"/"Exceptional Success"**

As provided in *Hensley*, Mrs. Smith achieved both "excellent results" and

"exceptional success." *Hensley*, 461 U.S. at 435.  Rather than a potential "enhanced

fee award", Mrs. Smith merely seeks her market rate attorneys fees.

In the present case, as acknowledged by this Court, not only did Mrs. Smith achieve coverage of the three claims at issue, she also achieved rescission of CMS-1682-R, as well as retroactive coverage of CGM claims incurred prior to March 1, 2022, for both herself and tens of thousands of others. If achieving life-saving/extending coverage of a medical device that thousands of Medicare insureds would otherwise not be able to afford is not "exceptional success", then Mrs. Smith does not now what is.

As a result of Mrs. Smith's "excellent results"/"exceptional success", Mrs. Smith should be awarded her market rate attorneys fees under the lack of "substantial justification" provision of the statute. Accordingly, the fee award should be $211,678 (factoring in a 10% across the board fee reduction).

## C.    Costs/Expenses

Pursuant to 28 U.S.C. § 2412(a), filing fees are recoverable as "costs" against the government on behalf of a "prevailing party."

As set forth above, Mrs. Smith is the "prevailing party." Accordingly, her appellate filing fees of $505 should be reimbursed.

## IV.    CONCLUSION

For the reasons set forth above, Mrs. Smith's motion for fees and costs should be granted. As provided by *I.N.S. v. Jean*, Mrs. Smith will supplement her fee request once all the fees associated with the fee petition itself are known.

Dated:  January 9, 2023       Respectfully submitted,

/s James C. Pistorino_____
Parrish Law Office
788 Washington Road
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

/s Phillip Lear_____
Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:       (801) 538-5001
Email:  phillip.lear@learlaw.com
Counsel for Linda P. Smith,
Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to FED.R.APP. 27(d)(2), the undersigned hereby certifies that, excluding the items listed in FED.R.APP. 32, the attached motion is 4,559 words long as measured using Microsoft Word.

Dated:  January 9, 2023          Respectfully submitted,

/s James C. Pistorino
Parrish Law Office
788 Washington Road
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

/s Phillip Lear
Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:  (801) 538-5001
Email:  phillip.lear@learlaw.com
Counsel for Linda P. Smith,
Plaintiff-Appellant