No. 22-4012

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

LINDA P. SMITH,

Plaintiff-Appellant,

v.

XAVIER BECERRA, in his capacity as
Secretary, United States Department of Health and Human Services,

Defendant-Appellee.

On Appeal from the United States District Court
for the District of Utah
District Court Case No. 21-cv-00047 (Judge Nielson)

## OPPOSITION TO PLAINTIFF'S MOTION FOR
## APPELLATE FEES AND COSTS

*Of Counsel:*

SAMUEL R. BAGENSTOS
*General Counsel*

GERARD KEATING
LINDA KEYSER
*Attorneys*

*Department of Health and
  Human Services*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

TRINA A. HIGGINS
*United States Attorney*

ABBY C. WRIGHT
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff
Civil Division, Room 7212
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4820*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ii

INTRODUCTION AND SUMMARY .............................................................1

STATEMENT ...............................................................................................3

ARGUMENT ...............................................................................................7

      A.     Plaintiff Is Not Entitled To Fees Under EAJA As A Prevailing Party ......................................................................................8

      B.     Plaintiff Is Not Entitled To Bad-Faith Fees Under EAJA .......................15

CONCLUSION ........................................................................................... 20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*Atkins v. Apfel*,
  154 F.3d 986 (9th Cir. 1998) .................................................................... 12

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) ................................................................................. 12

*Commissioner, Immigration & Naturalization Serv. v. Jean*,
  496 U.S. 154 (1990) ................................................................................... 9

*FTC v. Freecom Commc'ns, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ........................................................... 15, 16

*Gallaway v. Astrue*,
  297 F. App'x 807 (10th Cir. 2008) ............................................................. 9

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) ................................................................................. 19

*Healey v. Leavitt*,
  485 F.3d 63 (2d Cir. 2007) ...................................................................... 12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................ 8, 9, 10, 12, 17

*Smith v. Becerra*,
  44 F.4th 1238 (10th Cir. 2022) ........................................... 5, 6, 7, 12, 13, 20

*Smith v. McDonough*,
  995 F.3d 1338 (Fed. Cir. 2021) ................................................................ 10

*Sorenson v. Mink*,
  239 F.3d 1140 (9th Cir. 2001) .................................................................. 14

*Towerridge, Inc. v. T.A.O., Inc.*,
  111 F.3d 758 (10th Cir. 1997) .................................................................. 17

*United States v. 2,116 Boxes of Boned Beef*,
  726 F.2d 1481 (10th Cir. 1984) ........................................................... 15-16

**Statutes:**

28 U.S.C. § 2412(b) ........................................................................................... 7, 15

28 U.S.C. § 2412(d) ............................................................................................... 7

28 U.S.C. § 2412(d)(1)(A) ..................................................................................... 8

28 U.S.C. § 2412(d)(1)(B) ................................................................................... 15

28 U.S.C. § 2412(d)(1)(C) ............................................................................... 9, 12

28 U.S.C. § 2412(d)(2)(A) ................................................................................... 14

28 U.S.C. § 2412(d)(2)(D) ..................................................................................... 9

42 U.S.C. § 1988 ................................................................................................... 9

42 U.S.C. § 1988(b) ............................................................................................. 14

**Regulation:**

42 C.F.R. § 401.108(c) ......................................................................................... 3

**Other Authorities:**

85 Fed. Reg. 70,358 (Nov. 4, 2020) ..................................................................... 4

86 Fed. Reg. 73,860 (Dec. 28, 2021) ............................................................... 4, 11

## INTRODUCTION AND SUMMARY

Plaintiff asks this Court to award attorney's fees under the Equal Access to Justice Act (EAJA) for the work of her attorney on appeal.  But plaintiff filed the appeal after the district court entered judgment in her favor, and she was unsuccessful on the only claims at issue before this Court.  In essence, plaintiff seeks a payday for her attorney for needlessly protracting the litigation long after she had obtained the only victory that she would obtain in this case.  Whatever plaintiff's entitlement for fees incurred in district court, plaintiff should not be awarded any fees for the appeal.

