Case No. 22-4012

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

**Linda P. Smith,**
*Plaintiff-Appellant,*

v.

**Xavier Becerra, in his official capacity as
Secretary of the United States Department of
Health and Human Services,**
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the District of Utah
The Honorable Howard C. Nielson, Jr.
Case No. 21-CV-00047-HCN

---

## PLAINTIFF-APPELLANT LINDA SMITH'S REPLY RE: MOTION FOR FEES AND COSTS

---

Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:  (801) 538-5001
Email:  phillip.lear@learlaw.com

James C. Pistorino
Parrish Law Office
788 Washington Rd.
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

Counsel for Linda P. Smith,
Plaintiff-Appellant

Dated:  March 1, 2023

Plaintiff's motion should be granted. Incredibly, faced with a motion seeking "bad faith" fees, in defense thereof, the Secretary has chosen to make a "bad faith" argument, that was already adjudicated to constitute bad faith.

Further, not content with an illegal, bad faith policy that irreparably harmed tens of thousands enforced for five years, the Secretary characterizes the litigation challenging that illegal, deadly conduct as "unreasonably protracted" and a "payday" for Plaintiff's counsel. Opp. at 1. This, the Secretary asserts even though this Court held that the District Court should not have dismissed Plaintiff's claims for relief and, therefore, that the appeal was proper, it was only steps the Secretary took four days before oral argument and gave Plaintiff everything she wanted.

Plaintiff's motion should be granted.

## A.    Response to "Statement"

The genesis of this case was the Secretary's unreasonable/bad faith assertion that a CGM is not "primarily and customarily used to serve a medical purpose" and, therefore, not covered "durable medical equipment." After numerous losses before his own ALJs and with multiple cases pending, in 2017, the Secretary illegally issued CMS-1682-R which formally contended that a CGM is not "primarily and customarily used to serve a medical purpose." As shown in the table on pages 2-6 of Plaintiff's motion, every court to consider that assertion has rejected it and awarded attorney's fees to the litigants.

1

In *Olsen v. Becerra*, 2021 WL 3683360 (E.D. Wash. April 4, 2021), the Court awarded "bad faith" fees on two grounds: 1) because the idea that a CGM in not "primarily and customarily used to serve a medical purpose" as contended in CMS-1682-R, as asserted before the Department and advanced in the litigation was "so obviously wrong as to be frivolous"; and 2) because the Secretary engaged in a "bad faith" mischaracterization of the basis of denial as based on "accuracy" rather than the true basis of allegedly not "primarily and customarily used to serve a medical purpose." *Id.* at *2 ("the Court finds further and faith").

In Opposition here, the Secretary repeats the same argument that has already been adjudicated to constitute bad faith. Opp. at 3-4, 17-18. Alleged "accuracy" or "inaccuracy" is neither a statutory nor regulatory criteria for "durable medical equipment" coverage.[1] What is a criteria is whether something is "primarily and customarily used to serve a medical purpose." 42 C.F.R. § 414.202. That was the phrase the Secretary sought to construe in issuing CMS-1682-R asserting that CGM's were not "primarily and customarily used to serve a medical purpose." App.86-87. That a CGM is not "primarily and customarily used to serve a medical purpose" as construed in CMS-1682-R was the basis on which both the ALJ and the MAC denied Plaintiff's claims. App.318; App.329-31.

---

[1] There is no evidence to support the Secretary's assertion that "early CGMs suffered from poor accuracy" (Opp. at 3) and it appears to be made from whole cloth.

Indeed, the "new Rule" which went into effect on March 1, 2022, changed the Secretary's construction of this phrase to comport with reality and admitted that a CGM is "primarily and customarily used to serve a medical purpose" – but only for claims with dates of service *after* February 28, 2022, and only after five years of denials, tens of thousands irreparably injured, and multiple litigations. 86 Fed.Reg. 73,899 (December 28, 2021).[2]

Thus, in defense of a motion seeking fees for alleged bad faith, the Secretary has chosen to repeat an argument that has already been adjudicated to constitute bad faith.

The Secretary's contentions about "insulin pumps" and "disposable glucose sensors used with the pump" (Opp. at 1, 5) are not correct. "Sensors" are a component of a CGM, not a pump. Plaintiff's claim for coverage of the November 16, 2017, and May 15, 2018, sensors used with her "continuous glucose monitor (CGM) system)" were denied on the bad faith basis of CMS-1682-R and that supplies used with a CGM are not covered "durable medical equipment" because a CGM itself is not "primarily and customarily used to serve a medical purpose." App.313.

As it relates to the Secretary's changing position, it is important to keep in

---

[2] Plaintiff notes that this Rule was only published after the *Olsen II* case was filed and assigned to the same judge who made the "bad faith" finding in *Olsen I*.

mind the "new Rule" only applied to claims with dates of service *after* February 28, 2022. 86 Fed.Reg. 73,860; Transcript of May 17, 2022, Tenth Circuit Oral Argument at 23 (regarding "new Rule" – JUDGE CARSON: "Prospectively." MR. KOPPEL: "That was prospectively.") (attached as Exhibit A). Thus, CMS-1682-R remained in effect and would be applied to reject claims with dates of service prior to that date. One such claim was Plaintiff's July, 1, 2021, claim that was rejected on the basis of CMS-1682-R. App.157. The limited prospective nature of the "new Rule" also belies the Secretary's contention that had Plaintiff submitted merely acquiesced to the Secretary's illegal, bad faith conduct and agreed to a remand, the Secretary would have "paid the claims for the disposable sensors at least by December 2021, when the final rule was issued." Opp. at 13. By its own terms, the "new Rule" could not apply to Plaintiff's claim for sensors provided in November 2017 and May 2018.

At the District Court in this case, the Secretary argued that the courts were powerless to stop him from acting illegally. App.220. No later than February 8, 2022, the District Court adopted that position and refused to consider the other forms of relief sought by Plaintiff. Dkt. #55. Plaintiff filed her Notice of Appeal on February 22, 2022. App.292-93. Accordingly, Plaintiff fails to see how the "Technical Direction Letter" (TDL) that issued three days later can have much bearing. *Olsen v. Becerra*, Case No. 21-cv-326-TOR (E.D. Wash.), Dkt. #20

(February 25, 2022).  In any event, the TDL attempted to potentially, partially, retroactively apply the "new Rule" to claims with dates of service prior to March 1, 2022.  As Plaintiff has pointed out and the Secretary at least partially concedes: 1) the TDL itself was not binding; 2) issued itself in violation of the same statute CMS-1682-R did (42 U.S.C. § 1395hh(a)) (*i.e.*, without notice and comment); 3) the attempted retroactivity violated another provision (42 U.S.C. § 1395hh(e) – required findings for retroactivity); 4) on its face, only applied to some claims; and 5) could not/did not displace the binding CMS-1682-R that remained in effect for pre-March 1, 2022, dates of service (such as Plaintiff's July 1, 2021, claim).  At oral argument before this Court, the Secretary admitted that "it left gaps."  Transcript at 23.  Thus, four days before oral argument in this case, the Secretary issued CMS-1738-R, which was binding, applied retroactively, and made admissions that Plaintiff had sought.

**B.     Fees Should Be Awarded Under the "Bad Faith" Provision**

The Secretary asserts that bad faith fees should not be awarded because CMS-1682-R "was not applicable to plaintiff's insulin pump."  Opp. at 16.  That would be news to both the ALJ and the MAC, who denied Plaintiff's claims on the bad faith basis of CMS-1682-R.  App.322-31; App.313-21.  Moreover, of course, the Secretary's assertion does not address Plaintiff's claims for sensor coverage which were denied on the same bad faith grounds.

The Secretary's contention that there is "no reasonable basis to believe that [CMS 1682-R] was instituted in bad faith" (Opp. at 18) simply challenges the *Olsen* decision and reality. It is and always has been bad faith to contend that a CGM is not "primarily and customarily used to serve a medical purpose" and the Secretary's continued refusal to admit that is one reason EAJA fees should be awarded. *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) ("deter unreasonable exercise of Government authority").

The Secretary's reliance on *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758 (10th Cir. 1997) is misplaced. Opp. at 17. In *Towerridge*, this Court conducted a careful review of the Supreme Court's decision in *Vaughn v. Atkinson*, 369 U.S. 527 (1962) and identified several forms of bad faith conduct, some of which fall within the exception to the American Rule. 111 F.3d at 768. As stated by this Court: "Where a party … necessitates an action to be filed or defends an action through a colorless defense, that constitutes bad faith which is grounds for an award of attorney's fees." *Id*.

That is exactly the case here. The Secretary necessitated this action be filed through its colorless assertion of the illegal and adjudicated bad faith CMS-1682-R and, in this litigation, asserted a colorless defense. As set forth, first, the Secretary refused to respond to the allegations of the Complaint in the Answer, other than to deny that Plaintiff was "entitled to the requested relief or any relief whatsoever."

App.60-61.  Plaintiff then filed two motions for summary judgment, pointing out that the failure to respond constituted an admission based on FED.R.CIV.P. 8(b)(6) and that the Secretary had admitted numerous aspects of Plaintiff's Causes of Action.  App.69-70; App.167-80.  Thereafter, the Secretary promptly amended his "Answer" to respond to the specific paragraphs mentioned but still denied that Plaintiff was "entitled to the requested relief or any relief whatsoever."  App.201-03.  These were "colorless", bad faith defenses.  Indeed, it was not until four days before oral argument in this case that the Secretary finally admitted the allegations of Para. 108 of the Complaint (and associated Request for Relief).

The Secretary's Opposition asserts that, in "context", these bad faith denials should be read to mean that "plaintiff was not entitled to all the relief requested." Opp. at 19.  This statement flies in the face of FED.R.CIV.P. 8(b)(4) ("must admit the part that is true and deny the rest").  As offered by the Secretary, these are just pleadings filed in a District Court containing bad faith denials (and bearing the signature of the Secretary's representative) that should be winked at.

Likewise, as discussed below, the Secretary's assertion that the District Court lacked the power to stop illegal conduct was in bad faith.  App.220; App.263-67. That assertion, adopted by the District Court, most directly led to the appeal in this case and the Secretary immediately recanted at oral argument.  Transcript at 36-40.

Indeed, the Secretary's repetition of the adjudged bath faith "accuracy"

7

position itself constitutes bad faith. Likewise, this Court may consider whether the Secretary's claim that Plaintiff "unreasonably protracted this litigation" (Opp. at 7, 9, 12-14) is bad faith, when this Court held that dismissal of Plaintiff's requests for relief by the District Court was improper and the case not moot until four days before oral argument. *Smith v. Becerra*, 44 F.4th 1238, 1248, n. 7 (10th Cir. 2022).

All the fees in this case, including the appellate fees, were caused by and traceable to the Secretary's bad faith conduct. Had the Secretary simply admitted the allegations of the Complaint, not opposed Plaintiff's summary judgment motions, and not falsely represented to the District Court that it was powerless to stop illegal conduct, then the fees would have been avoided.

"Bad faith" fees should be awarded.

## C.   Fees Should Be Awarded Under the Lack of "Substantial Justification" Provision

In the alternative to awarding fees under the "bad faith" provision of 28 U.S.C. § 2412(b), the Court may award fees under the lack of "substantial justification" provision of § 2412(d).   The Secretary does not dispute that Plaintiff is the "prevailing party", that Plaintiff is eligible for a fee award, that there are no "special circumstances" barring a fees award, or (apparently) that the Secretary lacked "substantial justification" – which is the Secretary's burden to show.

What the Secretary does contest is the "degree of success", contending that Plaintiff's appeal was "wholly unsuccessful." Opp. at 11. As explained by the

8

Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), "the result is what matters" and a fee award should not be reduced just because a party failed to prevail on every contention.