This case arises from the denial of three Medicare claims plaintiff submitted seeking coverage of an insulin pump and supplies.  In denying coverage, the Medicare Appeals Council treated plaintiff's claims as if they related to a standalone continuous glucose monitor (CGM) rather than an insulin pump with CGM functionality. Plaintiff filed suit in district court, seeking payment of her Medicare claims and an order setting aside a 2017 policy providing that certain CGMs are not covered by Medicare.  Shortly after plaintiff filed her complaint, the government confessed error, explaining that the Secretary had failed to recognize that the claims were related to an insulin pump, and asked for a remand to the Secretary to pay the claim for the pump and to reconsider the claims for the supplies.  Plaintiff opposed entry of judgment in her favor.

The Department of Health and Human Services (HHS) subsequently issued a final rule replacing the 2017 policy, providing for coverage of CGMs, and making

clear that the 2017 policy did not apply to insulin pumps. The government renewed its confession of error, and the district court entered judgment in plaintiff's favor, over her repeated objection.

Despite the judgment in her favor, plaintiff appealed, arguing that she was entitled to a ruling setting aside the 2017 policy and barring the Secretary from contesting CGM coverage in the future. Although the final rule had already superseded the 2017 policy, HHS took the further step of rescinding the prior policy entirely. This Court dismissed the appeal, holding that the case is moot.

Plaintiff now moves for an award of attorney's fees and costs incurred on appeal. That motion should be denied. When a plaintiff raises distinct claims in a single lawsuit and prevails on some but not all of those claims, EAJA permits her to recover only those fees and costs incurred in pursuit of the claims on which she succeeded; she may not receive an award of fees related only to the unsuccessful claim. In this action, plaintiff pursued three distinct claims seeking (1) payment of her Medicare claims, (2) a declaration that the 2017 policy was unlawful, and (3) a ruling that the Secretary was collaterally estopped from contesting plaintiff's Medicare claims in the future. Although plaintiff prevailed on the first claim in district court (by virtue of the Secretary's confession of error), the appellate fees and costs that she now seeks were incurred only in pursuit of the second and third, unsuccessful claims. Independently, plaintiff's request for fees should be denied because a plaintiff is not entitled to fees incurred because she unreasonably protracted proceedings. As

explained, plaintiff prevailed in district court yet needlessly pursued an appeal to challenge a policy that was no longer in effect and never applied to her claims.

Plaintiff also errs in arguing that she is entitled to market-rate attorney's fees because the Secretary acted in bad faith by promulgating the 2017 policy. Under EAJA, a court may award attorney's fees if the government acted in bad faith in the course of litigation. There was no bad faith here. And, in any event, the Court's case law is clear that allegations of bad-faith conduct with respect to *pre*-litigation acts are not a basis for fee shifting. Thus, even if the 2017 policy were promulgated in bad faith (which it was not), plaintiff's request for fees fails.

## STATEMENT

1. In January 2017, the Administrator of the Centers for Medicare & Medicaid Services (CMS) issued a binding CMS Ruling regarding the classification of continuous glucose monitors as durable medical equipment covered by Medicare Part B. App. Vol. I at 80-95; *see* 42 C.F.R. § 401.108(c). Individuals with diabetes can use CGMs to monitor and track their glucose levels on a more frequent basis than would be feasible using a fingerprick and blood glucose monitor. Early CGMs suffered from poor accuracy, however, so the 2017 CMS Ruling provided that CGMs would be covered as durable medical equipment only if approved by the FDA for use in making diabetes treatment decisions, such as changing one's diet or insulin dosage based on the readings from the monitor. App. Vol. I at 85-90. "Adjunctive" CGMs that were approved only to "complement, not replace, information obtained from blood

3

glucose monitors" would not be covered.  App. Vol. I at 85-86.  The 2017 CMS

Ruling did not address the classification of insulin pumps that also perform the

functions of a CGM, but, in general, insulin pumps have been "classified and covered

as [durable medical equipment] since the mid-1990s," 86 Fed. Reg. 73,860, 73,899

(Dec. 28, 2021).