In the present case, at oral argument, Plaintiff summed up CMS-1738-R, issued four days before oral argument, as admitting everything Plaintiff had sought by way of admission and recission of CMS-1682-R.  In response, Judge Carson stated: "Yeah, congratulations."  Transcript at 5-6.  Likewise, this Court's issued decision states:

> Regardless, the Final Rule and CMS-1738-R address Smith's concerns and grant Smith the full relief she seeks.  The Final Rule recognizes that CGMs – irrespective of whether the complement a blood glucose test – are "primarily and customarily used to serve a medical purpose" and therefore meet the definition of durable medical equipment.  Similarly, CMS-1738-R adopts the Final Rule and expressly rescinds CMS-1682-R.

*Smith*, 44 F.4[th] at 1249 (cleaned-up).  Thus, rather than "wholly unsuccessful", Smith's appeal caused the very things Smith sought, both for herself and for tens of thousands of others.  Prayer for Relief, Para. 1-2; App.35.  Moreover, all the Causes of Action in this case were based on the same facts and were all related as was the Request for Relief.  Each of the Causes of Action and Prayers for Relief were different ways to obtain coverage of Smith's claims with varying degrees of breadth and certainty.  *Hensley*, 461 U.S. at 435 ("common core of facts" – "court should focus on the significance of the overall relief obtained by the plaintiff").

"The result is what matters." *Id.* at 433. In this case, the result is that Smith obtained coverage for her three claims, rescission of CMS-1682-R, a declaration that CGMs are "durable medical equipment" within 42 U.S.C. § 1395(x), and retroactive coverage of CGM claims with dates of service before March 1, 2022 (such as her July 1, 2021, claim).

Moreover, Smith obtained this not only for herself. She obtained this for tens of thousands of others. This is "exceptional success" warranting an "enhanced award." *Id*. Rather than an "enhanced award", Plaintiff merely seeks her market rate fees incurred in obtaining these results (reduced by 10% for billing judgment). Rather than a "payday" for Plaintiff's counsel (Opp. at 1), Smith sought and obtained relief for everyone suffering from diabetes and paying insurance premiums to Medicare for coverage withheld in bad faith/without "substantial justification."

As noted, Smith believes the Secretary's assertion that Smith "unreasonably protracted the litigation" is frivolous and itself an instance of bad faith. This is particularly so when this Court held that the District Court should not have dismissed Smith's requests for relief below and that this case was not moot until CMS-1738-R issued four days before appellate oral argument.

The Secretary did not carry his burden to show "substantial justification" before the Department, at the District Court, or in the activity that necessitated this appeal through four days before oral argument.

10

As an alternative to "bad faith" fees, Smith should be awarded lack of "substantial justification" fees.

**D.    Supplemental Billing Statement**

As set forth in Plaintiff's motion, under EAJA, a prevailing party may obtain compensation for all aspects of the litigation, including fees incurred in litigating the fee petition. *I.N.S., v. Jean*, 496 U.S. 154, 162, 163 n.10 (1990). Accordingly, Plaintiff submits a revised billing statement to reflect fees incurred in the fee briefing.

| Name | Hours | Rate | Total |
|------|-------|------|-------|
| James Pistorino | 261.3 | $575 | $150,247 |
| Richard Stanley | 121.0 | $600 | $72,600 |
| Phillip Lear | 8.4 | $480 | $4,032 |
| Andrew Gresik | 6.4 | $420 | $2,688 |
| Emily Jones | 2.1 | $380 | $798 |
| Total: | 398.7 | | $226,337 |

Again, Plaintiff has chosen to exercise billing judgment and reduce the requested fees by 10% across the board, resulting in a total fee request of $203,704.

**E.    Conclusion**

For the reasons set forth above, Plaintiff should be awarded "bad faith"

attorney's fees.   Alternatively, Plaintiff should be awarded lack of "substantial justification" attorney's fees.

Dated:  March 1, 2023            Respectfully submitted,

/s James C. Pistorino_____
Parrish Law Office
788 Washington Road
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

/s Phillip Lear_____
Phillip Wm. Lear
Lear & Lear PLLC
808 E South Temple Street
Salt Lake City, UT 84102
Telephone:  (801) 538-5000
Facsimile:       (801) 538-5001
Email:  phillip.lear@learlaw.com
Counsel for Linda P. Smith,
Plaintiff-Appellant

# <u>CERTIFICATE OF COMPLIANCE</u>

As required by Fed. R. App. P. 27(d)(2)(C), I certify that this brief is proportionally spaced and contains 2,589 words.  I relied on Microsoft Word to obtain the count.

Pursuant to Fed. R. App. P. 32(a)(5), this brief was prepared using Times New Roman, 14-point font.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

Dated:  March 1, 2023          Respectfully submitted,

/s James C. Pistorino
Parrish Law Office
788 Washington Road
Pittsburgh, PA  15228
Telephone:  (412) 561-6250
Email:  james@dparrishlaw.com

EXHIBIT A

ORAL ARGUMENTS



UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

* * * * * * * * * * * * * * * * * * * * * * * * * * *

LINDA P. SMITH,

      Plaintiff-Appellant,

-vs-                 No. 22-4012

XAVIER BECERRA, in his capacity
as Secretary of the United States
Department of Health and Social
Services,

      Defendant-Appellee.

* * * * * * * * * * * * * * * * * * * * * * * * * * *

TRANSCRIPT OF RECORDED ORAL ARGUMENTS

THE PANEL:  CHIEF JUSTICE TIMOTHY TYMKOVICH
JUDGE ALLISON EID
JUDGE JOEL CARSON

1

TRANSCRIPT OF ORAL ARGUMENTS, taken in the
above-entitled action, from an audio recording of
proceedings held on Tuesday, May 17, 2022.

* * * * *

A P P E A R A N C E S

JAMES C. PISTORINO,
    Attorney at Law,
    appearing on behalf of the
    plaintiff-appellant;

JOSHUA KOPPEL,
    Attorney at Law,
    appearing on behalf of the
    defendant-appellee.

* * * * *

2

THE CHIEF JUSTICE:  I'll call our last
case, 22-4012, Smith vs. Becerra.  And
Mr. Pistorino.

MR. PISTORINO:  Thank you, Your Honor.
James Pistorino on behalf of Mrs. Smith.  Nearly
five years after submitting -- after presenting
her claim for Medicare coverage, Ms. Smith
finally reached the district court, the first
tribunal in the appeal process with the power to
review and invalidate 1682-R.  The district
court erred as a matter of law when it allowed
the Secretary to avoid any judicial review when
it concluded that the Secretary's agreement to
pay her claims afforded Ms. Smith complete
relief and left the court with no power to
address the rest of Ms. Smith's causes of
action, including her request for injunctive
relief against 1682-R.

The district court's two-sentence
docket entry entering judgment remanding solely
for payment of Ms. Smith's claims but failing to
make any findings or even consider the
nonmonetary relief sought ignores that
Ms. Smith's other causes of action were not
alternative theories for monetary recovery.

3

Instead they sought separate nonmonetary relief,
including an injunction.

JUDGE CARSON:  Do you interpret the
May 13th revised ruling as basically granting
you a successful outcome on all your other
pending claims?

MR. PISTORINO:  When you say the
May 13th revised ruling, you mean -- are you
referring to the document that was submitted on
Friday at 4:15?

JUDGE CARSON:  Yes.

MR. PISTORINO:  So the first answer is
no.  I mean, honestly, again Ms. Smith sought --

JUDGE CARSON:  You don't interpret
that as giving you a win across the board --

MR. PISTORINO:  No.

JUDGE CARSON:  -- on pending claims?
Why not?

MR. PISTORINO:  Again first off, again
there's no injunction against the enforcement of
1682, number one.  There's no determination that
the Secretary's process of issuing rulings
without complying with notice and comment is in
violation of the law.  Throughout this entire
case and throughout the entire really five-year

4

period this matter has been litigated, the Secretary contends that they have the power to issue rulings in violation of 1395h, the notice and comment provision specific to the Medicare Act, and as the Secretary said below here and somewhat in the papers to this Court, the Secretary contends the district courts have no power to stop the agency from enacting illegally in that way.

JUDGE CARSON: So you're not going to declare victory?

MR. PISTORINO: No. No, I wish -- frankly, I wish I could.

JUDGE CARSON: Honestly, we need to determine whether this is still justiciable under the mootness doctrine. What's your kind of best response that it's not moot?

MR. PISTORINO: Right. So again obviously we got the same papers you guys got on Friday afternoon. If I could just maybe quickly two -- a few points on that. I actually thought it was quite interesting in that essentially if you were to read that document as sort of across the board, they admitted what I've been saying the entire time, that CGMs are in fact blood

5

glucose monitors as that term is used in the statutes.

JUDGE CARSON: Yeah, congratulations.

MR. PISTORINO: Thank you, Your Honor. So across the board admitting, for example, that the technical direction letter you saw mentioned here, that that also did not stop the conduct. Again you saw Judge Mendoza in the Olson case out of Spokane say again that didn't stop it. So through Friday, I'll say in our view, the submission they made admitted that everything they'd said before was wrong and everything we said was right and so the case as it stood before the district court certainly was not moot and you still had the power, now coming to the effect potentially Friday's letter.

So generally we would just respond sort of three main points. First, I know we turned in a letter, I apologize for it, late Sunday night citing the W. T. Grant case from the Supreme Court going down the voluntary cessation points and, of course, pointing out that the mere ceasing of the illegal conduct does not deprive the Court of jurisdiction to

6

issue an injunction is our number one, because, of course, if they just stopped it, it would allow them to continue the illegal conduct on a going forward basis just as soon as this case was resolved.

Next we -- let me just make sure I -- so I think another important aspect that we could get into, of course, is as we've been saying all along, basically in our view, you just have bad faith conduct from the get-go on the 27 -- 1682-R throughout the whole process. So one aspect here is whether or not at the end of the day, and I think as Judge Mendoza said, whether or not they can be trusted with whatever they say now, and I think as Judge Mendoza said, again I know that we cited to, that he had significant concerns that whatever they say could be trusted, and that's one reason there, for example, he said no, it's not moot based on the TDL.

JUDGE CARSON: Well, let's just talk about this for just a second, and I don't mean to interrupt. But as far as the claims that you have that are currently ripe for a decision, you win. They agreed to that. You're not worried

7

that they're going to go back after they confessed error and it was remanded for you to get your damages, that they're going to to those claims try to jerk the rug out from under you and say no, we're not going to pay them, we don't -- we've changed our mind, we're not confessing here, right?

MR. PISTORINO: I agree with you in the sense I'm not concerned that Ms. Smith will not be paid for the three claims that are in this case. But I am concerned, number one, that there's been no finding that her CGM is durable medical equipment. Because there's no -- sadly, there's no cure for type 1 diabetes that she suffers from, she will have continued claims going forward. And one aspect --

JUDGE CARSON: Right. So let me stop you there, so -- and then you have other claims that are pending that have not been ruled on by a district court.

MR. PISTORINO: Correct.

JUDGE CARSON: And you also want as part of your relief with respect to your appeal from these three denials, you want relief as to those that you have that are pending?