    In November 2020, CMS published a proposed rule to replace the 2017 CMS

Ruling and classify all CGMs that use a dedicated receiver as durable medical

equipment.  85 Fed. Reg. 70,358, 70,398, 70,403-70,404 (Nov. 4, 2020).  The agency

stated that it "now believe[d] that because adjunctive CGMs can provide information

about potential changes in glucose levels while a beneficiary is sleeping and is not

using a blood glucose monitor, these CGMs are primarily and customarily used to

serve [the] medical purpose" of "helping patients to avoid potential episodes of

hypoglycemia or hyperglycemia, despite the fact that fingerstick blood glucose

verification is still required for use in making diabetes treatment decisions."  *Id.* at

70,401.  CMS finalized that position with a rule issued in December 2021.  86 Fed.

Reg. 73,860.

    Two months later, CMS issued a Technical Direction Letter to Medicare

administrative contractors providing instructions regarding Medicare coverage of

CGMs.  *See* Appendix A – TDL-220257, *Olsen v. Becerra*, No. 21-cv-326 (E.D. Wash.

Feb. 25, 2022), Dkt. No. 20-1.  The letter explained that the 2021 final rule replaced

the 2017 CMS Ruling and applies to claims for a CGM or its necessary supplies that

are provided to a Medicare beneficiary on or after February 28, 2022. *Id.* at 1.
Furthermore, the letter instructed administrative contractors to apply the substantive
terms of the 2021 final rule even retroactively to pending and future claims or appeals.
*Id.* at 1-3. And on May 13, 2022, the CMS Administrator issued a new CMS Ruling
formally rescinding the 2017 policy and instructing contractors and HHS employees at
all levels of the Medicare claims-review process—including administrative law judges
and the Medicare Appeals Council—to apply the terms of the final rule to valid
pending or future claims and appeals, regardless of the date of service. *See* U.S. Letter
of Suppl. Auth. Add. A – CMS-1738-R (filed May 13, 2022).

2. From 2016 to 2018, HHS denied three claims for Medicare coverage
submitted by plaintiff or on her behalf for an insulin pump with an integrated CGM
and disposable glucose sensors used with the pump. *Smith v. Becerra*, 44 F.4th 1238,
1243 (10th Cir. 2022). Plaintiff brought this suit to challenge those denials, and
further asked the district court to set aside the 2017 CMS Ruling because it did not go
through notice-and-comment rulemaking and to declare that CGMs are durable
medical equipment regardless of whether they replace blood glucose tests. *Id.* at 1244.

The Secretary quickly confessed error, explaining that plaintiff's insulin pump
meets the definition of durable medical equipment and was not covered by the 2017
CMS Ruling. *Smith*, 44 F.4th at 1244. The Secretary asked that the district court enter
judgment in plaintiff's favor and remand to the agency for payment of one of
plaintiff's claims and further consideration of the other two. *Id.* Plaintiff opposed

5

that request, and the district court allowed the case to proceed. *Id.* After HHS issued

the 2021 final rule, however, the Secretary renewed his request for a judgment in

plaintiff's favor. *Id.* at 1245. The district court granted that request and denied as

moot the pending summary-judgment motions. *Id.* Plaintiff moved to alter or amend

the judgment in her favor, arguing that the case was not moot because she still sought

a determination that the 2017 CMS Ruling was issued illegally and an order setting it

aside. *Id.* The district court denied that motion, *id.*, and this appeal followed.

On August 12, 2022, the Court unanimously dismissed the appeal as moot.

The Court explained that the 2021 final rule concerning future claims for CGMs, the

2022 Technical Direction Letter, and the 2022 CMS Ruling together "fully redress

[plaintiff's] equitable claims." *Smith*, 44 F.4th at 1246. The Court further explained

that "[v]acating [the 2017 CMS Ruling] and declaring that CGMs are durable medical

equipment covered by Medicare would have no effect because CMS has already

rescinded [that CMS Ruling] and issued a formal rule classifying CGMs and their

supplies as durable medical equipment." *Id.* The Court thus found that plaintiff "no

longer suffers from an actual or imminent injury that can be redressed by this court."