8

1    MR. PISTORINO:  No, that's not
2    correct.
3        JUDGE CARSON:  Well, that's what your
4    injunction would do, isn't it?  If you enjoin
5    them from enforcing it, then it basically gives
6    you a win on your other pending claims before
7    the district court?  Because if we're not doing
8    that, I mean if you win on everything that's
9    properly up here, what do you have?  What are we
10   enjoining?  You've already won.
11       MR. PISTORINO:  So I just want to make
12   clear because I know there's many different
13   claims at issue.  So we have the three claims at
14   issue in this case.
15       JUDGE CARSON:  Right.
16       MR. PISTORINO:  Three claims at issue
17   in this case, let's focus on those for a
18   moment.
19       JUDGE CARSON:  Right, and that's my
20   point.  I mean there's nobody in this room, is
21   there, that thinks that those claims are still
22   in play?  You won on those.
23       MR. PISTORINO:  I think with regard to
24   payment of those three claims, we won.  But what
25   we also asked for again was the nonmonetary

9

1    relief, right, and there's different components
2    of that.
3        JUDGE CARSON:  Okay.  But let me ask
4    you, so your nonmonetary relief as it goes to
5    those three claims, I mean what is it?  I mean
6    what are you getting with respect to those three
7    claims other than payment?
8        MR. PISTORINO:  You're getting --
9        JUDGE CARSON:  You submitted them for
10   payment.  They denied it.  You appealed.  You
11   won and now -- but you also won an injunction.
12   I just don't get with those three claims what's
13   left.
14       MR. PISTORINO:  Right.  So you keep on
15   saying we won, and I agree that we won in terms
16   of the payment, but again I have multiple causes
17   of action with different forms of relief.  All
18   the other ones are nonmonetary.
19       JUDGE CARSON:  Okay.  So tell me
20   about -- tell me how the rest of them still live
21   after you get paid.
22       MR. PISTORINO:  Right.  So one thing
23   we asked for, for example, just the most simple
24   one, I might say, is a declaration that
25   Ms. Smith's CGM qualifies as durable medical

10

1    equipment under the statute, right.  A
2    declaration of that will have a real world
3    effect in that in future claims by Ms. Smith,
4    that would be determined and estop the Secretary
5    from contending otherwise.  We also asked -- we
6    have a cause of action saying that with regard
7    to 1682, the Secretary did not comply with
8    Congress' statute in 1395hh, as signed by the
9    President, and subjected to notice and comment.
10       And what we asked for was a
11   determination that that particular conduct,
12   issuing rulings without complying with notice
13   and comment, is violative of the statute, and I
14   wanted an injunction estopping that.  And what
15   the Secretary has contended all along is, first,
16   we as the Secretary, I have the power to violate
17   the laws of Congress, I can act illegally,
18   that's what they argued below, if you look at
19   the appendix, their motion for summary judgment.
20   Assuming I did violate the statute, Court, you
21   have no power to control me.  You cannot stop me
22   from acting illegally.
23       So I think that's going to come right
24   back to your question about what was the effect
25   of yesterday -- I'm sorry, Friday, what's the

11

1    effect of Friday.  It just comes back.  Have
2    they ever disclaimed that position?  No.  That's
3    the position they maintain.  And again coming
4    back to what they -- or their goal, it appears
5    to be, is to avoid judicial review of that
6    solely for the purpose of preserving that claim.
7        So whatever they did on Friday, right,
8    again I know what point I have here is that we
9    keep on calling them rulings, right, 1682-R, the
10   ruling.  It's just a letter written by somebody
11   at the department, right.  The January 17th
12   letter is just a letter written by a guy,
13   Patrick McConway (ph.), just a letter written by
14   a guy, right, totally illegal, again as it's
15   been found adjudged in the Olson case, bad
16   faith, just flat-out bad faith.  And on the
17   basis of that, right, again, for five years,
18   tens of thousands of claims have been denied,
19   hundreds of thousands actually, and tens of
20   thousands of people have been injured.
21       And so if you just look at the conduct
22   more recently, and candidly, I'm counsel in all
23   of these cases --
24       JUDGE CARSON:  Right.
25       MR. PISTORINO:  Every single case is

12

me. Every single step that they have taken has
been an effort to avoid judicial review. So
when they get a guy, for example, Mr. Olson and
then I win, if they could have, they would have
paid all his claims to make sure that he never
came back while they continued the bad faith
conduct, and that's exactly what Judge Mendoza
pointed to.

JUDGE CARSON: But your theory is that
they're going to rescind the rescission and --
in other words, they've thrown in the towel
through this letter ruling and that your concern
is that there is -- as soon as we turn our
backs, they're going to rescind that letter
ruling and start denying claims again. I mean
that's -- is that the path --

MR. PISTORINO: So maybe I'll look at
it in three ways. First, first, the whole
purpose of these efforts by them is to preserve
their ability to do exactly that. So your
starting point would be -- again just maybe more
globally, normally you just look at it and say
from the voluntary cessation perspective at just
a high level, when someone tells me they're not
going to do it, what's the reason I'm going to

13

trust them, right? Why would I trust them, I
think that was a phrase used, whether or not
their change of behavior seems genuine, right,
and what my point is, across the board here,
it's not that it seems genuine.

It's the opposite. You know it was
bad faith all the way through. That got you to
Friday. Now you go to the voluntary cessation
principles under which, of course, the Secretary
bears -- I think the phrases are typically the
formidable burden, the heavy burden, a stringent
standard. The Secretary would bear the burden
of establishing all of that. And again just
coming back, for example, to this Court's case
in College America, another case, two main
prongs, first the voluntary --

JUDGE CARSON: That doesn't sound like
something we can do on appeal. That sounds like
it needs to be argued somewhere else either in
the administrative process or maybe back at the
district court.

MR. PISTORINO: And at the end of the
day, whatever is settled, my point is just it
would be the Secretary's burden to establish it
and again if you look --

14

JUDGE CARSON: And he hasn't even
tried to do it at this point, right?

MR. PISTORINO: Right, right. They
haven't tried --

JUDGE CARSON: We'll find out in a few
minutes, but since Friday they haven't tried
to.

MR. PISTORINO: They haven't tried to.
And again what we would say is again from the
voluntary cessation, you can trust me kind of
things, what you're looking for are indications,
bases under which to credit their statements.
So normally it's something formal like a
legislature takes action and you know that once
the legislature takes action, it's going to be
really hard to change that, and that's my whole
point here.

These "rulings," they're just letters.
There's no process. A guy signed a letter in
2017. Tens of thousands of people are injured.
On Friday, I guess Ms. Brooks decided she --
they didn't want to show up here like that. She
just signs the letter. If this Court were to
dismiss the case, or any court, there's just
absolutely no reason the next day, there, you sign the

15

letter and it's not like you say, well, I know
that won't happen because they're reasonable.
No, you know exactly the opposite, right. So --
and again the other point, again I just had some
notes --

JUDGE CARSON: Let me joust with you
for a minute about a couple things because what
concerns me is there's lots of things up in the
air here and a lot of them seem really
speculative to me. A lot of the things you say
seem to be like concerning what might happen to
other people. So I want to make sure we're
focused on your client and what you're doing.
Because you're not taking the position that you
should get an injunction to protect other
people, are you? Your position is that you want
to go get an injunction so they can't do this to
your client going forward, is that right?

MR. PISTORINO: I think actually the
technical answer would be both.

JUDGE CARSON: Okay.

MR. PISTORINO: Because again under
this, for example, National Mining -- I know I
cited cases from this Court, when you're
litigating, exactly as we are here, the legality

16

1  of the conduct, compliance with the statute,
2  it's not just the statute for in this case
3  Ms. Smith.  It's for everybody.  So our goal
4  obviously just from a high level --
5          JUDGE CARSON:  Right.
6          MR. PISTORINO:  -- this case is about
7  $5,000.  No one's going to litigate the case for
8  $5,000 solely.  It's very important to
9  Ms. Smith.  There are much bigger principles
10 that are driving it here.
11         JUDGE CARSON:  Got it.  So I'm just
12 thinking about the district court's remand here.
13 I mean obviously I guess this two-line docket
14 entry was followed up with a judgment.
15         MR. PISTORINO:  No, the two-line was
16 the judgment.
17         JUDGE CARSON:  It was the judgment?
18         MR. PISTORINO:  Yes.
19         JUDGE CARSON:  So the court entered
20 judgment --
21         MR. PISTORINO:  With the two lines.
22         JUDGE CARSON:  -- in favor of you.
23 And so because the government, basically they
24 came in and confessed error?
25         MR. PISTORINO:  The court entered --
                                              17

1  the Secretary said in so many words --
2          JUDGE CARSON:  Right.
3          MR. PISTORINO:  -- we'll pay your
4  three claims, we'll give you that money, $5,000,
5  as long as the court does not address the
6  illegality or any of the other stuff you say,
7  that settlement offer rejected.  The court went
8  with that, said, okay, I'm going to adopt the
9  rejected settlement offer.  You say he entered
10 judgment for me.
11         He entered judgment saying I want them
12 to pay those three claims and everything else
13 I'm silent on.  And I'm sorry, I'm staying over
14 my time.
15         THE CHIEF JUSTICE:  We'll continue as
16 long as Judge Carson jousts --
17         JUDGE CARSON:  And I won't joust too
18 long, but I'm just -- I mean it concerns me
19 because now what we're talking about is what
20 they might go doing going forward.  And in the face
21 of -- which sounds speculative to me without
22 further denials.  It concerns me that maybe this
23 isn't ripe for a decision because the rest of
24 what you want is based on what might happen in
25 the future.
                                              18

1          Now, I get what you're saying, look,
2  they're jerking the rug out from under everybody
3  before, they're going to do it again, I don't
4  want to just be right here again arguing the
5  same thing to you and they give us a letter the
6  day before saying they're not going to do it
7  anymore.  I get that, but that's sort of what --
8  I'm just struggling with the idea that maybe
9  we're dealing with a case where what you want is
10 an injunction to prevent what might happen in
11 the future, not that, you know, there's any
12 imminent threat that is going to happen.
13         MR. PISTORINO:  So if I can -- and
14 again I'm very conscious of my time.  And very
15 quickly to try to address it, so first --
16 actually I was just sitting here thinking, at a
17 high level manner, it's so ridiculous, it would
18 be funny except for the tens of thousands of
19 people that have been injured, right, except for
20 the debts, okay, so number one --
21         JUDGE CARSON:  Right.
22         MR. PISTORINO:  I want to come your
23 point about speculative.  I think that's a fair
24 thing, although again I know the second prong of
25 voluntary cessation is complete eradication of
                                              19

1  the effect.  And of course, because they've been
2  denying these claims for five years, tens of
3  thousands of people have been dissuaded from
4  even submitting the claims.
5          JUDGE CARSON:  Right.
6          MR. PISTORINO:  So again just from the
7  thing that got submitted at 4:15 on Friday, how
8  would anybody know, right?  I mean was there
9  some big publicity campaign that they sent
10 emails -- sent letters to everybody?  No.  From
11 the public's perspective, it's another secret
12 thing so they wouldn't know.  So the second
13 prong they could never show.
14         In terms of speculative, again their
15 whole thing is have they stopped, have they
16 forsworn the claim so they can issue rulings
17 without complying with notice and comment, 1395?
18 No, they have not.  They maintain that they
19 still can and they do you all are completely
20 powerless no matter how many people they kill.
21 So is it speculative?  Not really when that's
22 the power they claim, right.  That's what
23 they're claiming as of today.
24         So, you know, again you talk about
25 gamesmanship.  Hey, something came in at 4:15,
                                              20

ORAL ARGUMENTS

1  you know, two business days before their oral
2  argument and the appeal and you just see the
3  efforts of avoiding judicial review, so time and
4  time again. The TDL, that came about because I
5  had a motion for preliminary injunction pending
6  in the Olson case, and I'd already had it
7  pending. They thought they could knock it off
8  with that -- this because I had already argued
9  against the TDL, and it was obviously clearly
10  improper. I appreciate your time. Thank you.
11       THE CHIEF JUSTICE: Are you done?
12       JUDGE CARSON: I'm finished.
13       THE CHIEF JUSTICE: Counsel, you may
14  be seated then. Okay, let's hear from
15  Mr. Koppel for the Department of Human Services.
16       MR. KOPPEL: Good afternoon, Your
17  Honors. May it please the Court, I'm
18  Josh Koppel on behalf of the United States.
19       Plaintiffs sought judicial review of
20  Medicare's denial of three claims for payment.
21  The Secretary confessed error and the district
22  court properly entered judgment for plaintiff,
23  ordering the Secretary to pay the claims.
24       JUDGE CARSON: Okay. So tell me this.
25  What's the effect of that confession? Was it as