*Id.*

The Court rejected plaintiff's contention that the voluntary-cessation exception

to mootness applies. *Smith*, 44 F.4th at 1250-1252. First, the Court explained that

"the timing of the Secretary's policy change toward CGMs"—which was initiated well

before this litigation—"suggests that the Secretary did not voluntarily change his

conduct to moot [plaintiff's] litigation." *Id.* at 1251. Second, the Court found "a minimal risk that the Secretary will suddenly revert to his rescinded policy of denying CGM claims given the wholesale change in policy that has developed over the past several years." *Id.* Finally, the Court found that the Secretary's payment of plaintiff's claims, rescission of the 2017 CMS Ruling, and promulgation of the 2021 final rule and subsequent agency documents fully "remedied the effects of the Secretary's allegedly wrongful conduct towards [plaintiff]." *Id.* at 1252

Plaintiff filed a petition for rehearing, which the Court denied. Plaintiff then moved for attorney's fees and costs incurred during the appeal. Plaintiff has also moved in the district court for an award of her fees and expenses incurred in litigating the case in that court. Dist. Ct. Dkt. No. 66.

## ARGUMENT

Plaintiff moves in this Court for an award of fees incurred in this appeal. She urges that she is entitled to fees as a prevailing party pursuant to 28 U.S.C. § 2412(d) and to market-rate attorney's fees based on the government's alleged bad faith pursuant to 28 U.S.C. § 2412(b). The Court should deny plaintiff's motion.

A reasonable fee award must exclude fees incurred in pursuit of unsuccessful claims, and plaintiff did not succeed on the only claims that were at issue in this appeal. Plaintiff's motion should also be denied because she unreasonably protracted this litigation. The appeal for which she seeks fees was filed after the district court had already entered judgment in her favor with regard to her Medicare coverage

claims, after it was clear that the 2017 CMS Ruling did not apply to plaintiff because she uses an insulin pump (not a CGM), and after the 2017 ruling was replaced with a final rule providing for coverage of CGMs.

The Court should also deny plaintiff's request for fees under Section 2412(b) because the government acted in good faith and with complete candor toward the courts and plaintiff throughout this litigation.  Plaintiff's argument that the Secretary acted in bad faith by issuing the 2017 CMS Ruling also fails because, among other things, the Court can award fees under Section 2412(b) only for the government's bad-faith conduct in the course of litigation, not for alleged bad faith in the events giving rise to plaintiff's claim.

### A.      Plaintiff Is Not Entitled To Fees Under EAJA As A Prevailing Party

EAJA permits a court to award reasonable attorney's fees (subject to a statutory cap) and costs "to a prevailing party … unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  However, "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).  "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable

fee." *Id.*[1]  Furthermore, "fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings."  28 U.S.C. § 2412(d)(2)(D); *see also id.* § 2412(d)(1)(C) (the court may reduce a fees award "to the extent that the prevailing party … engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy").

The Secretary does not contest that plaintiff is a prevailing party based on the district court judgment ordering the Secretary to pay her Medicare claims.  Nor does the Secretary contest here plaintiff's allegation that the government's position was not substantially justified (though he reserves the right to do so in opposing plaintiff's fees motion in district court).  However, this "brings the plaintiff only across the statutory threshold" of eligibility.  *Hensley*, 461 U.S. at 433.  The court still must "determine what fee is 'reasonable,'" *id.*, and exclude fees "for any portion of the litigation in which the party has unreasonably protracted the proceedings," 28 U.S.C. § 2412(d)(2)(D).  In light of these considerations, the Court should deny plaintiff any award of appellate fees or costs.