21

1  represented to me by your opposing counsel was
2  it's these three claims, we'll pay them, but we
3  want nothing to do with any other issue that's
4  on the table?
5       MR. KOPPEL: The effect of the
6  confession in the district court was that these
7  three claims should have been paid and the
8  Secretary will pay them. Now, the Secretary
9  went beyond that and explained that the reason
10  those claims should have covered in the first
11  instance is that plaintiff obtained supplies for
12  an insulin pump that could also perform the
13  functions of a continuous glucose monitor, and
14  insulin pumps have been considered durable
15  medical equipment covered by Medicare since the
16  mid-1990s.
17       The Medicare Appeals Council, they
18  failed to consider that and they got this wrong.
19  So all of Ms. Smith's future claims related to
20  her insulin pump should be paid.
21       JUDGE CARSON: All right. So --
22       MR. KOPPEL: Now even if she didn't --
23       JUDGE CARSON: So is it the
24  government's position that they would be -- I
25  mean through some sort of collateral estoppel or

22

1  issue preclusion from denying this claim going
2  forward in the future as to Smith?
3       MR. KOPPEL: I don't know that there
4  would necessarily be collateral estoppel based
5  on that confession of error. That would be, you
6  know, certainly for a future court to decide.
7  But the Secretary has in the meantime taken
8  additional action to ensure that these claims
9  of plaintiff and of third parties will not be
10  denied.
11       The Secretary in November 2020 issued
12  a proposed rule and in December 2021 issued the
13  final rule making clear that adjunctive and
14  therapeutic continuous glucose monitors and
15  insulin pumps that perform the functions of a
16  CGM are durable medical equipment that are to be
17  covered by Medicare. The Secretary -- I'm
18  sorry, the CMS then issued --
19       JUDGE CARSON: Prospectively.
20       MR. KOPPEL: That was prospectively.
21  And then CMS took action to apply that rule
22  retroactively as well, first with the technical
23  direction letter. That was the quickest way CMS
24  could address the issue, although it left gaps,
25  for example, Medicare Part C. And so then CMS

23

1  worked toward this ruling that came out last
2  week, and I want to be clear, this is not a
3  letter signed by some guy. This is a ruling
4  signed by the administrator of the Centers for
5  Medicare and Medicaid Services.
6       This is a formal statement of
7  coverage. And so last Friday CMS issued this
8  CMS ruling, formally rescinding the 2017 CMS
9  ruling, and making clear that for pending and
10  future claims, regardless of the date of
11  service, all continuous glucose monitors and
12  insulin pumps that perform the functions of a
13  continuous glucose monitor are durable medical
14  equipment and will be covered by Medicare. That
15  moots this case.
16       JUDGE CARSON: Can that be rescinded
17  tomorrow?
18       MR. KOPPEL: CMS administrative
19  rulings are not that easily rescinded, I'll say
20  that.
21       JUDGE CARSON: They could, though --
22       MR. KOPPEL: In theory, it could be
23  rescinded, but this Court -- and with regards to
24  voluntary cessation, the exception to mootness,
25  we haven't had a chance to really brief this

24

1    because the issue just arose.  But this Court
2    has repeatedly held that the withdrawal or
3    alteration of administrative policies can moot
4    an attack on those policies and that the mere
5    possibility that an agency might rescind
6    amendments to its actions does not align moot
7    controversy.
8            And I encourage the Court to take a
9    look at Denver Bible Church vs. Polis which was
10   issued this year, Prison Legal News vs. Federal
11   Bureau of Prisons in 2019 and Rio Grande Silvery
12   Minnow vs. Bureau of Reclamation in 2010.  All
13   of those cases involved the rescission or
14   alteration of an administrative policy, and this
15   Court held that that rescission or alteration
16   mooted the attack on the policy.
17           The government is accorded a
18   presumption of good faith and unless there is
19   some evidence that the government is going to
20   rescind the rescission, the Court has held that
21   the rescission or alteration moots the claim.
22           JUDGE CARSON:  There is a history here
23   of steadfast opposition to their statutory
24   theory.  We can't ignore that, can we?
25           MR. KOPPEL:  Well, to -- I want to

25

1    answer that with -- in two ways.  First, I don't
2    think that there is a history of bad faith.
3    Even after some district courts have ruled that
4    continuous glucose monitors are durable medical
5    equipment, CMS did continue to apply the 2017
6    CMS ruling, as it was entitled to do, with
7    regard to other Medicare beneficiaries or other
8    claims.
9            Of course, if there had been a Court
10   of Appeals ruling on that issue, CMS would have
11   had a different policy within that circuit.  If
12   there had been a Supreme Court ruling, of course
13   that would have been definitive.  But CMS was
14   entitled to continue to apply that ruling and
15   continue to test the ruling in court.
16           In November 2020 CMS reconsidered the
17   issue, you know, in part due to, of course,
18   these repeated holdings by district courts.  And
19   the continuous stream of actions since then has
20   been in one direction, so issuing the proposed
21   rule, issuing the final rule, issuing the TDL,
22   issuing this new CMS ruling.
23           Every action CMS has taken has
24   actually been to move toward covering for all
25   dates of service these continuous glucose

26

1    monitors as durable medical equipment.  So
2    there's no indication that CMS is going to pull
3    the rug out.  Second, even aside from mootness,
4    so even if the voluntary cessation exception
5    does apply, there's at least a question -- or at
6    least two questions.  First, one of rightness.
7    There's no -- we don't know for sure what CMS
8    will do with any particular claim until CMS has
9    actually done that.  And so a judicial ruling on
10   a future claim is not yet right.
11           And second, there's a jurisdictional
12   statutory authority issue, which is that a court
13   doesn't have statutory authority, it doesn't
14   have jurisdiction to consider a Medicare claim
15   until it has been presented to the agency.
16   There's no claim, other than the three here,
17   that have already been paid and judgment has
18   been entered and they've already been paid by
19   CMS.  No other claim has yet been presented to
20   the agency and certainly has not yet reached the
21   final agency decision.
22           And so the district court simply
23   doesn't have jurisdiction to consider those
24   future claims.
25           JUDGE CARSON:  Aren't all those future

27

1    claims going to be paid under the May 13th
2    ruling?
3            MR. KOPPEL:  They absolutely should
4    be, and that is just an additional reason that
5    there's no -- there's no cause for the district
6    court to issue a decision on the validity of the
7    2017 CMS ruling.  That would be an advisory
8    opinion.
9            And you know, plaintiff has -- shifts
10   tactics here.  Instead of simply seeking a
11   decision on the 2017 CMS ruling, which would be
12   an advisory opinion, now plaintiff seeks an
13   advisory opinion on whether CMS rulings
14   generally can be issued without notice and
15   comment.  That's certainly an advisory opinion.
16   It depends --
17           JUDGE CARSON:  The plaintiff -- are
18   you taking the position that claimants still
19   need to appeal their claims up to the MAC for
20   all these pending cases?
21           MR. KOPPEL:  If there is a future
22   claim for coverage of a continuous glucose
23   monitor that is denied, that does need to be
24   appealed to the Medicare Appeals Council.  After
25   that, CMS issues a final -- or HHS issues a

28

1    final agency decision.  Only after that does the
2    statute permit the district court to exercise
3    jurisdiction and provide judicial review.
4         JUDGE CARSON:  I guess my question is
5    different then.  Are the administrators, the
6    ALJs and the MAC still going to be relying on
7    1682-R?
8         MR. KOPPEL:  No.
9         JUDGE CARSON:  -- or is that gone?
10        MR. KOPPEL:  That is gone.  The 1682-R
11   has been rescinded.
12        JUDGE CARSON:  So a claim that's
13   pending before the administrator, the ALJ or the
14   MAC basically should be adjudicated immediately
15   in favor of the claimant?
16        MR. KOPPEL:  Yes.
17        JUDGE CARSON:  Are there any
18   exceptions to that?  Will this be all glucose
19   monitoring claimants or do -- I might have heard
20   you say that the monitor needed to be connected
21   to another durable medical device.  Did I
22   misunderstand that?
23        MR. KOPPEL:  No, the continuous
24   glucose monitor itself is the durable medical
25   equipment.  So there are --

29

1         JUDGE CARSON:  Standing alone, those
2    get covered now under this new policy?
3         MR. KOPPEL:  Yes.  Of course, provided
4    that the beneficiary actually has diabetes, you
5    know, and that it's diagnosed and they have to
6    be to using a dedicated continuous glucose
7    monitor, not a phone, like an iPhone, because
8    that has a -- primary purpose of that is not
9    medical.  But the mine run of cases, generally
10   speaking, what we're talking about here,
11   continuous glucose monitors starting immediately
12   are considered durable medical equipment.  Those
13   claims will be paid.  That's regardless of the
14   date service.  And even if a claim has been --
15   has already been denied, if that claim is still
16   pending, you know, it's on appeal to an ALJ, the
17   latest CMS ruling issued by the administrator
18   makes clear that that claim is to be reopened
19   and paid.
20        JUDGE CARSON:  And I guess this lawyer
21   would know his way around the agency process,
22   but I also have a question on the voluntary
23   cessation.  Why doesn't that still need to be
24   resolved somehow, either by this panel or by a
25   district court somewhere?  I don't know that

30

1    we're in a position to really evaluate that
2    claim yet.
3         MR. KOPPEL:  Yeah.  So because
4    voluntary cessation goes to mootness and
5    mootness is a jurisdictional issue, I believe
6    that this Court has an independent duty to make
7    a decision on the mootness question itself.  You
8    know, some of those cases that I cited, Denver
9    Bible Church, Prison Legal News, Rio Grande, at
10   least some of those I know that recission and
11   alteration of the administrative policy under
12   attack was issued while the case was on appeal
13   and this Court went ahead and made the decision
14   on mootness itself.
15        And you know, it is true that the
16   court has stated generally the party arguing in
17   favor of mootness bears the burden to show that
18   the challenged action won't be repeated, but the
19   court has also made clear in those cases that
20   where the challenged action was in an
21   administrative policy that has been rescinded or
22   altered, the burden is not quite so burdensome.
23   And in fact, the burden may even shift to the
24   plaintiff in those cases to show that there is
25   some cause to think that the government will

31

1    pull the rug out.
2         And certainly, you know, there's no
3    cause to think that these are formal rulings,
4    and keep in mind that the CMS ruling applies to
5    a closed set of cases because for dates of
6    service February 28th, 2022 going forward, those
7    cases, those claims are governed by the 2021
8    final ruling, which went through notice and
9    comment, you know, a very formal rule-making
10   process.  That really cannot easily be reversed
11   absent another notice and comment process.
12        So the CMS ruling applies to a closed
13   set of cases that every day is diminishing, and
14   there is no indication that the CMS
15   administrator for any reason would want to all
16   of a sudden switch policy with regard to that
17   closed and diminishing set of cases.  And of
18   course, you know, the CMS administrator cannot
19   reverse the 2021 final rule, you know, so
20   easily.  So the idea that the CMS ruling will be
21   reversed again as soon as this Court issues its
22   decision is quite implausible.
23        JUDGE CARSON:  Let me ask you a
24   question.  Are you familiar with the plaintiffs'
25   district court actions that are pending?