---

[1] Although *Hensley* addressed the standard for awarding attorney's fees under 42 U.S.C. § 1988, the Court made clear that the "standards set forth in th[at] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  *Hensley*, 461 U.S. at 433 n.7; *see also Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 161 (1990) ("[T]he district court's task of determining what fee is reasonable [in an EAJA case] is essentially the same as that described in *Hensley*."); *Gallaway v. Astrue*, 297 F. App'x 807, 809 (10th Cir. 2008) (applying the *Hensley* standard).

1. "[A] prevailing party under the EAJA should recover for time 'reasonably expended' on successful claims, but not on unsuccessful claims." *Smith v. McDonough*, 995 F.3d 1338, 1344 (Fed. Cir. 2021). In *Hensley*, the Supreme Court held that a district court had erred by awarding the plaintiffs their attorney's fees without "consider[ing] the relationship between the extent of success and the amount of the fee award." 461 U.S. at 438. The Court explained that where a plaintiff "present[s] in one lawsuit distinctly different claims for relief" and prevails on only some of those claims, "unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]." *Id.* at 434-435.

Like the plaintiffs in *Hensley*, plaintiff presented "distinctly different claims for relief that are based on different facts and legal theories." *Hensley*, 461 U.S. at 434. In particular, plaintiff argued, first, that her insulin pump and supplies should be covered by Medicare as durable medical equipment. Plaintiff argued, second, that the 2017 CMS Ruling providing that adjunctive CGMs are not covered durable medical equipment was promulgated without procedure required by law and was substantively unlawful. *See* Pl.'s Opening Br. 4, 16. And she argued, third, that the Secretary is collaterally estopped from contesting coverage in the future as a result of a favorable decision she had obtained from an administrative law judge. *See id.* at 31. These claims are distinct. First, the Medicare reimbursement claims for plaintiff's insulin pump and supplies did not implicate the 2017 CMS Ruling, which addressed

10

adjunctive CGMs, not insulin pumps.  *See* App. Vol. I at 37; *see also* App. Vol. I at 271

(the 2017 CMS Ruling "only addressed the classification of CGM receivers as [durable

medical equipment] and did not address coverage of CGM sensors and transmitters

used with insulin pumps" (quoting 86 Fed. Reg. at 73,898)).  Second, plaintiff had

obtained complete relief on her claim for Medicare coverage by January 19, 2022,

when the district court entered judgment in plaintiff's favor and ordered the Secretary

to pay the Medicare claims on remand.  *See* App. Vol. I at 11.  Plaintiff's continued

litigation beyond that point—including during this appeal—was focused only on her

second and third claims and sought additional and distinct relief concerning the 2017

CMS Ruling and a ruling on collateral estoppel.

Plaintiff seeks reimbursement for fees incurred on appeal without

distinguishing between those fees expended in pursuit of her successful claim and

those expended in pursuit of her unsuccessful claims.  Under *Hensley*, however, her

request for appellate fees should be denied in its entirety because the only claims

presented on appeal were those claims on which plaintiff was wholly unsuccessful: her

request that the 2017 CMS Ruling be set aside and her request for a declaration that

the Secretary is collaterally estopped from contesting coverage in the future.  The

district court declined to issue that requested relief, App. Vol. I at 11-12, and this

Court dismissed the appeal as moot.  Plaintiff's counsel's unsuccessful work on appeal

thus "cannot be deemed to have been 'expended in pursuit of the ultimate result

achieved'"—a judgment ordering only that the Secretary pay plaintiff's three Medicare

11

claims—and "the hours spent on the unsuccessful claim[s] should be excluded in considering the amount of a reasonable fee." *Hensley*, 461 U.S. at 435, 440; *see also Healey v. Leavitt*, 485 F.3d 63, 72 (2d Cir. 2007) (district court properly reduced the plaintiffs' fee where the plaintiffs had devoted a "considerable amount of time … to their unsuccessful claim"); *Atkins v. Apfel*, 154 F.3d 986, 989-990 (9th Cir. 1998) (district court erred by awarding fees incurred in an unsuccessful appeal).