32

ORAL ARGUMENTS

1    MR. KOPPEL:  Some of them.  I'm not as
2  familiar with the ones —
3    JUDGE CARSON:  Okay.
4    MR. KOPPEL:  With all of them.
5    JUDGE CARSON:  Do you know as — why
6  hasn't the government confessed error in those
7  cases?  Why didn't — when they determined that
8  the three claims in this case should be paid
9  because the interpretation was wrong, why didn't
10  they confess error in those cases too?
11    MR. KOPPEL:  I'm not — I'm sorry, I
12  can't speak to those.
13    JUDGE CARSON:  Okay.
14    MR. KOPPEL:  I'm not familiar enough
15  with them.
16    JUDGE CARSON:  Let me tell you why I'm
17  asking you.
18    MR. KOPPEL:  Yeah.
19    JUDGE CARSON:  Because doesn't the
20  fact that they would confess error here and not
21  confess error in those cases suggest that it was
22  gamesmanship to confess error here and get this
23  case off the books?
24    MR. KOPPEL:  So, you know, one reason
25  is that the Secretary confessed error here

33

1  immediately because plaintiff was using not just
2  a stand-alone continuous glucose monitor but an
3  insulin pump that also performs the functions of
4  a continuous glucose monitor, and that's really
5  a different category.  Insulin pumps have been
6  durable medical equipment again since the
7  mid-1990s.  So that's why the Secretary was able
8  to confess error here, you know, so quickly.
9    I do expect that with this new CMS
10  ruling, you know, the position may change in
11  those other courts —
12    JUDGE CARSON:  I don't understand why
13  that's different from counsel's other case.  As
14  I understand it, it's the same plaintiff, same
15  equipment, different payments.  These just
16  happen to have had a decision and could come up
17  on appeal.  Those are still pending with no
18  ruling.  And if they're the same and you confess
19  as to three and you don't confess as to the
20  others, I mean doesn't that suggest you're
21  trying to evade review?
22    MR. KOPPEL:  So it's certainly not the
23  same plaintiff, I want to be clear about that.
24  Smith — this is Smith's only action.
25    JUDGE CARSON:  Okay.

34

1    MR. KOPPEL:  The other claims are
2  other plaintiffs.  Those other cases also
3  involve ancillary issues.  So, for example,
4  there's a case in the District of Columbia where
5  plaintiffs were trying to seek payment of claims
6  that had not been appealed and where the time to
7  appeal had run.  And so there are questions of
8  whether the district court had jurisdiction over
9  those.
10    I believe that in Olson, some of the
11  issues relate to not whether the claims should
12  have been paid but whether — what the
13  appropriate relief is, whether injunctive relief
14  should be issued, attorneys' fees, that kind of
15  thing.  So I don't — I don't want to speak to
16  those other cases.  I'm not familiar enough with
17  them to speak to them, but I'm not sure it's
18  true that the Secretary continues to not pay —
19  you know, continues to take the position that
20  continuous glucose monitors are not durable
21  medical equipment.
22    JUDGE CARSON:  Okay.
23    MR. KOPPEL:  And certainly this latest
24  CMS ruling I believe should make clear that, you
25  know, continuous glucose monitors are durable

35

1  medical equipment going forward, you know, from
2  here on, regardless of the date of service, even
3  for past dates of service.
4    JUDGE CARSON:  Before you sit down, I
5  had a question on the equitable relief.  It
6  seems to me that the cases that I've reviewed
7  strongly suggest that 405(g) is a permissible
8  vehicle for some forms of equitable and
9  declaratory relief, and I'm not sure you really
10  denied that or opposed that in your papers.  But
11  do you agree that a district court could order
12  in an appropriate case some form of equitable
13  relief, an injunction or a declaratory judgment?
14    MR. KOPPEL:  Califano vs. Yamasaki
15  holds that some form of equitable relief is
16  available.  I'm not sure — and we took the
17  position, although we continue to take the
18  position that setting aside or enjoining a rule
19  to apply — such that the injunction would
20  require the Secretary to pay future claims that
21  haven't yet been presented —
22    JUDGE CARSON:  Well, that's a merits
23  question.
24    MR. KOPPEL:  Right.
25    JUDGE CARSON:  I'm talking about the

36

1 broader judicial power question.
2     MR. KOPPEL:  There is some set of
3 equitable remedies that are available.  You
4 know, Califano vs. Yamasaki addressed equitable
5 powers to ensure the pending -- that the
6 pending -- the status quo remains pending
7 resolution of litigation or to protect the
8 interests of the absent class members.  So
9 certainly those kinds of equitable powers are
10 available.  You know, here --
11     JUDGE CARSON:  I think that's a recent
12 DC circuit case, Parzakansky (ph.), that also
13 suggests equitable relief was proper in some
14 circumstances.
15     MR. KOPPEL:  Exactly.  But as that
16 case makes clear, and I think that's a very --
17 quite analogous case.  Just because Califano
18 held that equitable remedies are available, it
19 doesn't mean -- it didn't determine when they're
20 available.  And where the plaintiff, and this is
21 what Parzakansky held, where the plaintiff seeks
22 equitable relief to decide future claims that
23 haven't been yet presented to the agency and
24 haven't yet reached a final agency decision,
25 those equitable remedies are not available.

37

1     JUDGE CARSON:  But why wouldn't here a
2 declaration that the Secretary's interpretation
3 of the statute is wrong, why wouldn't that --
4 that just seems like a pretty garden variety
5 remedy that, you know, actually to the extent it
6 applies to, you know, thousands of other
7 claimants would be a good thing because it would
8 resolve the legal authority of the agency.  You
9 know, maybe the district court issues a
10 declaratory judgment that's appealed to a
11 circuit, you know, or whatever.  But that just
12 seems like kind of something that happens every
13 day in the district courts.
14     MR. KOPPEL:  So in the appropriate
15 case, a court can rule on the validity of a CMS
16 ruling.  So I mean there's a number of reasons
17 that this district court couldn't and shouldn't
18 going forward, you know, mootness, the 2017 CMS
19 ruling has been rescinded, the plaintiff's claim
20 wasn't properly decided under the 2017 CMS
21 ruling because that ruling didn't apply to
22 insulin pumps.  The appeals council erred in
23 applying the 2017 CMS ruling to plaintiff's
24 claim.
25     But in a case where, you know, HHS

38

1 applies a CMS ruling to a claim properly and the
2 Secretary confess -- you know, contests or
3 continues to contest the claim before the
4 district court, the district court can consider
5 the validity of the CMS ruling and if it's
6 invalid, that would be a basis to reverse and
7 remand.
8     The question that the district court
9 didn't get to, and I don't think this Court
10 needs to, is whether the district court can then
11 issue an injunction saying this CMS ruling also
12 shouldn't be applied in future cases because
13 that decides claims that haven't yet been
14 presented to the agency.
15     But in terms of deciding for purposes
16 of a present live claim for Medicare coverage
17 whether a CMS ruling is properly issued,
18 absolutely the circuit court can do that, and
19 that allows the Court of Appeals to rule on the
20 issue, potentially the Supreme Court, and we
21 certainly don't take issue with that.
22     In this case, however, not only is the
23 issue moot, but for all the reasons we've
24 explained, even if the issue were not moot, the
25 decision of the district court should be

39

1 affirmed.  Thank you.
2     THE CHIEF JUSTICE:  Counsel, we
3 understand both your arguments.  Thank you very
4 much for clarifying the situation for us.
5 You're excused.  Your case shall be submitted,
6 and the Court will be in recess until 9 o'clock
7 tomorrow morning, I believe.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

40

```
 1        UNITED STATE COURT OF APPEALS
 2         FOR THE TENTH CIRCUIT
 3   * * * * * * * * * * * * * * * * * * * *
 4   LINDA P. SMITH
 5         Plaintiff-Appellant
 6      -vs-                    Case 22-4012
 7   XAVIER BECERRA, in his capacity as
     Secretary of the United States
 8   Department of Health and Human Services,
 9         Defendant-Appellee.
10   * * * * * * * * * * * * * * * * * * * *
11
12         C E R T I F I C A T E
13
14      I, LISA A. CREERON, do hereby certify I took in
15   shorthand the proceedings held in the above-entitled
16   matter on the 17th day of May, 2022, and that the
17   attached is a true and correct transcription of the
18   proceedings so taken, to the best of my ability.
19      In witness whereof, I have hereunto set my hand
20   and affixed my seal of office this 21st day of May, 2022.
21
22         Notary Public, State of Wisconsin
           My Commission Expires: 1/30/2025
23
24
25
                                            41
```

27:13, 33:8.
available 36:16,
37:3, 37:10, 37:18,
37:20, 37:25.
avoid 3:12, 12:5.
avoiding 2:3.
.
<B>.
back 8:1, 11:24,
12:1, 12:4, 13:6,
14:14, 14:20.
backs 13:14.
bad 7:10, 12:15,
12:16, 13:6, 14:7,
26:2.
based 7:19, 18:24,
23:4.
bases 15:12.
basically 4:4, 7:9,
9:5, 17:23,
29:14.
basis 7:4, 12:17,
39:6.
bear 14:12.
bears 14:10,
31:17.
BECERRA 1:13, 3:2,
41:13.
behalf 2:9, 2:14, 3:5,
21:18.
behavior 14:3.
below 3:15, 35:10,
35:24, 40:7.
below 5:5, 11:18.
beneficiaries
28:7.
beneficiary 30:4.
best 5:17, 41:23.
beyond 22:9.
Bible 29:9, 38:7.
big 28:9.
bigger 17:9.
blood 5:25.
board 4:15, 5:24,
6:6, 14:4.
books 33:23.
brief 24:25.
broader 37:1.

Brooks 15:21.
burden 14:11, 14:12,
14:24, 31:17,
31:22, 31:23.
burdensome
31:22.
Bureau 25:11,
25:12.
business 21:1.
.
<C>.
C. 2:7, 23:25.
Califano 36:14, 37:4,
37:17.
call 3:1.
calling 12:9.
campaign 20:9.
candidly 12:22.
capacity 1:13,
41:13.
Case 3:2, 4:25, 6:9,
6:14, 6:21, 7:4,
8:11, 9:14, 9:17,
12:15, 12:25,
14:14, 14:15,
15:24, 17:2, 17:6,
17:7, 19:9, 21:6,
24:15, 31:12, 33:8,
32:3, 34:13, 35:4,
36:12, 37:12,
37:16, 37:17,
38:15, 38:25,
39:22, 40:5,
41:11.
cases 12:23, 16:24,
25:13, 28:20, 30:9,
31:8, 31:19, 33:24,
32:5, 32:7, 32:13,
32:17, 33:7, 33:10,
33:21, 36:2, 35:16,
36:6, 39:12.
category 34:5.
cause 11:6, 28:5,
31:25, 32:3.
causes 3:16, 3:24,
10:16.
ceasing 6:24.
Centers 24:4.
certainly 6:15, 23:6.