Nor can plaintiff claim success based on the Secretary's voluntary rescission and replacement of the 2017 CMS Ruling. This Court explained that "the timing of the proposed rule in relation to [plaintiff's] case forecloses the possibility that the Secretary stopped denying CGM claims solely to avoid judicial review in [this] case." *Smith v. Becerra*, 44 F.4th 1238, 1251 (10th Cir. 2022). In any event, a defendant's voluntary cessation of challenged conduct does not make a plaintiff a prevailing party for purposes of a fee-shifting statute. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001) ("We have only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree …. Never have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'" (citations omitted)).

2. The Court should also deny appellate fees and costs incurred because plaintiff "unduly and unreasonably protracted the final resolution" of this case by filing the appeal. 28 U.S.C. § 2412(d)(1)(C). As explained above, the full measure of relief that plaintiff ultimately obtained had already been awarded to her in the district

12

court's final judgment. The Secretary had also explained that the 2017 CMS Ruling did not apply to plaintiff's claims because she used an insulin pump. App. Vol. I at 270-271. And the Secretary had already replaced that ruling with a final rule providing for coverage of CGMs before plaintiff filed the appeal. *See Smith*, 44 F.4th at 1245. In these circumstances, it was unreasonable for plaintiff to protract the litigation by filing this ultimately unsuccessful appeal; she could not reasonably have expected any further relief that would apply to her past or future claims for coverage of her insulin pump.

Although this Court need not decide the issue, plaintiff's conduct in unreasonably protracting this litigation began before the appeal. As already explained, the Secretary confessed error in his first responsive filing in this case, in June 2021. App. Vol. I at 37-38. If plaintiff had agreed to the remand requested by the Secretary at that time, the Secretary would have immediately paid the claim for her insulin pump and would have approved and paid the claims for the disposable sensors at least by December 2021, when the final rule was issued. *See* App. Vol. I at 271 (explaining that the final rule made clear that the claims for the sensors should be approved and paid). Instead, plaintiff opposed the entry of judgment in her favor and a remand, requiring competing motions for summary judgment and ultimately this appeal. Plaintiff's refusal to accept a judgment in her favor should not be rewarded with a payment from the public fisc. Indeed, awarding fees when litigation has been

improperly prolonged could encourage parties to prolong proceedings against the government well past the point when they could obtain a judgment in their favor.

3. Even if the Court decides to award plaintiff her attorney's fees under Section 2412(d), the appropriate rate is limited by statute to $125 with a potential cost-of-living adjustment. 28 U.S.C. § 2412(d)(2)(A).[2] Plaintiff asserts (Fees Mot. 21) that she should be awarded market-rate fees because she obtained "excellent results." As explained, plaintiff did not prevail on the claim at issue on appeal, so it cannot be said that she obtained any favorable results, let alone excellent ones. More fundamentally, there is no provision allowing the Court to award fees above the statutory cap even if plaintiff did achieve "excellent results." *Hensley* does not hold otherwise. That case involved a request for fees under 42 U.S.C. § 1988(b), and although the standard for *whether* fees should be awarded is the same under EAJA and Section 1988, the *rate* to be paid is different. Under Section 1988, "a reasonable hourly rate is 'calculated according to the prevailing market rates,'" while under EAJA "attorney fees are capped by Congress." *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). In any event, plaintiff's assertion that she obtained "excellent results" is implausible. Contrary to her assertion (Fees Mot. 21) she did not achieve the rescission of the 2017 CMS Ruling or retroactive coverage of CGM claims; those

---

[2] The statutory cap on fees applies only to those fees awarded pursuant to subsection (d) of EAJA. *See* 28 U.S.C. § 2412(d)(2)(A).

developments followed from a rulemaking process that began before this litigation was even filed.

Finally, if the Court decides to award attorney's fees for plaintiff's unsuccessful appeal, it should order plaintiff to provide the Court and the Secretary with an itemized statement in accordance with the statute. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees and other expenses shall[] … includ[e] an itemized statement … stating the actual time expended and the rate at which fees and other expenses were computed."). Without such a statement, neither the Court nor the government can determine that the requested fee is reasonable.