27:20, 28:15, 32:2,
34:22, 35:23, 37:9,
38:3.
certify 41:25.
cessation 6:23,
13:23, 14:8, 15:10,
19:25, 24:24, 27:4,
30:23, 31:4.
CGM 8:12, 10:25,
32:16.
Cgms 5:25.
challenged 31:18,
31:20.
chance 24:25.
change 14:3, 15:16,
32:14.
changed 8:6.
CHIEF 1:28, 3:1,
18:15, 21:11,
21:13, 40:2.
Church 25:9.
.
<C>.
CIRCUIT 1:4, 26:11,
37:12, 38:11,
39:18, 41:3.
circumstances
37:14.
cited 7:16, 16:24,
31:10, 37:17.
citing 6:21.
claim 3:7, 12:6,
20:16, 20:22, 23:1,
25:21, 27:8, 27:10,
27:14, 27:16, 27:18,
27:19, 28:22,
29:12, 30:14,
30:15, 30:18, 31:2,
38:19, 38:24, 39:1,
39:3, 39:16.
claimant 29:15.
claimants 28:18,
29:16.
class 7:8.
clear 9:12, 23:13,
24:2, 24:9, 30:18,
31:19, 34:23,
35:24, 37:16.
clearly 21:9.

client 16:13,
16:18.
closed 32:5, 32:12,
32:17.
CMS 23:18, 23:21,
23:23, 23:25, 24:7,
24:8, 24:18, 26:5,
26:6, 26:10, 26:13,
26:16, 26:22,
26:23, 27:2, 27:7,
27:8, 27:19, 28:7,
28:11, 28:13,
28:25, 30:17, 32:4,
32:10, 32:14,
32:18, 32:20, 34:9,
35:24, 38:15,
38:18, 38:20,
39:23, 39:1, 39:5,
39:11, 39:17.
collateral 22:25,
23:4.
College 34:15.
Columbia 35:4.
comes 12:1.
coming 6:16, 12:3,
14:14.
comment 4:23, 5:4,
11:9, 11:13, 20:17,
28:15, 32:9,
32:11.
Commission
41:35.
complete 3:14,
19:25.
completely
20:19.
compliance 17:1.
comply 11:7.
complying 4:23,
11:12, 20:17.
components
.
concern 13:12.
concerned 8:9,
8:11.
concerning
16:11.
concerns 7:17, 16:8,
18:18, 18:22.
concluded 3:13.
                                43

<Dates>
1/30/2025 41:35.
December 2021
23:12.
February 28th, 2022
32:6.
January 17th
12:11.
May 17, 2022 2:3.
May, 2022 41:27.
November 2020
23:11, 26:16.
$5,000 17:8,
18:4.
$5,000. 17:7.
-vs- 1:11, 41:11.
.
<1>.
1 8:14.
1395 20:17.
1395h 5:3.
1395hh 11:18.
13th 4:4, 4:8,
28:1.
1682 4:21, 11:7.
1682-R 3:10, 3:18,
7:11, 12:9, 29:7,
29:10.
17th 41:27.
.
<2>.
2010, 25:12.
2017 24:8, 26:5,
28:7, 28:11, 38:15,
38:20, 38:23.
2017. 15:20.
2019 25:11.
2021 32:7, 32:19.
21-4012 1:11, 3:2,
41:11.
277:11.
.
<4>.
405(g) 36:7.
4:15 4:10, 20:7,

20:25.
.
administrators
29:5.
admitted 5:24,
6:12.
admitting 6:6.
adopt 18:3.
advisory 28:7,
28:12, 28:13,
28:15.
affirmed 40:1.
affixed 41:31.
afforded 3:11.
afternoon 5:20,
21:16.
agency 5:8, 25:5,
27:15, 27:20.
agree 8:8, 10:15,
36:11.
agreed 7:25.
agreement 3:13,
ahead 31:13.
air 16:9.
align 25:6.
ALJ 23:13, 30:16.
Aljs 29:6.
ALLISON 1:29.
allow 7:3.
allowed 3:11.
allows 39:19.
alone 30:1.
already 9:10, 21:6,
21:8, 27:17, 27:18,
30:15.
alteration 25:3,
25:14, 25:15,
25:21, 31:11.
altered 31:22.
alternative 32:5.
although 19:24,
23:24, 36:17.
amendments
25:6.
America 14:15.
analogous 37:17.
ancillary 35:3.
answer 4:12, 16:20,

26:1.
anybody 20:8.
apologize 6:20.
appeal 3:9, 8:23,
10:16, 21:2, 28:19,
37:16, 37:18.
34:17, 35:7.
appealed 10:10,
23:4.
APPEALS 1:3,
22:17, 26:10,
28:24, 38:22,
39:19, 41:1.
appearing 29:3,
29:5.
appears 12:4.
appendix 11:19.
applied 39:12.
applies 32:4, 32:12,
30:16.
apply 23:21, 26:5,
26:14, 27:5, 36:19,
36:23.
applying 38:23.
appreciate 21:10.
appropriate 35:13,
36:12, 38:14.
argued 11:18, 14:19,
21:6.
arguing 19:4,
31:16.
argument 21:2.
ARGUMENTS 1:25,
21, 40:3.
arose 25:1.
around 30:21.
aside 27:3,
36:18.
aspect 7:7, 7:12,
8:16.
assessment 11:20.
attached 41:28.
attack 25:4, 25:16,
31:12.
Attorney 28,
2:13.
attorneys 35:14.
audio 2:2.
authority 27:11,

conduct 6:8, 6:24,
7:3, 7:10, 11:11,
12:21, 13:7,
17:1.
confess 33:9,
33:20, 33:21,
33:22, 34:8, 34:18,
34:19, 39:2.
confessed 8:2,
17:24, 21:21, 33:6,
33:25.
confessing 8:7.
confession 21:25,
22:6, 23:5.
congratulations
6:4.
Congress 11:8,
11:17.
connected 29:20.
conscious 19:14.
consider 3:22,
22:18, 27:14,
27:23, 39:4.
considered 22:14,
30:12.
contended 11:15.
contending 11:5.
contends 5:2,
5:7.
contest 39:3.
contests 39:2.
continue 7:3, 18:15,
26:5, 26:14, 26:15,
39:13, 41:27.
continued 8:15,
13:6.
continues 35:18,
35:19, 39:3.
continuous 22:13,
23:14, 24:11,
24:13, 26:4, 26:19,
26:25, 28:22,
29:23, 30:6, 32:11,
34:2, 34:4, 35:20,
35:25.
control 11:21.
controversy
25:7.
Correct 8:21, 9:2,
41:28.

Council 22:17,
28:24, 38:22.
Counsel 12:22,
21:13, 22:1, 34:13,
40:2.
couple 16:7.
course 6:23, 7:2,
7:6, 14:9, 20:1,
26:9, 26:12, 28:17,
31:24.
courts 5:7, 26:3,
26:18, 34:11,
38:13.
coverage 3:7, 24:7,
24:22, 39:16.
covered 22:10,
22:15, 23:17,
24:22, 36:4.
covering 28:24.
credit 15:12.
CREERON 41:25.
cure 8:14.
currently 7:24.
.
<D>.
damages 8:3.
date 24:10, 30:14,
36:2.
dates 26:25, 32:5,
36:3.
day 7:13, 14:23,
15:25, 19:6, 32:13,
39:13, 41:27,
41:31.
days 21:1.
DC 37:12.
dealing 19:9.
debts 9:20.
decide 23:6,
37:22.
decided 15:21,
38:20.
decides 39:13.
deciding 39:15.
decision 7:24,
39:12.
decisions 20:3,
28:11, 29:1, 31:7,
31:13, 32:22,
34:16, 37:24,

39:25.
declaration 10:24,
11:2, 38:2.
declaratory 36:9,
38:25.
declare 5:11.
dedicated 30:6.
Defendant-appellee
1:19, 2:15,
41:17.
definitive 26:13.
denial 21:20.
denials 8:24,
18:22.
denied 10:10, 12:18,
23:10, 28:23,
30:15, 36:10.
Denver 35:9.
denying 13:15, 20:2,
23:1.
Department 1:15,
12:11, 21:15,
41:15.
depends 28:16.
deprive 6:25.
determination 4:21,
11:11.
determine 5:15,
37:19.
determined 11:4,
31:13.
device 29:21.
diabetes 8:14,
30:4.
diagnosed 30:5.
different 9:12, 10:1,
10:17, 26:11, 29:5,
34:5, 34:13,
34:15.
diminishing 32:13.
direction 6:7, 23:23,
36:20.
disclaimed 12:2.
dismiss 15:24.
dismissed 20:3.
District 3:8, 3:10,
3:19, 5:7, 6:15,
8:20, 9:7, 14:21,

3925.
.
declaration 10:24,
11:2, 38:2.
.
17:12, 21:21, 22:6,
26:3, 26:18, 27:22,
28:5, 29:2, 30:25,
32:25, 35:4, 35:8,
36:11, 38:9, 38:13,
38:17, 39:4, 38:8,
39:10, 39:25.
docket 3:20,
17:13.
doctrine 5:16.
document 4:9,
5:23.
doing 9:7, 16:13.
done 21:11, 27:9.
down 6:22, 36:4.
driving 17:10.
due 26:17.
durable 8:12, 10:25,
22:14, 23:16,
24:13, 26:4, 27:1,
29:21, 29:24,
30:12, 34:6, 35:20,
35:25.
duty 31:6.
.
<E>.
easily 24:19, 32:10,
32:20.
eff 14:13.
effect 9:11, 10:13,
11:24, 12:1, 20:1,
21:25, 22:5.
effort 13:2.
efforts 13:19,
21:3.
EID 1:29.
either 14:19,
30:24.
emails 20:10.
enacting 5:8.
encourage 25:8.
end 7:12, 14:22.
enforcement
enjoin 9:4.
enforcing 9:5.
enjoin 9:4.
dissuaded 20:3.
enough 33:14,
35:16.
                                44

**Page 45**

ensure 23:8, 37:5.
entered 17:19, 17:25, 18:9, 18:11, 21:22, 27:18.
entering 23:20.
entire 4:24, 4:25, 5:25.
entitled 26:6, 23:14.
entry 3:20, 17:14, 33:16.
equipment 8:13, 11:1, 22:15, 23:16, 24:14, 26:5, 27:1, 23:25, 30:12, 34:6, 34:15, 35:21, 36:1.
equitable 36:5, 36:8, 36:12, 36:15, 37:3, 37:4, 37:9, 37:13, 37:18, 37:22, 37:25.
eradication 19:25.
erred 3:11, 38:22.
error 8:2, 17:24, 21:21, 23:5, 33:6, 33:10, 33:20, 33:21, 33:22, 33:24, 35:16.
essentially 5:22.
establish 14:24.
establishing 14:13.
estop 11:4.
estoppel 22:25, 23:4.
estopping 11:14.
evade 34:21.
evaluate 31:1.
everybody 17:3, 19:2, 20:10.
everything 6:12, 6:13, 9:8, 18:12.
evidence 25:19.
Exactly 13:7, 13:20, 16:3, 16:25, 37:15.
example 6:6, 7:19, 10:23, 13:3, 14:14, 16:23, 23:25, 35:3.
except 19:18, 19:19.
exception 24:24, 27:4.
exceptions 23:18.
excused 40:5.
exercise 29:1.
expect 34:9.
Expires 41:35.
explained 22:9, 39:24.
extent 38:5.

<F>.
face 18:20.
fact 5:25, 31:23, 33:20.
failed 22:18.
failing 32:1.
fair 19:23.
faith 7:10, 12:16, 13:6, 14:7, 23:18, 26:2.
familiar 32:24, 33:2, 33:14, 36:16.
far 7:25.
favor 17:22, 29:15, 31:17.
Federal 25:10.
feet 5:14.
few 5:21, 15:5.
final 23:13, 26:21, 27:21, 28:25, 29:1, 32:8, 32:19, 39:24.
finally 38.
find 15:5.
finding 8:12.
findings 3:22.
finished 21:12.
First 3:8, 4:12, 4:19, 6:19, 11:15, 18:18, 14:16, 19:15, 22:10, 23:22, 26:1, 27:6.

five 3:16, 12:17, 20:2.
five-year 4:25.
flat-out 12:16.
focus 9:17.
focused 16:13.
followed 17:14.
form 36:12, 36:15.
formal 15:13, 24:6, 32:3, 32:9.
formally 24:8.
formidable 14:11.
forms 10:17, 36:8.
forsworn 20:16.
forward 7:4, 8:16, 16:18, 18:20, 23:2, 32:6, 36:1, 38:18.
found 12:15.
frankly 5:13.
Friday 4:10, 5:20, 6:11, 6:17, 11:25, 12:1, 12:7, 14:8, 15:6, 15:21, 20:7, 24:7.
functions 22:13, 23:15, 24:12, 34:3.
funny 19:18.
future 11:3, 18:25, 19:11, 22:19, 23:2, 23:6, 24:10, 27:10, 27:24, 27:25, 28:21, 36:20, 37:22, 39:12.