## B.    Plaintiff Is Not Entitled To Bad-Faith Fees Under EAJA

Plaintiff also seeks fees under Section 2412(b) of EAJA, which authorizes a court to award fees against the government "to the same extent that any other party would be liable under the common law." 28 U.S.C. § 2412(b). This provision incorporates "the bad faith exception to the common law's 'American Rule' that each party bear[s] the financial burden of civil litigation regardless of its outcome." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1196 (10th Cir. 2005). The Court will award attorney's fees under this exception only when an opposing party's claim or defense "is entirely without color *and* has been asserted wantonly for purposes of harassment or delay, or for other improper reasons." *Id.* at 1201. The bad-faith exception is "extremely narrow" and "is not invoked by findings of negligence, frivolity, or improvidence." *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1488 (10th

15

Cir. 1984). Plaintiff bears the burden of establishing entitlement to attorney's fees under Section 2412(b). *See Freecom Commc'ns*, 401 F.3d at 1201.

1. The Secretary has not acted in bad faith in this litigation or advanced any position in defense of the litigation in bad faith. To the contrary, in his first substantive filing in the litigation, the Secretary confessed error in denying plaintiff's Medicare claims and requested that the district court enter judgment in plaintiff's favor. At the same time, the Secretary was engaged in an ongoing project of reconsidering Medicare coverage of CGMs and ultimately replaced and rescinded the challenged 2017 CMS Ruling. When HHS issued its final rule, the government notified the district court and again requested a judgment in plaintiff's favor. Throughout the litigation, therefore, the government has conducted itself in good faith and with the utmost candor toward the court. Plaintiff's request for fees under Section 2412(b) should be rejected.

2. Plaintiff's primary argument (Fees Mot. 16-17) is that the Secretary acted in bad faith by taking the position, in the 2017 CMS Ruling, that CGMs are not durable medical equipment. That argument fails to establish bad faith.

First, neither the district court nor this Court considered the validity of the 2017 CMS Ruling, much less whether it was instituted in bad faith, because that ruling was not applicable to plaintiff's insulin pump. *See supra* pp. 10-11. This Court should not address that issue now, after the substantive litigation is finished and plaintiff's challenge to the 2017 policy found moot. Indeed, consideration of whether the 2017

CMS Ruling was issued in bad faith would require substantial briefing and consideration. And as the Supreme Court has instructed, "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.

Second, plaintiff's request for fees fails at the outset because the bad-faith exception to the American Rule allows for fee shifting only where a party has acted in bad faith in "the judicial process." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 768 (10th Cir. 1997). The Court has "refuse[d] to approve fee shifting under the bad-faith exception where the wrongful conduct consists solely of *prelitigation* bad-faith acts." *Id.* at 769 (emphasis added). Simply put, "bad faith in the acts giving rise to the substantive claim" do "not fall within the bad-faith exception." *Id.* at 768. Here, however, any alleged bad faith in establishing and applying the 2017 CMS Ruling "lay solely" in the Secretary's "prelitigation acts which gave rise to [plaintiff's] substantive claim." *Id.* Plaintiff thus cannot establish bad faith for purposes of recovering attorney's fees by pointing to the Secretary's conduct (through the CMS Administrator) in establishing the underlying policy regarding Medicare's reimbursement of CGM claims.

Third, even if the Secretary's non-litigation conduct could constitute bad faith for purposes of attorney's fees, plaintiff has not established any such bad faith. As explained above and in the Secretary's response brief on appeal, the CMS Administrator determined that adjunctive (or "non-therapeutic") CGMs would not be covered by Medicare because they were not approved by the FDA for use in making

diabetes treatment decisions and must be used as a complement to, not a replacement for, blood glucose monitors. *See supra* pp. 3-4; Response Br. 6-8. The Secretary rescinded and replaced that policy based on a continuing evaluation of the evolving treatment for diabetes, and there is no reasonable basis to believe that the 2017 policy was instituted in bad faith.