<G>.
gamesmanship 20:25, 33:22.
gaps 23:24.
garden 38:4.
generally 6:18, 28:14, 30:9, 31:16.
genuine 14:3, 14:5.

get-go 10:10.
getting 10:6, 10:8.
give 18:4, 19:5.
gives 9:5.
giving 4:15.
globally 13:22.
glucose 6:21, 22:13, 23:14, 24:11, 24:23, 24:24, 26:25, 28:22, 29:18, 29:24, 30:6, 30:11, 34:2, 34:4, 35:20, 35:25.
goal 12:4, 17:3.
governed 32:7.
government 17:23, 22:24, 25:17, 25:19, 31:25, 33:6.
Grande 25:11, 31:9.
Grant 6:21.
granting 4:4.
guess 15:21, 17:13, 23:4, 39:20.
guy 12:12, 12:14, 13:3, 15:19, 24:3.
guys 5:19.

<H>.
hand 41:30.
happen 16:2, 16:11, 18:24, 19:10, 19:12, 34:16.
happens 38:12.
hard 15:16.
Health 1:15, 41:15.
hear 21:14.
heard 29:19.
heavy 14:11.
held 2:3, 25:2, 25:15, 25:20, 37:18, 37:21, 41:26.
hereby 41:25.
hereunto 41:30.
HHS 28:25,

**Page 47**

20:18.
manner 19:17.
matter 3:11, 5:1, 20:20, 41:27.
Mcconway 12:13.
mean 4:8, 4:13, 7:22, 9:8, 9:20, 10:5, 13:15, 17:13, 18:18, 20:8, 22:25, 34:20, 37:19, 38:16.
meantime 23:7.
Medicaid 24:5.
medical 8:13, 10:25, 22:15, 23:16, 24:13, 26:4, 27:1, 30:12, 34:6, 35:21, 36:1.
Medicare 3:7, 5:4, 21:20, 22:15, 22:17, 23:17, 23:25, 24:5, 24:14, 26:7, 27:14, 28:24, 38:16.
members 37:8.
Mendoza 6:9, 7:13, 7:15, 13:7.
mentioned 6:7.
mere 6:24, 25:4.
merits 36:22.
mid-1990s 22:16, 23:7.
mind 8:6, 32:4.
mine 30:9.
Mining 16:3.
Minnow 25:12.
minute 16:7.
minutes 15:6.
misunderstand 29:22.
moment 9:18.
monetary 3:18.
monetary 3:25.
money 18:4.
monitor 22:13, 24:13, 28:23, 29:20, 29:24, 30:7, 34:2, 34:4.
monitoring

29:19.
monitors 6:1, 23:14, 24:11, 26:4, 27:1, 30:11, 35:20, 36:25.
Mooreway 12:13.
mooted 25:16.
moot 4:5, 6:15, 7:19, 25:3, 25:6, 39:23, 39:24.
mootness 5:16, 24:24, 27:3, 31:4, 31:5, 31:7, 31:14, 31:17, 38:18.
moots 24:15.
25:24.
moving 40:7.
motion 11:19, 21:5.
move 28:24.
Mr 3:7, 3:14, 3:16, 3:21, 3:24, 4:13, 8:9, 10:25, 11:13, 15:21, 17:3, 17:9, 21:14, 21:24, 23:3, 33:13, 34:25, 36:22.
multiple 10:16.

<N>.
National 16:23.
Nearly 3:5.
necessarily 23:4.
need 5:14, 28:19, 28:23, 30:23.
needed 29:20.
needs 14:19, 39:10.
new 26:22, 30:2.
News 25:10, 31:9.
Next 7:6, 15:25, 16:2.
No. 1:11, 4:13, 4:16, 5:12, 12:2, 20:10.
nobody 9:20.
nonmovant 3:23, 4:1, 9:25, 10:4, 10:18.
normally 13:22.

5:13.
Notary 41:34.
notes 16:5.
nothing 22:3.
notice 4:23, 5:3, 11:9, 11:12, 20:17, 28:14, 32:8, 32:11.
number 4:21, 7:1, 8:11, 19:20, 38:16.

<O>.
o'clock 40:6.
obtained 22:11.
obviously 5:19, 17:4, 17:13, 27:8.
offer 18:7, 18:9.
office 41:31.
Okay 10:3, 10:13, 16:21, 18:8, 19:20, 21:14, 21:24, 33:3, 33:13, 34:25, 36:22.
Olson 6:9, 12:15, 13:3, 21:6.
one 7:1, 7:12, 7:18, 8:11, 8:16, 10:22, 10:24, 17:7, 19:20, 21:20, 35:5.
one. 4:21.
ones 10:18, 33:2.
opinion 26:8, 28:12, 28:13, 28:15.
opposed 36:10.
opposing 22:1.
opposite 14:6, 16:3.
opposition 25:23.
ORAL 1:25, 2:1, 21:1.
order 36:11.
ordering 21:23.
others 34:20.

otherwise 11:5.
outcome 4:5.

<P>.
P. 1:7, 41:7.
paid 8:10, 10:21, 13:5, 22:7, 22:20, 27:17, 27:18, 28:1, 30:13, 30:19, 33:8, 36:10.
PANEL 1:28, 30:24.
papers 5:6, 5:19, 36:10.
Part 8:23, 23:25, 26:17.
particular 11:11, 27:8.
parties 23:9.
party 31:16.
Parzakersky 37:12, 37:21.
past 36:3.
path 13:16.
Patrick 12:13.
pay 3:14, 8:5, 18:3, 18:12, 21:23, 22:2, 22:8, 35:18.
payment 3:21, 9:24, 10:7, 10:10, 10:16, 21:20, 35:5.
payments 34:15.
pending 4:6, 4:17, 8:19, 8:25, 9:6, 21:5, 21:7, 24:9, 28:20, 29:13, 30:16, 32:25, 34:17, 37:5, 37:6.
people 12:20, 15:20, 18:12, 16:16, 19:19, 20:3, 20:20.
perform 22:12, 23:15, 24:12, 34:3.
period 5:1.
permissible 36:7.

**Page 46**

38:25.
high 13:24, 17:4, 19:17.
history 25:22, 26:2.
holdings 26:18.
holds 36:15.
Honestly 4:13, 5:14.
Honor 3:4, 6:5.
Honors 21:17.
Human 21:15, 41:15.
hundreds 12:19.

<I>.
idea 19:8, 32:20.
ignore 25:24.
ignores 3:23.
illegal 6:24, 7:3, 12:14.
illegality 18:6.
illegally 5:8, 11:7, 11:22.
immediately 29:14, 30:11, 34:1.
imminent 19:12.
implausible 32:22.
important 7:7, 17:8.
improper 21:10.
including 3:17, 4:2.
independent 31:6.
indication 27:2, 32:14.
indications 15:11.
injunction 4:2, 4:20, 7:1, 9:4, 10:11, 11:14, 16:15, 16:17, 19:10, 21:5, 36:13, 36:19, 39:11.
injunctive 3:17, 35:13.
injured 12:20, 15:20,

19:19.
instance 22:11.
Instead 4:1, 28:10.
Insulin 22:12, 22:14, 22:20, 23:15, 24:12, 34:3, 34:5, 38:22.
interesting 5:22.
interests 37:8.
interpret 4:3, 4:14.
interpretation 39:9, 36:2.
interrupt 7:23.
invalid 39:6.
invalidate 3:10.
involve 35:3.
involved 25:13.
iphone 30:7.
issue 5:3, 7:1, 9:13, 9:14, 9:16, 20:16, 22:3, 23:1, 23:24, 25:1, 26:10, 26:17, 27:12, 28:6, 31:5, 35:14, 35:17, 36:13, 39:2, 39:24.
issued 23:11, 23:12, 23:18, 24:7, 25:10, 28:14, 30:17, 31:12, 35:14, 39:17.
issues 28:25, 32:21, 35:3, 35:11, 38:9.
issuing 4:22, 11:12, 26:20, 26:21, 26:22.
itself 29:24, 31:7, 31:14.

<J>.
James 2:7, 3:5.
jerk 8:4.
jerking 19:2.
JOEL 1:30.
Josh 21:18.
JOSHUA 2:12.

joust 16:6, 18:17.
jousts 18:16.
judgment 3:20, 11:19, 17:14, 17:16, 17:17, 17:20, 18:10, 18:11, 21:22, 27:17, 36:13, 38:10.
judicial 3:12, 12:5, 12:2, 21:3, 21:19, 27:9, 29:3, 37:1.
jurisdiction 6:25, 27:14, 27:23, 29:3, 38:8.
jurisdictional 27:11, 12:10.
JUSTICE 1:28, 3:1, 18:15, 21:11, 21:13, 40:2.
justiciable 5:15.

<K>.
keep 10:14, 12:9, 19:17.
kill 20:20.
kind 5:16, 15:10, 26:14, 38:12.
kinds 37:9.
knock 21:7.
KOPPEL 2:12, 21:15, 21:16, 21:18, 22:5, 22:22, 23:3, 23:20, 24:18, 24:22, 25:25, 28:3, 28:21, 29:8, 29:10, 29:16, 29:23, 30:3, 31:3, 33:1, 33:4, 33:22, 34:12, 35:3, 35:22, 36:24, 37:15, 38:14.

<M>.
MAC 28:19, 29:6, 29:14.
main 6:19, 14:15.
maintain 12:3,

late 6:20.
latest 30:17, 35:23.
Law 2:8, 2:13, 3:11, 4:24.
laws 11:17.
lawyer 30:20.
least 27:5, 27:6, 31:10.
led 3:15, 10:13, 23:24.
Legal 25:10, 31:9.
38:8.
legality 16:25.
legislature 15:14, 15:15.
letter 6:7, 6:17, 6:20, 12:10, 12:12, 12:13, 13:12, 13:14, 15:19, 15:23, 16:1, 19:5, 23:23, 24:3.
letters 15:18, 20:10.
level 13:24, 17:4, 19:17.
LINDA 1:7, 41:7.
lines 17:21.
LISA 41:25.
litigate 17:7.
litigated 5:1.
litigating 16:25.
litigation 35:7.
live 10:20, 39:16.
long 18:5, 18:16, 18:18.
look 11:18, 12:21, 13:17, 13:22, 14:25, 19:1, 25:9.
looking 15:11.
lot 16:9, 16:10.
lots 16:8.

**Page 48**

18:25.
permit 29:2.
perspective 13:23, 20:11.
ph. 12:13, 37:12.
phone 30:7.
phrase 14:2.
phrases 14:10.
PISTORINO 2:7, 3:3, 3:4, 3:5, 4:7, 4:12, 4:14, 4:19, 5:12, 5:18, 6:5, 8:8, 8:21, 9:1, 9:11, 9:16, 9:23, 10:8, 10:14, 10:22, 12:25, 13:17, 14:22, 15:3, 15:8, 16:19, 16:22, 17:6, 17:15, 17:18, 17:21, 17:25, 18:3, 19:13, 19:22, 20:6.
plaintiff 21:22, 22:11, 23:9, 28:9, 28:12, 28:17, 31:24, 34:1, 34:14, 34:23, 37:20, 37:21, 38:19, 38:23.
plaintiff-appellant 21:21.
Plaintiffs 21:19, 32:24, 35:2, 35:5.
play 32:22.
please 21:17.
point 12:8, 13:21, 14:4, 14:23, 15:2, 15:17, 16:4, 19:23.
point. 9:20.
pointed 13:8.
pointing 6:3.
points 5:21, 6:19, 6:23.
policies 25:3, 25:4.
Policy 25:14, 25:16, 31:9, 31:2, 31:11, 31:21, 32:16.
Polis 25:9.

position 12:2, 12:3, 16:14, 16:16, 22:24, 28:18, 31:1, 34:10, 35:19, 36:17, 36:18.
possibility 25:5.
potentially 6:17, 25:6.
power 3:9, 3:15, 5:2, 5:6, 6:16, 11:16, 11:21, 20:22, 37:1.
powerless 20:20.
powers 37:5.
practical 29:5.
preclusion 23:1.
preliminary 21:5.
present 38:16.
presented 27:15, 27:19, 36:21, 37:19.
preserve 13:19.
preserving 13:18.
President 11:9.
presumption 25:18.
pretty 38:4.
prevent 19:10.
primary 30:8.
principles 14:9, 17:9.
Prison 25:10.
Prisons 25:11.
proceedings 2:3, 41:26, 41:29.
process 3:9, 4:22, 7:11, 14:20, 15:19, 30:21, 32:10, 32:11.
prongs 14:16.
proper 37:13.
properly 9:9, 21:22, 36:9.
proposed 23:12, 26:20.

Prospectively 23:19, 23:20.
protect 16:15, 37:7.
provide 23:3.
provided 30:3.
provision 5:4.
Public 20:21, 41:34.
publicity 20:9.
publicly 21:2.
pump 22:12, 22:20, 34:3.
pumps 22:14, 23:15, 24:12, 34:5, 39:8.
purpose 12:6, 13:19.
purposes 39:15.

<Q>.
qualifies 10:25.
question 11:24, 27:5, 29:4, 30:22, 31:7, 32:24, 36:5, 36:23, 37:1, 39:8.
questions 27:6, 35:7.
quickest 23:23.
quickly 5:20, 19:15, 39:4.
quite 5:22, 31:22, 32:22, 37:17.
quo 37:3.

<R>.
reached 34:8, 37:20, 37:24.
read 5:23.
real 11:2.
really 4:25, 15:16, 16:9, 20:21, 24:5, 31:1, 32:10, 34:4, 36:9.
reason 7:18, 13:25, 15:25, 22:9, 28:4, 32:15, 33:24.

reasonable 16:2.
reasons 38:16.
recent 37:11.
recently 12:22.
recess 4:6.
recision 31:10.
Reclamation 25:12.
reconsidered 28:16.
RECORDED 1:25.
recording 2:2.
recovery 3:25.
referring 4:9.
regard 9:23, 11:6, 26:7, 32:16.
regardless 30:10, 30:13, 36:2.
regards 24:23.
regretted 18:7, 18:9.
relate 35:11.
related 22:19.
related 3:15, 3:18, 3:23, 4:1, 8:23, 8:24, 10:1, 10:4, 10:17, 35:13, 36:5, 36:9, 36:13, 36:15, 37:13, 37:22.
relying 29:6.
remains 37:6.
remand 17:12, 39:7.
remanded 8:2.
remanding 3:20.
remedies 37:3, 37:18, 37:25.
remedy 36:5.
reopened 30:18.
repeated 26:18, 39:18.
repeatedly 25:2.
represented 22:1.
request 3:17.
request 36:20.
rescind 13:10, 13:14, 25:5.



25:20.
rescinded 24:16,
  24:19, 24:23,
  29:11, 31:21,
  38:19.
rescinding 24:8.
rescission 13:10,
  25:13, 25:15,
  25:20, 25:21.
resolution 37:7.
resolve 38:8.
resolved 7:5,
  30:24.
respect 8:23,
  10:6.
respond 6:18.
response 5:17.
rest 3:16, 10:20,
  18:23.
retroactively
  23:22.
reverse 32:19,
  39:6.
reversed 32:10,
  32:21.
review 3:10, 3:12,
  12:5, 13:2, 21:3,
  21:19, 29:3,
  34:21.
reviewed 36:6.
revised 4:4, 4:8.
ridiculous 19:17.
rightness 27:6.
Rio 25:11, 31:9.
ripe 7:24, 18:23.
room 9:20.
rug 8:4, 19:2, 27:3,
  32:1.
rule 23:12, 23:13,
  23:21, 26:21,
  32:19, 36:18,
  38:15, 39:19.
rule-making
  32:9.
ruled 8:19, 26:3.
ruling 4:4, 4:8,
  12:10, 13:12,
  13:15, 24:1, 24:3,
  24:8, 24:9, 26:6,
  26:10, 26:12,

26:14, 26:15,
26:22, 27:9, 28:2,
28:7, 28:11, 30:17,
32:4, 32:8, 32:12,
32:20, 34:10,
34:18, 35:24,
36:16, 38:19,
38:21, 38:23, 39:1,
39:5, 39:11,
39:17.
rulings 4:22, 5:3,
  11:12, 12:9, 15:18,
  20:16, 24:19,
  28:13, 32:3.
run 30:9, 35:7.

.
< S >.
sadly 8:13.
saw 6:7, 6:9.
saying 5:24, 7:9,
  10:15, 11:6, 18:11,
  19:1, 19:6,
  39:11.
seal 41:31.
significant 21:14.
Second 7:22, 19:24,
  20:12, 27:3,
  27:11.
secret 20:11.
Secretary 1:14, 3:12,
  3:13, 4:22, 5:2,
  5:5, 5:7, 11:4,
  11:7, 11:15, 11:16,
  14:9, 14:12, 14:24,
  18:1, 21:21, 21:23,
  22:8, 23:7, 23:11,
  23:17, 33:25, 34:7,
  35:18, 36:20, 38:2,
  39:2, 41:14.
seek 35:5.
seeking 28:10.
seeks 28:12,
  37:2.
seem 16:9, 16:11.
seems 14:3, 14:5,
  36:6, 38:4,
  38:12.
sense 8:9.
sent 20:9, 20:10.

separate 4:1.
service 24:11, 26:25,
  30:14, 32:6, 36:2,
  36:3.
Services 1:16,
  21:15, 24:5,
  41:5.
set 32:5, 32:13,
  32:17, 37:2,
  41:30.
setting 36:18.
settled 14:23.
settlement 18:7,
  18:9.
shall 40:5.
shift 31:23.
shifts 28:9.
shorthand 41:26.
shouldn't 38:17,
  39:12.
show 15:22, 20:13,
  31:17, 31:24.
sign 15:25.
signed 11:8, 15:19,
  24:3, 24:4.
signs 15:23.
silent 18:13.
Silvery 25:11.
simple 10:23.
simply 27:22,
  28:10.
single 12:25,
  13:1.
sit 36:4.
sitting 19:16.
situation 40:4.
SMITH 1:7, 3:2, 3:5,
  3:7, 3:14, 3:16,
  3:21, 3:24, 4:13,
  8:9, 10:25, 11:3,
  17:3, 17:9, 22:19,
  23:2, 34:24,
  41:7.
Social 1:15.
solely 3:20, 12:6,
  17:8.
somebody 12:10.
somehow 30:24.
someone 13:24,

somewhat 5:6.
somewhere 14:19,
  30:25.
soon 7:4, 13:13,
  32:21.
sorry 11:25, 18:13,
  23:18, 33:11.
sort 5:23, 6:19, 19:7,
  22:25.
sought 3:23, 4:1,
  4:13, 21:19.
sound 14:17.
sounds 14:18,
  18:21.
speaking 30:10.
specific 5:4.
speculative 16:10,
  18:21, 19:23,
  20:14, 20:21.
Spokane 6:10.
stand-alone
  34:2.
standard 14:12.
Standing 30:1.
start 13:15.
starting 13:21,
  30:11.
State 41:1, 41:34.
stated 31:16.
statement 24:6.
statements
  15:12.
States 1:3, 1:14,
  21:18, 41:14.
status 37:6.
statute 11:1, 11:8,
  11:13, 11:20, 17:1,
  17:2, 23:2,
  38:3.
statutes 6:2.
statutory 25:23,
  27:12, 27:13.
staying 18:13.
steadfast 25:23.
step 13:1.
stood 6:14.
stop 5:8, 6:8, 6:10,
  8:17, 11:21.
stopped 7:2,
  20:15.

stream 26:19.
stringent 14:11.
strongly 36:7.
struggling 19:8.
stuff 18:6.
subjected 11:9.
submission 6:12.
submitted 4:9, 10:9,
  20:7, 40:5.
submitting 3:6,
  20:4.
successful 4:5.
sudden 32:16.
suffers 8:15.
suggest 33:21,
  34:20, 36:7.
suggests 37:13.
summary 11:19.
Sunday 6:21.
supplies 22:11.
Supreme 6:22,
  26:12, 39:20.
switch 32:16.

.
< T >.
T. 6:21.
table 22:4.
tactics 28:10.
TDL 7:20, 21:4, 21:9,
  26:21.
technical 6:7, 16:20,
  23:22.
tells 13:24.
Tens 12:18, 12:19,
  15:20, 19:18,
  20:2.
TENTH 1:4, 41:3.
term 6:1.
terms 10:15, 20:14,
  39:15.
test 26:15.
theories 3:25.
theory 13:9, 24:22,
  25:24.
therapeutic
  23:14.
they've 13:11, 20:1,
  27:18.
thinking 17:12,

19:16.
thinks 9:21.
third 23:9.
though 24:21.
thousands 12:18,
  12:19, 12:20,
  15:20, 19:18, 20:3,
  38:6.
threat 19:12.
Three 6:19, 8:10,
  8:24, 9:13, 9:16,
  9:24, 10:5, 10:6,
  10:12, 13:18, 18:4,
  18:12, 21:20, 22:2,
  22:7, 27:16, 33:8,
  34:19.
Throughout 4:24,
  4:25, 7:11.
thrown 13:11.
TIMOTHY 1:28.
today 20:23.
tomorrow 24:17,
  40:7.
took 23:21, 36:16,
  41:25.
totally 12:14.
toward 24:1,
  26:24.
towel 13:11.
TRANSCRIPT 1:25,
  2:1.
transcription
  41:28.
tribunal 3:9.
tried 15:2, 15:4,
  15:6, 15:8.
true 31:15, 35:18,
  41:28.
trust 14:1, 15:10.
trusted 7:14,
  7:18.
try 8:4, 19:15.
trying 34:21,
  35:5.
Tuesday 2:3.
turn 13:13.
turned 6:20.
two 5:21, 14:15,
  17:21, 21:1, 26:1,
  27:6.

two-line 17:13,
  17:15.
two-sentence
  3:19.
TYMKOVICH
  1:28.
type 8:14.
typically 14:10.

.
< U >.
understand 34:12,
  34:14, 40:3.
United 1:3, 1:14,
  21:18, 41:1,
  41:14.
unless 25:18.
until 27:8, 27:15,
  40:6.
using 30:6, 34:1.

.
< V >.
validity 28:6, 38:15,
  39:5.
variety 38:4.
vehicle 36:8.
victory 5:11.
view 6:11, 7:9.
violate 11:16,
  11:20.
violation 4:24,
  5:3.
violative 11:13.
voluntary 6:22,
  13:23, 14:8, 14:16,
  15:10, 19:25,
  24:24, 27:4, 30:22,
  31:4.
vs 3:2, 25:9, 25:10,
  25:12, 36:14,
  37:4.

.
< W >.
W. 6:21.
wanted 11:14.
ways 13:18, 26:1.
week 24:2.
whatever 7:14, 7:17,

12:7, 14:23,
38:11.
whereof 41:30.
whether 5:15, 7:12,
  7:14, 14:2, 28:13,
  35:8, 35:11, 35:12,
  35:13, 39:10,
  39:17.
whole 7:11, 13:18,
  15:16, 20:15.
Will 8:9, 8:15, 11:2,
  22:8, 23:9, 24:14,
  27:8, 29:18, 30:13,
  31:25, 32:20,
  40:6.
win 4:15, 7:25, 9:6,
  9:8, 13:4.
Wisconsin 41:34.
wish 5:12, 5:13.
withdrawal 25:2.
within 26:11.
without 4:23, 11:12,
  18:21, 20:17,
  28:14.
witness 41:30.
won 9:10, 9:22, 9:24,
  10:11, 10:15.
words 13:11,
  18:1.
worked 24:1.
world 11:2.
worried 7:25.
written 12:10, 12:12,
  12:13.

.
< X >.
XAMER 1:13,
  41:13.

.
< Y >.
Yamasaki 36:14,
  37:4.
year 25:10.
years 3:6, 12:17,
  20:2.
yesterday 11:25.