3. Similarly unpersuasive is the plaintiff's contention that the Secretary acted in bad faith during litigation because "[w]hen finally forced to Answer the Complaint, the Secretary asserted that the denials … should be affirmed and [plaintiff should not be] afforded 'any relief whatsoever.'" Fees Mot. 17.

As explained above, the Secretary initially filed a responsive statement to plaintiff's complaint in lieu of an answer as required by District of Utah Civil Rule 7-4(a)(2)(B) (2020). App. Vol. I at 37. That response conceded that the "Medicare Appeals Council erred in denying coverage for" plaintiff's insulin pump, "which is covered as durable medical equipment under the Medicare statute and regulations." *Id.* The Secretary further conceded that the denial of plaintiff's two claims for disposable sensors used with the insulin pump "was also erroneous, because it failed to consider an important aspect of the problem." *Id.* The Secretary thus requested that the district court "enter judgment in favor of [p]laintiff and remand to the Secretary for payment of the claim for the insulin pump, and determination of whether the sensors should be covered as reasonable and necessary for the operation of the insulin pump." App. Vol. I at 38. Plaintiff, however, opposed the entry of

18

judgment in her favor, *see* Dist. Ct. Dkt. No. 17, and the district court ordered the Secretary to file an answer, App. Vol. I at 7-8.  In that answer, the Secretary responded to plaintiff's request for a relief with a general denial of liability.  *See* App. Vol. I at 61.  In this context, the Secretary's position was apparent:  Although the district court should remand the case for further reconsideration and payment of plaintiff's Medicare claims, plaintiff was not entitled to all the relief requested in the relevant paragraphs of her complaint, including, for example, an order holding that CGMs (as opposed to insulin pumps, as used by plaintiff) are covered durable medical equipment.  *See* App. Vol. I at 33.

In any event, any bad faith in a general denial in the Secretary's answer would not justify an award of fees and costs incurred *on appeal*.  Those appellate fees are not traceable to any alleged bad-faith denial in the Secretary's answer.  *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017) (bad-faith fees are "limited to the fees the innocent party incurred solely because of the misconduct," *i.e.*, "fees that party would not have incurred but for the bad faith").  Indeed, the government's position that the district court should enter judgment in plaintiff's favor was made clear twice before plaintiff filed this appeal—once before the Secretary filed his answer and once after.

4.  Finally, plaintiff suggests (in a single sentence) that the Secretary acted in bad faith by rescinding the 2017 CMS Ruling a few days before oral argument in this case.  *See* Fees Mot. 17-18.  But it is unclear how the rescission of a ruling plaintiff

19

contends was unlawful could constitute evidence of bad faith. Nor does the timing of the rescission demonstrate bad faith. As this Court stated in its decision, "the timing of the Secretary's policy change toward CGMs suggests that the Secretary did not voluntarily change his conduct to moot [plaintiff's] litigation." *Smith*, 44 F.4th at 1251. Rather, CMS initiated the rulemaking process that culminated in the rescission of the 2017 CMS Ruling—which did not even apply to insulin pumps like plaintiff used—well before this litigation began. *Id.* Furthermore, this theory of bad faith is belied by the fact that plaintiff seeks all fees expended on appeal, not only those fees expended in responding to the Secretary's rescission of the 2017 CMS Ruling.

## CONCLUSION

Plaintiff's motion for appellate fees and costs should be denied.

Respectfully submitted,

*Of Counsel:*

SAMUEL R. BAGENSTOS
    *General Counsel*

GERARD KEATING
LINDA KEYSER
    *Attorneys*

    *Department of Health and*
      *Human Services*

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney*
      *General*

TRINA A. HIGGINS
    *United States Attorney*

ABBY C. WRIGHT

  *s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7212*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 514-4820*
    *joshua.m.koppel@usdoj.gov*

February 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Federal Rules of Appellate Procedure because it contains 5,190 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel